This portion of the public notice should describe how the records are maintained, how they are safeguarded, what categories of officials within the agency are permitted to have access, and how long records are retained both on the agency's premises and at secondary storage sites.

In describing record "storage", the agency should indicate the medium in which the records are maintained (e.g., file folders, magnetic tape). "Retrievability" covers the capabilities in the system of records to index and access a record (e.g., by name, combinations of personal characteristics, identification numbers). "Access controls" describes, in general terms, what measures have been taken to prevent unauthorized disclosure of records (e.g., physical security, personnel screening) and what categories of individuals within the agency have access. "Retention" and "disposal" cover the rules on how long records are maintained, if and when they are moved to a Federal Records Center or to the Archives, if and how they are destroyed. The description shall not describe security safeguards in such detail as to increase the risk of unauthorized access to the records.

Changes in this item will not normally require immediate publication of a revised public notice unless they reflect an expansion in the availability of or access to the system of records.

*Identifying Official(s) Responsible for the System in the Public Notice.* Subsection (e)(4)(F) "The title and business address of the agency official who is responsible for the system of records";

This portion of the notice must include the title and address of the agency official who is responsible for the policies and practices governing the system described in (e)(4)(E), above. For geographically dispersed systems, where individuals must deal directly with agency officials at each location in order to exercise their rights under the Act (e.g., to gain access), the title and address of the responsible official at each location should be listed in addition to the agency official responsible for the entire system. See discussion of subsection (e)(4)(A), above, for special treatment of certain multiple location systems.

A revised public notice shall be issued before the implementation of any change in the address to which individuals may present themselves in person to inquire whether they are the subject of a record in the system or to seek access to a record or in the address to which individuals may mail inquiries, unless the agency has established internal procedures to assure that mail will be forwarded promptly so that the agency will be able to respond to inquiries within the time constraints established in subsection (d). Generally, changes of this type in the interim between the annual publications of the compilation of notices should be avoided if at all possible. Individuals are more likely to rely upon the annual compilation and are not as likely to be aware of modifications publicized only by means of separate notice in the FEDERAL REGISTER.

*Describing Procedures for Determining if a System Contains a Record on an Individual in the Public Notice.* Subsection (e)(4)(G) "The agency procedures whereby an individual can be notified at his request if the system of records contains a record pertaining to him;"

This portion of the notice should specify as a minimum, the following:

The address of the agency office to which inquiries should be addressed or addresses of the location(s) at which the individual may present a request in person. Wherever practicable, this list should be the same as the list of officials responsible for the system in subsection (e)(4)(F), above. If this is the case, it need not be reported.

What identifying information is required to ascertain whether or not the system contains a record about the inquirer.

The agency may require proof of identity only where it has made a determination that knowledge of the fact that a record about an individual exists would not be required to be disclosed to a member of the public under section 552 of title 5 of the United States Code (the Freedom of Information Act). For example, an agency may determine that disclosure of a record in a file pertaining to conflicts of interests would be a clearly unwarranted invasion of personal privacy, within the meaning of 5 U.S.C. 552 (b)(6), and in this instance the agency may require proof of identity.

A revised public notice will be issued before effecting any change which meets the criteria outlined in subsection (e)(4)(F), above.

This portion of the notice must be consistent with agency rules promulgated pursuant to subsection (f)(1). Any change in these procedures is subject to the requirements of the Administrative Procedure Act as specified in subsection (f).

*Describing Procedures for Gaining Access in the Public Notice.* Subsection (e)(4)(H) "The agency procedures whereby an individual can be notified at his request how he can gain access to any record pertaining to him contained in the system of records, and how he can contest its content; and"

This portion of the public notice must include the mailing address(es) and, if possible, the telephone number(s) of official(s) who can provide assistance; and the location of offices to which the individual may go to seek information.

This provision does not specifically require that the actual procedures for obtaining access or for contesting the accuracy of a record be included in the public notice. It only requires that individuals be advised of the means by which they can obtain information on those procedures. However, it should be noted that, pursuant to subsection (f), agencies are required to publish rules which stipulate the procedures whereby the individual can exercise each of these rights and that these rules are required to be incorporated into the annual compilation of notices and rules published by the Office of the Federal Register.

A revised public notice shall be issued before effecting any change about which the individual would have to know in order to exercise his or her rights under the Act. Changes of this type in the interim between the annual publications of the compilation of notices should be avoided if at all possible.

This portion of the notice must be consistent with agency rules promulgated pursuant to subsections (f)(2) and (3). Any change in these procedures is subject to the requirements of the Administrative Procedure Act as specified in subsection (f).

*Describing Categories of Information Sources in the Public Notice.* Subsection (e)(4)(I) "The categories of sources of records in the system;"

For systems of records which contain information obtained from sources other than the individual to whom the records pertain, the notice should list the types of sources used; e.g.,

Previous employers,
Financial institutions,
Educational institutions attended, or
Peer reviewers (such as in connection with records of the review of proposals for research projects)

The notice should indicate if the individual to whom the records pertain is a source of the information in the record. Otherwise all the notices will appear to be violating the requirement that individuals be the main source of information pertaining to them.

Specific individuals or institutions need not be identified. Guidance on when the identity of a source may be withheld is contained in subsection (k)(2), (5) and (7).

*Standards of Accuracy.* Subsection (e)(5) "Maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination;"

The objective of this provision is to minimize, if not eliminate, the risk that an agency will make an adverse determination about an individual on the basis of inaccurate, incomplete, irrelevant, or out-of-date records that it maintains. Since the final determination as to accuracy is necessarily judgmental, it is particularly critical that this judgment be made with an understanding of the intent of the Act.

The Act recognizes the difficulty of establishing absolute standards of data quality by conditioning the requirement with the language "as is reasonably necessary to assure fairness to the individual * * *." This places the emphasis on assuring the quality of the record in terms of the use of the record in making decisions affecting the rights, benefits, entitlements, or opportunities (including employment) of the individual.

A corollary provision (subsection (e)(6), below) requires that agencies apply the same standard to records which are disclosed, except when they are disclosed to a member of the public under the Freedom of Information Act or to another agency. (An agency would be sub-

ject to the Act and, therefore, would have to apply its own standards of accuracy, etc.)

Agencies may develop tolerances for "accuracy" and "timeliness" giving consideration to the likelihood that errors within those tolerances could result in an erroneous decision with adverse consequences to the individual (e.g., denial of rights, benefits, entitlements, or employment). For example, for its purposes in determining entitlements based on income, it may only be necessary for an agency to record the fact that income was greater than or less than a stipulated level rather than to ascertain and record the precise amount. In questionable instances, reverification of pertinent information with the individual to whom it pertains may be appropriate.

Useful criteria for assuring "relevance" and "completeness" may be somewhat more difficult to develop. The pursuit of "completeness" could result in the collection of irrelevant information which, if taken into account in making an agency determination could prejudice the decision. Agencies must limit their records to those elements of information which clearly bear on the determination(s) for which the records are intended to be used, and assure that all elements necessary to the determinations are present before the determination is made.

*Validating Records Before Disclosure.* Subsection (e)(6) "Prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to subsection (b)(2) of this section, make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;"

While the Act recognizes that an agency cannot guarantee the absolute accuracy of its systems of records, any record disclosed to a person outside the agency (except another agency) must be as accurate as appropriate for purposes of the agency which maintained the record. (See subsection (e)(5)). The only exceptions to this requirement are for disclosures to another agency or to the public under the Freedom of Information Act which may not be delayed or impeded.

Recognizing that an agency properly disclosing information (pursuant to subsection (b), conditions of disclosure) is often not in a position to evaluate acceptable tolerances of error for the purposes of the recipient of the information, the primary objective of this provision is, nonetheless, to assure that reasonable efforts are made to assure the quality of records disclosed to persons who are not subject to the provisions of subsection (e)(5). The agency must, therefore, make reasonable efforts to assure that a record it discloses is as accurate, relevant, timely, and complete as would be reasonably necessary to assure fairness in any determination that it might make on the basis of that record. It may, for example, be appropriate to advise recipients that the information disclosed was accurate as of a specific date, such as the last date on which a determination was made by the agency on the basis of the record or of other known limits on its accuracy e.g., its source.

*Records on Religious or Political Activities.* Subsection (e)(7) "Maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity;"

Whereas subsection (e)(1) generally enjoins agencies from collecting information not "relevant and necessary to accomplish a purpose of the agency," this provisions establishes an even more rigorous standard governing the maintenance of records regarding the exercise of First Amendment rights. These include, but are not limited to religious and political beliefs, freedom of speech and of the press, and freedom of assembly and petition.

In determining whether or not a particular activity constitutes the exercise of a right" guaranteed by the First Amendment", agencies will apply the broadest reasonable interpretation.

Records describing the exercise of these rights may be maintained only if one of the following conditions is met:

A statute specifically authorizes it. Specific authorization means that a statute explicitly provides that an agency may maintain records on activities whose exercise is covered by the First Amendment; not merely that the agency is authorized to establish a system of records. However, the statute need not address itself specifically to the maintenance of records of First Amendment activities if it specifies that such activities are relevant to a determination concerning the individual. For example, since the Immigration and Nationality Act makes the possibility of religious or political persecution relevant to a stay of deportation, the information on these subjects may be admitted in evidence, and therefore would not be prohibited by this provision.

The individual expressly authorizes it; e.g., a member of the armed forces may indicate a religious preference so that, if seriously injured or killed while on duty, the proper clergyman can be called. The individual may also volunteer such information and if he does so, the agency is not precluded from accepting and retaining it. Thus, if an applicant for political appointment should list his political affiliation, association memberships, and religious activities, the agency may retain this as part of his application file or include it in an official biography. Similarly, if an individual volunteers information on civic or religious activities in order to enhance his chances of receiving a benefit, such as executive clemency, the agency may consider information thus volunteered. However, nothing in the request for information should in any way suggest that information on an individual's First Amendment activities is required.

The record is required by the agency for an authorized law enforcement function.

In the discussions on the floor of the House regarding the authority to maintain such records for law enforcement purposes, it was stated that the objective of the law enforcement qualification on the general prohibition was "to make certain that political and religious activities are not used as a cover for illegal or subversive activities." However, it was agreed that "no file would be kept of persons who are merely exercising their constitutional rights * * *" and that in accepting this qualification "there was no intention to interfere with First Amendment rights" (*Congressional Record*, November 20, 1974, H10892 and November 21, 1974, H10952)

*Notification for Disclosures under Compulsory Legal Process.* Subsection (e)(8) "Make reasonable efforts to serve notice on an individual when any record on such individual is made available to any person under compulsory legal process when such process becomes a matter of public record;"

When a record is disclosed under compulsory legal process (e.g., pursuant to subsection (b)(11)), and the issuance of that order or subpoena is made public by the court or agency which issued it, agencies must make reasonable efforts to notify the individual to whom the record pertains. This may be accomplished by notifying the individual by mail at his or her last known address. The most recent address in the agency's records will suffice for this purpose and no separate address records are required. Upon being served with an order to disclose a record, the agency should endeavor to determine whether the issuance of the order is a matter of public record and, if it is not, seek to be advised when it becomes public. An accounting of the disclosure, pursuant to subsection (c)(1), is also required to be made at the time the agency complies with the order or subpoena.

*Rules of Conduct for Agency Personnel.* Subsection (e)(9) "Establish rules of conduct for persons involved in the design, development, operation, or maintenance of any system of records, or in maintaining any record, and instruct each such person with respect to such rules and the requirements of this section, including any other rules and procedures adopted pursuant to this section and the penalties for noncompliance;"

Effective compliance with the provisions of this Act will require informed and active support of a broad cross section of agency personnel. It is important that all personnel who in any way have access to systems of records or who are engaged in the development of procedures or systems for handling records, be informed of the requirements of the Act and be adequately trained in agency procedures developed to implement the Act. Personnel with particular concerns include, but are not limited to, those engaged in personnel management, paperwork management (reports, forms, records, and related functions), computer systems development and operations, communications, statistical data collec-

tion and analysis, and program evaluation. (The Communications Act of 1934 prescribes standards and penalties for personnel engaged in handling interstate communications and shall also be consulted, where applicable, when agency rules of conduct are being developed).

Activities under this provision will include

The incorporation of provisions on privacy into agency standards of conduct;

The discussion of individual employee responsibilities under the Act in general personnel orientation programs; and

The incorporation of training on the specific procedural requirements of the Act into both formal and informal (on-the-job) training programs.

Concurrently, those agencies with broad policy development and training responsibilities (e.g., the General Services Administration, the Civil Service Commission) will also be revising their programs as appropriate to augment agency activities in this area.

This provision is also important in ensuring that individuals who are potentially criminally liable or whose actions could expose the agency to civil suit (under subsections (i) and (g), respectively) are fully informed of their obligations under the Act.

*Administrative, Technical and Physical Safeguards.* Subsection (e)(10) "Establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained;"

The development of appropriate administrative, technical, and physical safeguards will, necessarily, have to be tailored to the requirements of each system of records and other related requirements for security and confidentiality. The need to assure the integrity of and to prevent unauthorized access to, systems of records will be determined not only by the requirements of this Act but also by other factors like the requirement for continuity of agency operations, the need to protect proprietary data, applicable access restrictions to protect the national security, and the need for accuracy and reliability of agency information.

While the technology of system security (both for computer-based and other systems of records) is well developed as it relates to materials classified for reason of national defense or foreign policy, few standards currently exist to guide the "civil" agency in this area. Until such standards are developed and promulgated, agencies will be required to analyze each system as to the risk of improper disclosure of records and the cost and availability of measures to minimize those risks. The Department of Commerce (National Bureau of Standards) will be issuing guidelines and standards to assist agencies in evaluating various technological approaches to providing security safeguards in their system and for assessing risks.

*Notice for New/Revised Routine Uses.* Subsection (e)(11) "At least 30 days prior to publication of information under paragraph (4)(D) of this subsection, publish in the FEDERAL REGISTER notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency."

Agencies are required to publish in the FEDERAL REGISTER a notice of their intention to establish "routine uses" for each of their systems of records. Although this provision is designed to supplant the informal rule-making provisions of 5 U.S.C. 553, the accommodation of the public comments in the judicial review of the rule-making exercise was intended wherever practicable. Agencies should furnish as complete an explanation of the routine uses and any changes made or not made as a result of the public comment as possible so that the public will be fully informed of the proposed use. This is to give the public an opportunity to comment on the appropriateness of those uses before they come into effect. This notice should be published sufficiently in advance of the proposed effective date of the use to permit time for the public to comment and for the agency to review those comments, but in no case may a new "routine use" be used as the basis for a disclosure less than 30 days after the publication of the "routine use" notice in the FEDERAL REGISTER. A revised public notice (subsection (e)(4)) must be published before a "routine use" is put into effect; i.e., before a record is disclosed for such a use.

It is clearly permissible to publish the entire system notice (prescribed by subsection (e)(4)) as the notice of "routine use" provided that such "routine uses" are not put into effect until the required 30 day notice period. If an entire system notice is not published, the notice of "routine use" issued pursuant to subsection (e)(11) must, as a minimum, contain

The name of the system of records for which the "routine use" is to be established;

Where feasible, the authority for the system (see discussion of subsection (e)(1), and the required notice to the individual in subsection (e)(3)(A)), above);

The categories of records maintained;

The proposed "routine use(s)";

And the categories of recipients for each proposed "routine use".

For new "routine uses" of systems for which a public notice under subsection (e)(4) has already been published, reference should be made to that public notice.

A notice in the FEDERAL REGISTER inviting public comment on a proposed new "routine use" is required.

For all existing systems of records not later than August 28, 1975. (Since 30 days advance notice of a "routine use" is required, an agency that fails to publish necessary notices for existing systems on or prior to August 28 may find that it is precluded from making necessary inter-agency transfers until it has complied with this provision);

For an existing system of records, whenever a new "routine use" is proposed. A new "routine use" is one which involves disclosure of records for a new purpose compatible with the purpose for which the record is maintained or to a new recipient or category of recipients (even if other uses are concurrently curtailed); and

For any new systems of records for which "routine uses" are contemplated.

SECTION (f) AGENCY RULES

Subsection (f) "In order to carry out the provisions of this section, each agency that maintains a system of records shall promulgate rules, in accordance with the requirements (including general notice) of section 553 of this title, which shall—"

Agencies must promulgate rules to implement the provisions of the Act in accordance with the requirements of section 553 of title 5 of the United States Code including publication of the rules in the FEDERAL REGISTER so that interested persons can have an opportunity to comment. A "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedures, or practice requirements of agency * * *" (5 U.S.C. 551(4)). Formal hearings are not required with respect to rules issued under this section. However, formal hearings are not precluded by this section and, in particular instances, agencies may elect to use the formal hearing procedure.

Two distinct objectives must be satisfied by the rules promulgated pursuant to this subsection:

They must provide the public with sufficient information to understand how an agency is complying with the law; and

They must provide sufficient information for individuals to exercise their rights under the Act.

Rules promulgated under this subsection differ from notices under subsection (e) in several ways:

Rules promulgated under this subsection are subject to requirements of section 553 of the Administrative Procedure Act governing the publication of proposed rules for public comment before issuing them as final rules.

Rules must only be published twice—as notice of rule making and when they are promulgated as final rules-unless they are subsequently modified. (They will, however, be included in an annual compilation published by GSA.)

A separate set of rules need not be published for each system of records that an agency maintains. The development of a single set of agency rules is encouraged wherever appropriate.

Agencies are required to publish proposed rules under this subsection allowing at least 30 days for public comment prior to publishing them as final rules. (For systems which will be in use on September 27, 1975, agencies will have

to publish rules not later than August 28, 1975.) No further republication of agency rules is required (other then their inclusion in the annual compilation published by the office of the Federal Register) unless a change is proposed.

The language of subsection (f) explicitly requires "general notice;" i.e., section 553(b) of title 5 which permits agencies not to publish a general notice if "persons subject thereto are named and either personally served or otherwise have actual notice * * *." shall not apply to rules promulgated under this subsection. Agencies should also be aware of the fact that, although the presumption is of the validity of the proposed rule, judicial review under the Administrative Procedure Act will be available to assure against arbitrary or capricious actions.

*Rules for Determining if an Individual is the Subject of a Record.* Subsection (f)(1) "Establish procedures whereby an individual can be notified in response to his request if any system of records named by the individual contains a record pertaining to him;"

The procedures for individuals to determine if a system of records contains records pertaining to them should be kept as simple as possible. The published procedures should specify—

To whom the request should be directed. As discussed above (subsection (e)(4)), for geographically decentralized systems, the individual should not be required to query each location unless the individual can reasonably be expected to be able to discern which location would have a record if one existed; e.g., by place of birth, place of employment. While the development of central indexes to satisfy the requirements of this provision is discouraged, such indexes may be necessary in some instances.

The information necessary to identify the record. Where the system employs a specialized identification scheme, the individual should not be required to provide such a number or symbol as an absolute requirement, although the individual might be requested to supply it if he or she can reasonably be expected to know it. Instead, alternative combinations of personal characteristics may be used to identify individuals who may have lost, forgotten, or are unaware of their identification numbers or symbols. For example, the combination of name, date of birth, place of birth, and father's first name may be sufficient to identify an individual without the use of a system identification number. As was suggested above, the development of new retrieval and indexing capabilities is not encouraged, rather agencies should exploit existing capabilities to serve individual needs. Restrictions on the use of the Social Security Number as an identifier established by Section 7 of this Act should also be noted where applicable.

Any requirements for verification of identity. These may only be imposed when the fact of the existence of a record would not be required to be disclosed under the Freedom of Information Act (5 U.S.C. 552).

Agency procedures should provide for acknowledgement of the inquiry within 10 days (excluding Saturdays, Sundays, and legal public holidays).

*Rules for Handling Requests for Access.* Subsection (f)(2) "Define reasonable times, places, and requirements for identifying an individual who requests his record or information pertaining to him before the agency shall make the record or information available to the individual;"

The development of procedures for individuals to identify themselves for the purposes of gaining access to their records will necessarily vary depending on the nature, location, and sensitivity of the records in the system. Care must be exercised to assure that the requirements for verification of identity are not so cumbersome as to prevent individuals from gaining access to records to which they are entitled to have access. The requirements pertaining to verification of identity contained in subsection (f)(1), above, should also be noted.

"Reasonableness" will be measured in terms of

The risk of access being granted to an individual who is not entitled to access weighed against the probable harm (including embarrassment) to the individual to whom the record pertains which would result from unauthorized access; and

The standards for verification of identity which a typical individual about whom record is maintained could be expected to meet.

When agencies specify that individuals may (or must) present themselves in person to verify their identity, hours and locations specified should take into account the kinds of individuals about whom records are maintained. For example, it may be appropriate to ask a current employee who seeks access to his record to present himself to the agency personnel office during normal working hours. No requirements may be established which would have the effect of impeding an individual in exercising his or her right to access.

Agencies which maintain systems of records on widely dispersed groups of individuals and which have field offices equipped to do so, are encouraged to use those offices as sites at which an individual can present a request for access even though his or her records may not be maintained at any one of those field offices. The information necessary to identify individuals should be kept to the absolute minimum and neither this provision nor any other provision of the Act should be used for the purpose of acquiring and storing additional information about an individual.

The published rules prescribing procedures for verification of identity will include—

A list of the locations and/or mailing addresses of locations to which the request may be presented;

When in-person verification is required or permitted, the hours when those locations are open (including the dates of holidays on which they are closed); and

Documents which the agency will require, if any, to establish the identity of the individual (specifying as many alternatives as possible).

*Rules for Granting Access to Records.* Subsection (f)(3) "Establish procedures for the disclosure to an individual upon his request of his record or information pertaining to him, including special procedure [sic], if deemed necessary, for the disclosure to an individual of medical records including psychological records, pertaining to him;

Individuals may be granted access to their records either in person or by having copies mailed to them. The nature of the system and of the individuals on whom records are maintained will determine which method is appropriate. If an agency determines that it can grant access to records only by providing a copy of the record through the mail because it cannot provide "reasonable" means for individuals to have access to their records in person, it may not charge a fee for making the copy.

The issue of access to medical records was the subject of extensive discussion during the development of the Act. As written, the Act provides that individuals have an unqualified right of access to records pertaining to them (with certain exceptions specified in subsections (j) and (k), below) but that the process by which individuals are granted access to medical records may, at the discretion of the agency, be modified to prevent harm to the individual. [See subsection (d)(1).]

As a minimum, rules issued pursuant to this subsection shall be consistent with the requirements of subsection (d)(1), and should include—

Some indication, for requests presented in person, as to whether the individual can expect to be granted immediate access to the record and, for written request, the expected time lag, if any, between receipt of a request for access and the granting of that access (see subsection (d)(2) for guidance on maximum response times); and

The locations at which individuals will be granted access to their records or the fact that access will be granted by providing copies by mail;

Notice that an individual when reviewing a record in person, may be accompanied by another individual of his or her choosing and the agency's requirements, if any, for a written statement authorizing that individual's presence. Such authorization statements, if employed, should be as brief as possible.

*Rules for Amending Records.* Subsection (f)(4) "Establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to the individual, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his rights under this section;"

Agency procedures for permitting an individual to request amendment of a record shall be consistent with subsec-

28968          **NOTICES**

tions (d) (2) and (3) and shall as a minimum, specify—

The official(s) to whom the request is to be directed;

The identifying information required to relate the request to the appropriate record;

The official(s) to whom a request for a review of an initial adverse determination on request to amend may be taken; and

Offices/officials from whom assistance can be obtained in preparing a request to amend a record or to appeal an initial adverse determination or to learn further of the provisions for judicial review.

If the agency deems it appropriate to establish (or already has) a formal reviewing mechanism for assessing the accuracy of its records or for reconciling disputes, that mechanism or board should be described in its rules published pursuant to this subsection. This provision does not require the establishment of new, separate review mechanisms where such capabilities exist and are, or can be modified to be, in conformance with this Act.

*Rules Regarding Fees.* Subsection (f) (5) "Establish fees to be charged, if any, to any individual for making copies of his record, excluding the cost of any search for and review of the record."

Fees may be charged to an individual under this section only for the making of copies of records when requested by the individual. As stated above (subsection (f)(3)), when copies are made by the agency incident to granting access to a record, a fee may not be charged. (It should be noted that the provisions on fees charged to an individual under this Act differ from those governing fees charged to the public. See 5 U.S.C. 552, as amended, the Freedom of Information Act, for guidance on fees for copies of records made available to the public.)

"[An] agency may not charge the individual for time spent searching for requested records or for time spent in reviewing records to determine if they fall within the disclosure requirements of the Act." (House Report 93-1416, p. 17.) When an individual requests a copy of a record, pursuant to subsection (d)(1) (access to records), the fee charged may not exceed the direct cost of making the copy (printing, typing, or photocopying and related personnel and equipment costs) and may not include any cost of retrieving the information. In establishing fee schedules, agencies should also consider the cost of collecting the fee in determining when fees are appropriate.

*Annual Publication of Notices and Rules.* Subsection (f) (final paragraph—unnumbered) "The Office of the Federal Register shall annually compile and publish the rules promulgated under this section and agency notices published under section (e)(4) of this section in a form available to the public at low cost."

The annual compilation of public notices (subsection (e)(4)) and agency rules (subsection (f) (1) through (5)) will be produced in a form which promotes the exercise of individual rights under this Act.

The General Services Administration will issue guidance on the format and timing for submission of rules and notices to reduce the cost of preparing and publishing the rules and notices, to minimize redundancy wherever possible, and otherwise to enhance the utility of these publications. For example, the various provisions of subsection (e)(4) and (f) (1) through (4) calling for lists of names and addresses need not be treated as separate portions of the annual notice for each system.

SUBSECTION (g) CIVIL REMEDIES

This subsection prescribes the circumstances under which an individual may seek court relief in the event that a Federal agency violates any requirement of the Privacy Act or any rule or regulation promulgated thereunder, the basis for judicial intervention, and the remedies which the courts may prescribe. It should be noted that an individual may have grounds for action under other provisions of the law in addition to those provided in this section. For example—

An individual may seek judicial review under other provisions of the Administrative Procedure Act (APA).

An individual may file a complaint alleging possible criminal misconduct under section (i), below.

A Federal employee may file a grievance under personnel procedures. It should also be noted that an agency/employee responsible for an adverse action against an individual may be personally subject to civil suit, particularly where the agency/employee acted in a manner that was intentional or willful.

Judgments, costs, and attorney's fees assessed against the United States under this subsection would appear to be payable from the public funds rather than agency funds. 28 U.S.C. 2414 and 31 U.S.C. 724a (Payment of Judgments); 28 U.S.C. 1924 (Costs). While it is not the purpose of these guidelines to discuss the jurisdiction of the district courts or the procedures in such cases, it should be noted that most cases arising under subsection (g) will be handled by the General Litigation Section of the Civil Division of the Department of Justice. In these cases, upon receipt of a copy of the summons and complaint served upon the Attorney General and notification of its filing by the United States Attorney (see Rule 4, Federal Rules of Civil Procedure), the General Litigation Section will request the agency to furnish a litigation report.

Some agencies are authorized to conduct their own litigation. Where its authority permits, the agency may decide to handle its own cases under this Act. In view of the general litigation responsibility which the Department of Justice has for all other departments and agencies in the executive branch, it is important that agencies handling their own litigation under this Act keep the Department of Justice currently informed of their progress, and forward to the Civil Division copies of significant documents which are filed in such cases.

Each agency should maintain a complete and careful record of the administrative procedures followed in processing this statute. The record should be maintained so that it can be readily certified as the complete administrative record of the proceedings as a basis for possible use in litigation.

*Grounds for Action.* Subsection (g) (1) "Civil Remedies. Whenever any agency"

The subsection authorizing civil actions by individuals is designed to assure that an individual who (1) was unsuccessful in an attempt to have an agency amend his or her record; (2) was improperly denied access to his or her record or to information about him or her in a record; (3) was adversely affected by an agency action based upon an improperly constituted record; or (4) was otherwise injured by an agency action in violation of the Act will have a remedy in the Federal District courts.

*Refusal to Amend a Record.* Subsection (g)(1)(A) "Makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection;"

An individual may seek judicial review of an agency's determination not to amend a record pursuant to a request filed under subsection (d)(2) under either one of two conditions—

The individual has exhausted his or her recourse under the procedures established by the agency pursuant to subsection (d)(3) (appeals on the agency's refusal to amend) and the reviewing official has also refused to amend the record, or

The individual contends that the agency has not considered the request to review in a timely manner or otherwise has not acted in a manner consistent with the requirements of subsection (d)(3). Such an action could presumably involve a challenge either to the agency's procedures published under subsection (f)(4) or to the agency head's decision to extend the period of review "for good cause shown" under subsection (d)(3).

An individual may also bring a civil action based on allegedly inaccurate records if it can be shown that a decision adverse to the individual resulted from that inaccuracy. See subsection (g)(1)(C). However, no test of injury is required to bring an action under subsection (g)(1)(A).

The basis for judicial review and the available remedies in actions brought under this subsection are found in subsection (g)(2).

*Denial of Access to a Record.* Subsection (g)(1)(B) "Refuses to comply with an individual request under subsection (d)(1) of this section;"

Under this subsection, individuals may challenge a decision to deny them access to records to which they consider themselves entitled (under subsection (d)(1)). The action giving rise to the suit may be the agency head's determination (pursuant to subsection (k), specific exemptions) to exempt a system of records from the requirements that individuals be granted access. "Since access to a file

is the key to insuring the citizen's right of accuracy, completeness, and relevancy, a denial of access affords the citizen the right to raise these issues in court. This would be the means by which a citizen could challenge any exemption from the requirements of [the Act]." (Senate Report 93-1183, p. 82). It should be noted that systems of records covered under subsection (j) (general exemptions) are permitted to be exempted from this provision.

This provision is also the one by which individuals may contest an agency's refusal to grant access as a result of its interpretation of the definitions in the Act as they apply to information maintained by an agency and for the exclusion set forth in subsection (d)(5), denial of access to records compiled in reasonable anticipation of litigation. No test of injury is required to bring action under subsection (g)(1)(B). The basis for judicial review and available remedies are found in subsection (g)(3).

*Failure to Maintain a Record Accurately.* Subsection (g)(1)(C) "Fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities, of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual;" or

An individual may bring an action under this subsection only if it can be shown that the deficiency in the record resulted in an adverse determination by the agency which maintained the record, on the basis of the record. "An action also lies if the agency makes an adverse determination based upon a record which is inaccurate, untimely, or incomplete. However, in order to sustain such action, the individual must demonstrate the causal relationship between the adverse determination and the incompleteness, inaccuracy, irrelevance or untimeliness of the record." (House Report 93-1416, p. 17)

An adverse action is one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient. This provision, in essence, allows an individual to test the agency's compliance with subsection (e)(5).

It should also be noted that, under this subsection, an agency may be liable as a consequence of its failure to maintain a record accurately only if it is shown that its failure has been "intentional or willful" (subsection (g)(4)). (No such test is required under the provisions of subsection (g)(1)(A), above, under which an individual can seek a review of the accuracy of a record.)

Neither this subsection nor subsection (g)(1)(A) was intended to permit an individual collaterally to attack information in records pertaining to him which has already been the subject of or for which adequate judicial review is available. For example, these provisions were not designed to afford an individual an alternate forum in which he can challenge the basis for a criminal conviction or an asserted tax deficiency.

The basis for judicial review and available remedies are found in subsection (g)(4).

*Other Failures to Comply with the Act.* Subsection (g)(1)(D) "Fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual."

In addition to the grounds specified in subsections (g)(1) (A) through (C) above, an individual may bring an action for any other alleged failure by an agency to comply with the requirements of the Act or failure to comply with any rule published by the agency to implement the Act (subsection (f)) provided it can be shown that—

The action was "intentional or willful";

The agency's action had an "adverse effect" upon the individual; and

The "adverse effect" was causally related to the agency's actions.

The basis for judicial review and available remedies provided by this Act are found in subsection (g)(4).

*Basis for Judicial Review and Remedies for Refusal to Amend a Record.* Subsection (g)(2) "(A) In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct. In such a case the court shall determine the matter de novo.

"(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed."

When an individual seeks judicial review of the accuracy, timeliness, completeness, or relevance of a record either as a result of a challenge to the agency's refusal to amend a record or because the individual alleges that the agency's process for review does not conform to subsection (d)(3), the court is required to review the matter as if it were an initial determination (de novo). Such a review may extend to the agency's criteria established in conformance with subsections (e)(1) and (5) for "accuracy, relevance, timeliness, and completeness" as they relate to the purposes for which the agency maintains the record.

Unlike the judicial review of a denial of access to a record, in a review of refusal to amend a record the burden to justify its action is not expressly placed upon the agency by the Privacy Act. This was intended to result in placing the burden of challenging the accuracy of the record upon the individual. As a result, agencies should not maintain additional records solely for the purpose of validating the accuracy, timeliness, and completeness or relevance of other records they maintain.

If the court finds for the individual against the agency it may

Direct the agency to amend the record or to take such other steps as it deems appropriate.

Require the agency to pay court costs and attorney fees. "It is intended that such award of fees not be automatic, but rather, that the courts consider the criteria as delineated in the existing body of law governing the award of fees." (House Report 93-1416, p. 17)

*Basis for Judicial Review and Remedies for Denial of Access.* Subsection (g)(3) "(A) In any suit brought under the provision (g)(1)(B) of this section, the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to sustain its action.

"(B) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this paragraph in which the complainant has substantially prevailed."

In conducting its review,

"[T]he court is required to determine such matters *de novo! mloe and the burden of proof is upon the agency to sustain the exemption.*" (House Report 93-1416, p. 17) In *view of the sensitivity of some of the records to which access may be sought, the court, in examining those records may do so in camera. "A person seeking access to a file which he has reason to believe is being maintained on him for the purposes of determining its accuracy and completeness, for example, or to take advantage of the rights afforded him* * * * *could raise the question of the propriety of the exemption which denies him access to his files. In deciding whether the citizen has a right to see his file or to learn whether the agency has a file on him, the court would of necessity have to decide the legitimacy of the agency's reasons for the denial of access, or refusal of an answer. The Committee intends that any citizen who is denied a right of access under the Act may have a cause of action, without the necessity of having to show that a decision has been made on the basis of it, and without having to show some further injury, such as loss of job or other benefit, that might stem from the denial of access.*" (Senate Report 93-1183, p. 82.)

If the court finds for the individual against the agency, it may—

Direct the agency to grant the individual access as provided under subsection (d)(1), above.

Require the agency to pay court costs and attorney fees. "It is intended that such award of fees not be automatic, but rather, that the courts consider the criteria as delineated in the existing body of law governing the award of fees." (House Report 93-1416, p. 17)

*Basis for Judicial Review and Remedies for Adverse Determination and Other Failures to Comply.* Subsection (g)(4) "In any suit brought under the

**28970**          **NOTICES**

provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

"(A) Actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

"(B) The costs of the action together with reasonable attorney fees as determined by the court."

In any action brought for failure to comply with the provisions of the Act, other than those covered in subsection (g)(1) (A) and (B) (refusal to amend a record or denial of access) it must be shown that—

The failure of the agency to comply was "intentional or willful;"

There was injury or harm to the individual; and

The injury was causally related to the alleged agency failure.

As indicated above, these criteria do not apply to suits brought to amend a record pursuant to subsection (g)(1)(A) so that an individual may, under certain circumstances, properly bring an action either under subsections (g)(1)(A) or (g)(1)(C).

When the court finds that an agency has acted willfully or intentionally in violation of the Act in such a manner as to have an adverse effect upon the individual, the United States will be required to pay

Actual damages or $1,000, whichever is greater

Court costs and attorney fees.

Unlike subsections (g) (2) and (3) above, which make the award of court costs and attorney fees discretionary in successful suits brought under subsections (g)(1) (A) and (B), such awards are required to be made in actions in which the individual has prevailed under subsections (g)(1) (C) and (D). See House Report 93–1416, pp. 17–18 and the *Congressional Record*, December 18, 1974, P.H. 122445 for further discussion of this point.

*Jurisdiction and Time Limits.* Subsection (g)(5) "An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation. Nothing in this section shall be construed to authorize any civil action by reason of any injury sustained as the result of a disclosure of a record prior to the effective date of this section."

Action may be brought in the district court for the jurisdiction in which the individual resides, or has a place of business, or in which the agency records are situated, or in the District of Columbia.

"The statute of limitations is two years from the date upon which the cause of action arises, except for cases in which the agency has materially or willfully misrepresented any information required to be disclosed and when such misrepresentation is material to the liability of the agency. In such cases the statute of limitations is two years from the date of discovery by the individual of the misrepresentation." (House Report 93–1416, p. 18)

A suit may not be brought on the basis of injury which may have occurred as a result of an agency's disclosure of a record prior to September 27, 1975; e.g., disclosure without the consent of the individual or an adverse action resulting from a disclosure. This language is intended to preclude agencies from being held liable, under this law, for actions taken prior to its effective date.

SUBSECTION (h) RIGHTS OF LEGAL GUARDIANS

Subsection (h) "For the purposes of this section, the parent of any minor, or the legal guardian of any individual who has been declared to be incompetent due to physical or mental incapacity or age by a court of competent jurisdiction, may act on behalf of the individual."

This section is intended to ensure that minors or individuals who have been declared to be legally incompetent have a means of exercising their rights under the Act. It also has the effect of making individuals acting in loco parentis to minors, parents, legal guardians, and custodians the same as the individual for purposes of giving consent for disclosure (subsection (b)) and being informed of the purposes for which records are maintained (subsection (e)(3)).

It should be noted that this provision is discretionary and that individuals who are minors are authorized to exercise the rights given to them by the Privacy Act or, in the alternative, their parents or those acting in loco parentis may exercise them in their behalf.

(i) CRIMINAL PENALTIES

This subsection establishes criminal sanctions for three possible violations

Unauthorized disclosure.

Failure to publish a public notice or a system of records subject to the Act.

Obtaining access to records under false pretenses.

The first two are directed at actions of officers and employees of Federal agencies and (pursuant to subsection (m)) certain contractor personnel. Agencies should ensure that all personnel are informed of the requirements of the Act and, pursuant to subsection (e)(9), rules of conduct, are given periodic training in this area.

*Criminal Penalties for Unauthorized Disclosure.* Subsection (i)(1) "Any officer or employee of an agency, who by virtue of his employment or official position, has possession of, or access to, agency records which contain individually identifiable information the disclosure of which is prohibited by this section or by rules or regulations established thereunder, and who knowing that disclosure of the specific material is so prohibited, willfully discloses the material in any manner to any person or agency not entitled to receive it, shall be guilty of a misdemeanor and fined not more than $5,000."

It is a criminal violation of the provisions of the Act if an employee, knowing that disclosure is prohibited, willfully discloses a record without the written consent of the individual to whom it pertains, at his or her request, or for one of the reasons set forth in subsections (b)(1) through (11), conditions of disclosure.

Criminal Penalties for Failure To Publish a Public Notice. Subsection (i)(2) "Any officer or employee of any agency who willfully maintains a system of records without meeting the notice requirements of subsection (e)(4) of this section shall be guilty of a misdemeanor and fined not more than $5,000."

As was discussed in connection with subsection (e)(4), above, a basic objective of the Act is to assure that there is no system of records whose very existence is kept secret. An agency is required to publish a public notice about each system of records which it maintains. It is a criminal violation of the Act willfully to maintain a system of records and not to publish the prescribed public notice. The exemption provisions, subsections (j) and (k), do not allow an agency head to exempt any system of records from the requirement to publish a public notice of its existence, although that notice may be somewhat abbreviated. (See subsections (a)(5), definitions, and (e)(4), public notice, for guidelines on what constitutes a system.) It should be noted that, under agency procedures, the officer or employee who maintains the system may not be the one who is responsible for publishing the notice. Agency procedures should make the responsibilities of each clear. The officer or employee who maintains the system has an obligation to notify the one responsible for publishing the notice. Similarly the officer or employee responsible for publishing the notice, once notified of the existence of a system, must make that fact public.

*Criminal Penalties for Obtaining Records under False Pretenses.* Subsection (i)(3) "Any person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses shall be guilty of a misdemeanor and fined not more than $5,000."

This provision makes it a criminal act knowingly and willfully to request or gain access to a record about an individual under false pretenses. It is likely that the principal application of this provision will be to deter individuals from

making fraudulent requests under subsection (d)(1), access to records.

SUBSECTIONS (j) AND (k) EXEMPTIONS

The drafters of the Act recognized that the application of all of the requirements of the Act to certain categories of records would have had undesirable and often unacceptable effects upon agencies in the conduct of necessary public business.

Two categories of exemptions are established: General exemptions (subsection (j)) and specific exemptions (subsection (k)). The principal difference between the two categories is that systems of records exempted under subsection (j) may be exempted from more provisions of the Act than those exempted under subsection (k). Exemptions under subsection (j) may be exempted from the civil remedies provision and, in particular, the judicial review under subsections (g)(1)(B) and (g)(3), civil remedies.

In applying any of the exemption provisions of the Act, it is important to recognize the following:

No system of records is automatically exempt from any provision of the Act. To obtain an exemption for a system from any requirement of the Act, the head of the agency that maintains the system must make a determination that the system falls within one of the categories of systems which are permitted to be exempted, and publish the determination as a rule in accordance with the requirements (including general notice) of section 553 of the Administrative Procedure Act. That notice must include the specific provisions from which the system is proposed to be exempted and why the agency considers the exemption necessary.

The requirement to publish a public notice (subsection (e)(4), above) applies to all systems of records maintained by an agency. Certain other provisions such as conditions of disclosure (b), accounting for disclosures ((c)(1) and (2)) and restrictions on maintaining records on First Amendment activities ((e)(7)) also apply to all systems of records. Agencies may not exempt any system, as defined in subsection (a)(5) from any of these requirements.

In some instances, systems may contain records which are subject to exemption under more than one subsection in subsections (j) or (k). In those cases the notices claiming exemption should, if possible, specify which types of records are subject to which exemption.

Agency records which are part of an exempted system may be disseminated to other agencies and incorporated into their non-exempt records systems. The public policy which dictates the need for exempting records from some of the provisions of the Act is based on the need to protect the contents of the records in the system—not the location of the records. Consequently, in responding to a request for access where documents of another agency are involved, the agency receiving the request should consult the originating agency to determine if the records in question have been exempted from particular provisions of the Act. A copy of the request may be forwarded to the originating agency for handling of its documents where such a procedure would result in a more rapid response to the request for access but the agency receiving the request remains responsible for assuring a prompt response.

Agencies which elect to invoke exemptions are encouraged to adopt procedures similar to those prescribed by the Act wherever appropriate. For example, it may be appropriate to seek an exemption from the access provision ((d)(1)) for certain prisoner records because they contain court controlled pre-sentence reports, but a more limited access procedure may be appropriate.

SUBSECTION (j)—GENERAL EXEMPTIONS—APPLICABILITY AND NOTICE REQUIREMENTS

Subsection (j) "The head of any agency may promulgate rules, in accordance with the requirements (including general notice), of sections 553 (b) (1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from any part of this section except subsections (b), (c) (1) and (2), (e)(4) (A) through (F), (e) (6), (7), (9), (10), and (11), and (i) if the system of records is—
"(1) * * *
"(2) * * *

"At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section."

This section permits agency heads to exempt systems of records which are maintained by the Central Intelligence Agency or for criminal law enforcement purposes, as further discussed in subsections (j) (1) and (2), below, from all provisions of the Act except the—

Conditions of disclosure, ((b));

Accounting for disclosures and retention of the accounting, ((c) (1) and (2));

Annual public notice except for procedures for identifying a record, gaining access to it, contesting its accuracy, and identifying the sources of records, ((e) (4) (A) through (F));

Obligation to check the accuracy, relevance, timeliness, and completeness of records before disclosing them to a person other than another agency or to the public under the Freedom of Information Act, ((e)(6));

Restrictions on maintaining records on First Amendment activities, ((e)(7));

Establishment of rules of conduct and administrative, technical, and physical safeguards, ((e) (9) and (10), respectively);

Publication of "routine use" notices ((e)(11)); and

Criminal penalties, ((i)).

When the head of an agency determines that a system of records maintained by the agency should be exempted from certain provisions of the Act, a notice must be published in the FEDERAL REGISTER which specifies, as a minimum:

The name of the system (This should be the same as that given in the annual public notice under subsection (e)(4)); and

The specific provisions of the Act from which the system is to be exempted and the reasons therefor. A separate reason need not be stated for each provision from which the system is being exempted, where a single explanation will serve to explain the entire exemption.

The agency head's determination is considered to be a rule under the Administrative Procedure Act (APA) and is subject to the requirements of general notice and public comment of that Act, 5 U.S.C. 553. While general notice of a proposed rule is not required under the APA when "persons subject thereto are named and either personally served or otherwise have actual notice thereof * * *;" the use of the phrase "including general notice" means that individual notifications will not suffice.

The systems of records and the number of records (i.e., individuals) in each, which were exempted from any of the provisions of the Act under this subsection will be required to be included in the annual report prepared as required by subsection (p). It should be emphasized that the exemption provisions are permissive, i.e., an agency head is authorized, but not required, to exempt a system from all or any portion of selected provisions of the Act when he or she deems it to be in the best interest of the government and consistent with the Act and these guidelines. In commenting on this provision, the House Committee noted:

The Committee also wishes to stress that this section is not intended to require the C.I.A. and criminal justice agencies to withhold all their personal records from the individuals to whom they pertain. We urge those agencies to keep open whatever files are presently open and to make available in the future whatever files can be made available without clearly infringing on the ability of the agencies to fulfill their missions. (House Report 93–1416, p. 19)

To the extent practicable, records permitted to be exempted from the Act should be separated from those which are not. Further, while the language permits agency heads to exempt systems of records, agencies should exempt only portions of systems wherever it is possible.

*General Exemption for the Central Intelligence Agency.* Subsection (j)(1) "Maintained by the Central Intelligence Agency; or"

*General Exemption for Criminal Law Enforcement Records.* Subsection (j)(2) "Maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of crim-



inal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."

SUBSECTION (k) SPECIFIC EXEMPTIONS

*Applicability and Notice Requirements.* Subsection (k) "The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553(b) (1), (2), and (3), (c), and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4) (G), (H), and (I) and (f) of this section if the system of records is—"

"(1) * * *

    *    *    *    *    *

"(7) * * *

"At the time rules are adopted under this subsection, the agency shall include in the statement required under section 553(c) of this title, the reasons why the system of records is to be exempted from a provision of this section."

This subsection permits agency heads to exempt systems of records from a limited number of provisions of the Act. In addition to the provisions from which no system may be exempted under subsection (j), a system which falls under any one of the seven categories listed in this subsection may not be exempted from the following provisions:

Informing prior recipients of corrected or disputed records, ((c)(4));

Collecting information to be used in determinations about an individual directly from the individual to whom it pertains, ((e)(2));

Informing individuals asked to supply information of the authority by and purposes for which it is collected and whether or not providing the information is mandatory, ((e)(3));

Maintaining records with such accuracy, completeness, timeliness, and relevance as is reasonable for the agency's purposes, ((e)(5));

Notifying the subjects of records disclosed under compulsory process, ((e)(8)); and

Civil remedies, (g).

As with subsection (j), upon determining that a system is to be exempted under this section, the agency head is required to publish that determination as a rule under the Administrative Procedure Act subject to public comment. That notice must, as a minimum, specify

The name of the system (as in the annual notice under subsection (e)(4)); and

The specific provisions of the Act from which the system is to be exempted and the reason therefor.

The agency head's determination is considered to be a rule under the Administrative Procedure Act (APA) and is subject to the requirements of general notice and public comment of that Act, 5 U.S.C. 553. While general notice of a proposed rule is not required under the APA when "persons subject thereto are named and either personally served or otherwise have actual notice thereof * * *", the language "including general notice" means that individual notification will not suffice.

In addition, the systems of records and the number of records in each, which were exempted from any of the provisions of the Act under this section will be required to be included in the annual report required by subsection (p).

It should also be noted that the exemption provisions are permissive; i.e., an agency head is authorized, but not required, to exempt a system when he or she deems it to be in the best interest of the government and consistent with the Act and these guidelines. "Also as with section (j) records, the Committee urges agencies maintaining section (k) records to open those documents to the individuals named in them insofar as such action would not impair the proper functioning of those agencies." (House Report 93–1416, p. 20)

In the process of utilizing any of these exemptions, agencies should, wherever practicable, segregate those portions of systems for which an exemption is considered necessary so as to hold to the minimum the amount of material which is exempted. While the language permits agency heads to exempt entire systems of records, the language of certain of the specific provisions below suggests that it may, in some instances, be appropriate to exempt only portions of systems where it is not possible to segregate entire systems. For example, records containing classified material to which access may be denied under (k)(1) should be screened to permit access to unclassified material, and only these portions of investigative material which meet all of the criteria in (k)(2) or (5) should be withheld. However, in the case of records which are permitted to be exempted to the extent that their disclosure would reveal the identity of a confidential source, extreme care should be exercised to ensure that the content of any records being segregated does not disclose the identity of the source.

*Exemption for Classified Material.* Subsection (k)(1) "Subject to the provisions of section 552(b)(1) of this title;"

This subsection permits agency heads to exempt, from certain provisions of the Act, those systems of records which are "(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order." (5 U.S.C. 552(b)(1), as amended by Public Law 93–502)

The Freedom of Information Act, as amended by P.L. 93–502, authorizes de novo judicial review of an agency's decision to classify a document, including in camera examination of the document when the court deems it necessary to resolve a dispute as to whether a document is properly being withheld under the provisions of subsection (b)(1) of the Freedom of Information Act. See the Conference Report on H.R. 12471, House Report 93–1380, pp 8–9.

Useful guidance in the application of this provision is found in the Senate Committee report discussion of a similar provision on classified materials:

The potential for serious damage to the national defense or foreign policy could arise if the notice describing any information system included categories or sources of information * * * or provided individuals access to files maintained about them * * *

The Committee does not by this legislation intend to jeopardize the collection of intelligence information related to national defense or foreign policy, or open to inspection information classified pursuant to Executive Order 11652 to persons who do not have an appropriate security clearance or need to know.

This section is not intended to provide a blanket exemption to all information systems or files maintained by an agency which deal with national defense and foreign policy information. Many personnel files and other systems may not be subject to security classification or may not cause damage to the national defense or foreign policy simply by permitting the subjects of such files to inspect them and seek changes in their contents under this Act. (Senate Report 93–1183, p. 74)

*Exemption for Investigatory Material Compiled for Law Enforcement Purposes.* Subsection (k)(2) "Investigatory material compiled for law enforcement purposes, other than material within the scope of subsection (j)(2) of this section: *Provided, however,* That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence;

This provision allows agency heads to exempt a system of records compiled in the course of an investigation of an alleged or suspected violation of civil laws, including violations of the Uniform Code of Military Justice and associated regulations, except to the extent that the system is more broadly exempt under the provision covering records maintained by an agency whose principal function pertains to the enforcement of criminal laws (subsection (j)(2)). This exemption was drafted because "[i]ndividual access to certain law enforcement files could impair investigations, particularly those which involve complex and continuing patterns of behavior. It would alert subjects of investigations that their activities are being scrutinized, and thus allow them time to take measures to prevent detection of illegal action or escape prosecution." (House Report 93–11416, p. 19.)

The phrase "investigatory material compiled for law enforcement purposes" is the same phrase as opened exemption (b)(7) to the Freedom of Information Act prior to its recent amendment (Public Law 93-502), with the exception of the use of the word "material" in the Privacy Act for the word "files" in the now amended Freedom of Information Act exemption. The intent was to have the same meaning given to this phrase in the Privacy Act as had been given to it in the Freedom of Information Act except that the phrase would apply to material as opposed to entire files. The case law, then, which had interpreted "investigatory" and "compiled" and "law enforcement purposes" for the now amended portions of exemption (b)(7) of the Freedom of Information Act should be utilized in defining those terms as they appear in subsection (k)(2) of the Privacy Act.

It was further recognized that "due process" in both civil action and criminal prosecution will assure that individuals have a reasonable opportunity to learn of the existence of, and to challenge, investigatory records which are to be used in legal proceedings.

To the extent that such an investigatory record is used as a basis for denying an individual any right, privilege, or benefit (including employment) to which the individual would be entitled in the absence of that record, the individual must be granted access to that record except to the extent that access would reveal the identity of a confidential source.

The language permitting an agency to withhold records used as a basis for denying a benefit to the extent that the record would reveal the identity of an individual who furnished information in confidence is very narrowly drawn and must be treated carefully (see also subsections (k)(5) and (7), below). For information collected on or subsequent to the effective date of this section (September 27, 1975) a record may only be withheld to protect the identity of a source if

An express guarantee was made to the source that his or her identity would not be revealed. (Such guarantees should be made on a selective basis; i.e., individuals from whom information is solicited for law enforcement purposes should be advised that their identity may be disclosed to the individual to whom the record pertains unless a source expressly requests that his or her identity not be revealed as a condition of furnishing the information.); and

The record, if stripped of the identity of the source would nontheless by its content reveal the identity to the subject.

It was recognized that the type of investigatory record covered by subsection (k)(2) currently contains substantial information which was obtained with the tacit understanding that the identity of the source would not be revealed. For this reason the Act provides that information in such records that was collected prior to the effective date of the Act may be withheld from the individual to whom it pertains to the extent that it was collected under an implied promise that its source would not be revealed and disclosing it would reveal the identity of the source.

The phrase "to the extent that" is particularly important. As implied above, if a record can be disclosed in such a way as to conceal its source, a promise of confidentiality to the source is not sufficient grounds for withholding it. Obviously, the content of certain records is such that it reveals the identity of the source even if the name of the source or other identifying particulars are removed; e.g., the record contains information that could only have been furnished by one individual known to the subject. Only in those cases, may the substance of the record be withheld to protect the identity of a source and then only to the extent necessary to do so. It is recognized, however that it may in some instances be very difficult for an agency to know whether the content of a record would, in and of itself, reveal its source. Therefore, it may be appropriate in light of the intent underlying this exemption, to exempt a record when any reasonable doubt exists as to whether its disclosure would reveal the identity of a confidential source.

Additional guidance on the circumstances under which an agency may withhold a record on the grounds that its disclosure would reveal the identity of a source who provided information under a pledge of confidentiality is found in Senator Ervin's statement on the compromise bill on the floor of the Senate.

The compromise provision for the maintenance of information received from confidential sources represents an acceptance of the House language after receiving an assurance that in no instance would that language deprive an individual from knowing of the existence of any information maintained in a record about him which was received from a "confidential source." The agencies would not be able to claim that disclosure of even a small part of a particular item would reveal the identity of a confidential source. The confidential information would have to be characterized in some general way. Theface of the item's existence and a general characterization of that item would have to be made known to the individual in every case.

Furthermore, the acceptance of this section in no way precludes an individual from knowing the substance and source of confidential information, should that information be used to deny him a promotion in a government job or access to classified information or some other right, benefit or privilege for which he was entitled to bring legal action when the government wished to base any part of its legal case on that information.

Finally, it is important to note that the House provision would require that all future promises of confidentiality to sources of information be expressed and not implied promises. Under the authority to prepare guidelines for the administration of this act it is expected that the Office of Management and Budget will work closer with agencies to insure that Federal investigators make sparing use of the ability to make express promises of confidentiality. (Congressional Record, December 17, 1974, p. S 21816)

The foregoing discussion with respect to confidentiality of sources is also applicable to the provisions of subsections (k)(5) and (7), below.

*Exemption for Records Maintained To Provide Protective Services.* Subsection (k)(3) "Maintained in connection with providing protective services to the President of the United States or other individuals pursuant to section 3056 of title 18;"

This exemption covers records which are not clearly within the scope of law enforcement records covered under subsection (k)(2) but which are necessary to assuring the safety of individuals protected pursuant to 18 U.S.C. 3056.

It was noted that "access to Secret Service intelligence files on certain individuals would vitiate a critical part of Secret Service work which was specifically recommended by the Warren Commission that investigated the assassination of President Kennedy and funded by Congress." (House Report 93-1416, p. 19)

*Exemption for Statistical Records.* Subsection (k)(4) "Required by statute to be maintained and used solely as statistical records;"

A "statistical record" is defined in subsection (a)(6) as "a record in a system of records maintained for statistical research or reporting purposes only and not used in whole or in part in making any determination about an identifiable individual, except as provided by section 8 of title 18."

It is the intent of this provision to permit exemptions for those systems of records which by operation of statute cannot be used to make a determination about an individual.

This provision permits an agency head to exempt a system of records which is used only for statistical, research, or program evaluation purposes, and which is not used to make decisions on the rights, benefits, or entitlements of individuals except as permitted by section 8 of Title 13. The use of the language "required by statute to be maintained * * * only" suggests that systems of records which qualify to be exempted under this provision are those composed exclusively of records that by statute are prohibited from being used for any purpose involving the making of a determination about the individual to whom they pertain; not merely that the agency does not engage in such uses.

Disclosure of statistical records [to the individual] in most instances would not provide any benefit to anyone, for these records do not have a direct effect on any given individual; it would, however, interfere with a legitimate, Congressionally-sanctioned activity. (House Report 93-1416, p. 19)

*Exemption for Investigatory Material Compiled for Determining Suitability for Federal Employment or Military Service.* Subsection (k)(5) "Investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the

source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence";

This provision permits an agency to exempt material from the individual access provision of the Act which would cause the identity of a confidential source to be revealed only if all of the following conditions are met:

The material is maintained only for purposes of determining an individual's qualifications, eligibility or suitability for military service, employment in the civilian service or on a Federal contract, or access to classified material. By implication, employment would include appointments to Federal advisory committees or to membership agencies, whether or not salaried;

The material is considered relevant and necessary to making a judicious determination as to qualifications, eligibility or suitability and could only be obtained by providing assurance to the source that his or her identity would not be revealed to the subject of the record; e.g., for "critical sensitive positions;" and

Disclosure of the record with the identity of the source removed would likely reveal the identity of the source; e.g., the record contains information which could only have been furnished by one of several individuals known to the subject.

(Since information collected prior to the effective date of the Act may have been gathered under an implied promise of confidentiality, that pledge may be honored and those records exempted if the other criteria are met.)

See subsection (k)(2), above, for a more extensive discussion of the circumstances under which records may be withheld to protect the identity of a confidential source.

This language was included to take into account the fact that the screening of personnel to assure that only those who are properly qualified and trustworthy are placed in governmental positions will, from time to time, require information to be collected under a pledge of confidentiality. Such pledges will be limited only to the most compelling circumstances; i.e.,

Without the information thus obtained, unqualified or otherwise unsuitable individuals might be selected; or

The potential source would be unwilling to provide needed information without a guarantee that his or her identity will not be revealed to the subject; or

To be of value in the personnel screening and often highly competitive assessments in which it will be used, the information must be of such a degree of frankness that it can only be obtained under an express promise that the identity of its source will not be revealed.

The Civil Service Commission and the Department of Defense (for military personnel) will issue regulations establishing procedures for determining when a pledge of confidentiality is to be made and otherwise to implement this subsection. These regulations and any implementing procedures will not provide that all information collected on individuals being considered for any particular category of positions will automatically be collected under a guarantee that the identity of the source will not be revealed to the subject of the record.

This provision has been among the most misunderstood in the Act. It should be noted that it grants authority to exempt records only under very limited circumstances. "It will not be the customary thing to make these promises of confidentiality, so that most all of the information [in investigatory records] will be made available." (Congressional Record, November 20, 1974, p. 10887.)

The term "Federal contracts" covers investigatory material on individuals being considered for employment on an existing Federal contract as well as investigatory material complied to evaluate the capabilities of firms being considered in a competitive procurement.

*Exemption for Testing or Examination Material.* Subsection (k)(6) "Testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service the disclosure of which would compromise the objectivity or fairness of the testing or examination process;"

This provision permits an agency to exempt testing or examination material used to assess the qualifications of an individual for appointment or promotion in the military or civilian service only if disclosure of the record to the individual would reveal information about the testing process which would potentially give an individual an unfair competitive advantage. For example, the Civil Service Commission and the military departments give written examinations which cannot be revised in their entirety each time they are offered. Access to the examination questions and answers could give an individual an unfair advantage. This language also covers certain of the materials used in rating individual qualifications. This subsection permits the agency to withhold a record only to the extent that its disclosure would reveal test questions or answers or testing procedures.

It was not the intent of this subsection to permit exemptions of information which are required to be made available to employees or members or are, in fact, made available to them as a matter of current practice. The presence of exemption (k)(7) is an indication of the intended narrow coverage of the exemptions set forth in (k)(6) and, similarly, the exemptions of (k)(7) and (k)(6) indicate the intended narrow coverage of the exemption set forth in subsection (k)(5).

*Exemption for Material Used To Evaluate Potential for Promotion in the Armed Services.* Subsection (k)(7) "Evaluation material used to determine potential for promotion in the armed services, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence."

The discussions of subsection (k)(2) and (5), above, should be reviewed in applying this provision. The same rationale regarding when and how the confidentiality of sources may be protected applies here.

The military departments will publish regulations specifying those categories of positions in the Armed Services for which pledges of confidentiality may be made when obtaining information on an individual's suitability for promotion. These categories will be narrowly drawn.

SUBSECTION (l) ARCHIVAL RECORDS

This subsection addresses the maintenance of those records which are transferred to the General Services Administration. It should be noted that there is a substantial difference between

Records which have been placed in records centers operated by the Administrator of General Services for "storage processing and servicing" pursuant to Section 3103 of Title 44; and

Records which are accepted by the Administrator of General Services "for deposit in the National Archives of the United States [because they] have sufficient historical or other value to warrant their continued preservation by the United States Government" pursuant to Section 2103 of Title 44.

The former, those for which the General Services Administration is essentially a custodian, are addressed in subsection (l)(1). The latter, archival records which have been transferred to the Archives and are maintained by the Archivist, are addressed in subsections (l)(2) and (l)(3).

*Records Stored in GSA Records Centers.* Subsection (l)(1) "Each agency record which is accepted by the Administrator of General Services for storage, processing, and servicing in accordance with section 3103 of title 44 shall, for the purposes of this section, be considered to be maintained by the agency which deposited the record and shall be subject to the provisions of this section. The Administrator of General Services shall not disclose the record except to the agency which maintains the record, or under rules established by that agency which are not inconsistent with the provisions of this section."

Records which are sent to the General Services Administration for storage as a result of determination by the agency head that to do so would "effect substantial economies or increase operating efficiency." (44 U.S.C. 3103), are deemed to be part of the records of the agency which sent them and are subject to the Act to the same extent that they would be if maintained on the agency's premises.

This language, in effect, constitutes a clarification of the term "maintain" (subsection (a)(3)) with respect to records which have been physically

transferred to GSA for storage. While records are stored in a records center, the agency which sent them to storage remains accountable for them and the General Services Administration effectively functions as an agent of that agency and maintains them pursuant to rules established by that agency.

Records stored in records centers often constitute the inactive portion of systems of records, the remainder of which are kept on agency premises; e.g., agency payroll and personnel records. Whenever practicable, these inactive records should be treated as part of the total system of records and be subject to the same rules and procedures. In no case may they be subject to rules which are inconsistent with the Privacy Act.

To assure the orderly and effective operation of the records center and consistent with its authority to issue regulations governing Federal agency records management policies (under title 44 of the United States Code), the Privacy Act and these guidelines; the General Services Administration shall issue general guidelines to the agencies on preferred methods for handling systems of records stored in Federal records centers. In view of the intent underlying this provision, agencies may consider that the records stored in Federal records centers are transferred intra-agency and need not publish notice of "routine uses" to enable these transfers.

*Records Archived Prior to September 27, 1975.* Subsection (l)(2) "Each agency record pertaining to an identifiable individual which was transferred to the National Archives of the United States Government as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, prior to the effective date of this section, shall, for the purposes of this section, be considered to be maintained by the National Archives and shall not be subject to the provisions of this section, except that a statement generally describing such records (modeled after the requirements relating to records subject to subsections (e)(4) (A) through (G) of this section) shall be published in the FEDERAL REGISTER."

Records transferred to the Archives for "preservation" pursuant to 44 U.S.C. 2103, prior to September 27, 1975 are considered to be maintained by the Archives but are not subject to other provisions of the Act.

However, the National Archives is required to issue general notices describing its current holdings which cover, to the extent applicable, the elements specified in subsection (e)(4). These should include, as a minimum—

The categories of individuals on whom records are maintained;

The types of information in those records; and

Policies governing access and retrieval.

"It is intended that the notice provision not be applied separately and specifically to each of the many thousands of separate systems of records transferred to the Archives prior to the effective date of this Act, but rather that a more general description be provided which pertains to meaningful groupings of record systems." (Congressional Record, December 18, 1974, p. H12245)

If, for any reason, a record currently in the Archives is disclosed to an agency for use by that agency in making a determination as to the rights, benefits, or entitlements of an individual, it becomes subject to the provisions of the Act to the same extent as any other record maintained by that agency.

*Records Archived On or After September 27, 1975.* Subsection (l)(3) "Each agency record pertaining to an identifiable individual which is transferred to the National Archives of the United States as a record which has sufficient historical or other value to warrant its continued preservation by the United States Government, on or after the effective date of this section, shall, for the purposes of this section, be considered to be maintained by the National Archives and shall be exempt from the requirements of this section except subsections (e)(4) (A) through (G) and (e)(9) of this section."

Records transferred to the Archives pursuant to 44 U.S.C. 2103 (for "preservation") on or after September 27, 1975 are considered to be maintained by the Archives for purposes of the Act but are only subject to selected provisions of the Act. "[They] are subject only to those provisions of this Act requiring annual public notice of the existence and character of the information systems maintained by the Archives, establishment of appropriate safeguards to insure the security and integrity of preserved personal information, and promulgation and implementation of rules to insure the effective enforcement of those safeguards." (Congressional Record, December 18, 1974, p. H 12245.)

The notice required for these records is on a system by system basis. "Since the records would already have been organized in conformity with the requirements of this section by the agency transferring them to the Archives, maintaining them in continued conformity with this law would not require any special effort." (House Report 93–1416, p. 20.)

The exclusion of archival records from the provisions of the Act establishing the right to have access or to amend a record was also discussed in the House Report:

> Records under the control of the Archives would not, however, be subject to the provisions of this law which permit changes in documents at the request of the individual named in them. A basic archival rule holds that archivists may not remove or amend information in any records placed in their custody. The principle of maintaining the integrity of records is considered one of the most important rules of professional conduct. It is important because historians quite properly want to learn the true condition of past government records when doing research; they frequently find the fact that a record was inaccurate is at least as important as the fact that a record was accurate.
>
> The Committee believes that this rule is eminently reasonable and should not be breached even in the case of individually identifiable records. Once those documents are given to the Archives, they are no longer used to make any determination about any individual, so amendment of them would not aid anyone. Furthermore, the Archives has no way of knowing the true state of contested information, since it does not administer the program for which the data was collected; it cannot make judgments as to whether records should be altered. (House Report 93–1416, p. 21).

The Archivist is required to establish rules of conduct for GSA personnel to assure that records in the Archives are used only in a manner consistent with 44 U.S.C. 2103 and that Archives personnel are properly instructed in the rules governing access to and use of archival records.

However, when a record which has been deposited in the Archives is disclosed to an agency and becomes part of any agency's records which could be used in making a determination about an individual, that record would again be subject to the other applicable provisions of the Act.

### SUBSECTION (m) GOVERNMENT CONTRACTORS

Subsection (m) "When an agency provides by a contract for the operation by or on behalf of the agency of a system of records to accomplish an agency function, the agency shall, consistent with its authority, cause the requirements of this section to be applied to such system. For purposes of subsection (i) of this section any such contractor and any employee of such contractor, if such contract is agreed to on or after the effective date of this section, shall be considered to be an employee of an agency."

The extent to which the provisions of the Act would apply to records other than those physically maintained by Federal agency personnel was one of the principal areas of difference between the Senate and House privacy bills (S. 3418 and H.R. 16373).

The Senate bill would have extended its provisions outside the Federal government only to those contractors, grantees or participants in agreements with the Federal government, where the purpose of the contract, grant or agreement was to establish or alter an information system. It addressed a concern over the policy governing the sharing of Federal criminal history information with State and local government law enforcement agencies and for the amount of money which has been spent through the Law Enforcement Assistance Administration for the purchase of State and local government criminal information systems.

The compromise amendment would now permit Federal law enforcement agencies to determine to what extent their information systems would be covered by the Act and to what extent they will extend that coverage to those with which they share that information or resources.

At the same time it is recognized that many Federal agencies contract for the operation of systems of records on behalf of the agency in order to accomplish an agency function. It was provided therefore that such contracts if agreed to on or after the effective date of this legislation shall provide that those contractors and any employees of those contractors shall be considered to be employees of an agency and subject to the provisions of the legislation. (Congressional Record, Dec. 17, 1974, p. S21818)

It was also agreed that the Privacy Protection Study Commission should be directed to study the applicability of the provisions of the Privacy Act to the private sector and make recommendations to the Congress and the President (See subsection 5(b) of the Act).

The effect of this provision is to clarify, further, the definition of the term "maintain" as it establishes agency accountability for systems of records. (See subsection (a)(3)). It provides that systems operated under a contract which are designed to accomplish an agency function are, in effect, deemed to be maintained by the agency. It was not intended to cover private sector record keeping systems but to cover de facto as well as de jure Federal agency systems.

"Contract" covers any contract, written or oral, subject to the Federal Procurement Regulations (FPR's) or Armed Services Procurement Regulations (ASPR's), but only those which provide "* * * for the operation by or on behalf of the agency of a system of records to accomplish an agency function * * *" are subject to the requirements of the subsection. While the contract need not have as its sole purpose the operation of such a system, the contract would normally provide that the contractor operate such a system formally as a specific requirement of the contract. There may be some other instances when this provision will be applicable even though the contract does not expressly provide for the operation of a system; e.g., where the contract can be performed only by the operation of a system. The requirement that the contract provide for the operation of a system was intended to ease administration of this provision and to avoid covering a contractor's system used as a result of his management discretion. For example, it was not intended that the system of personnel records maintained by large defense contractors be subject to the provisions of the Act.

Not only must the terms of the contract provide for the operation (as opposed to design) of such a system, but the operation of the system must be to accomplish an agency function. This was intended to limit the scope of the coverage to those systems actually taking the place of a Federal system which, but for the contract, would have been performed by an agency and covered by the Privacy Act. Information pertaining to individuals may be maintained by an agency (according to subsection (e)(1)) only if such information is relevant and necessary to a purpose of the agency required to be accomplished by statute or Executive order of the President. Although the statute or Executive order need not specifically require the creation of a system of records from this information, the operation of a system of records required by contract must have a direct nexus to the accomplishment of a statutory or Presidentially directed goal.

If the contract provides for the operation of a system of records to accomplish an agency function, then "* * * the agency shall, consistent with its authority, cause the requirements of this section to be applied to such system."

The clause "* * * consistent with its authority * * *" makes it clear that the subsection does not give an agency any new authority additional to what it otherwise uses. The subsection clearly imposes new responsibilities upon an agency but does not confer any new authority to implement it. Although the method by which agencies cause the requirements of the section to be applied to systems is not set forth, the manner of doing so must be consistent with the agency's existing authority. The method of causing was envisioned to be a clause in the contract, but as with the "Buy America" provision in Government contracts, the breach of the clause was not necessarily intended to result in a termination of the contract. In addition, several of the requirements of the Privacy Act are simply not applicable to systems maintained by contractors, and this clause was a method of indicating that an agency was not required to impose those new standards. Agencies were given some discretion in determining the method or methods by which they would cause the otherwise applicable requirements to be applied to a system maintained under contract. This subsection does not merely require that an agency include provisions consistent with the Privacy Act in its contracts. It requires, in addition, that the agency cause the requirements of the Act to be applied, limited only by its authority to do so. Because of this agency accountability—which underlies many of the provisions of the Privacy Act—there should be an incentive for an agency to cause its contractors who are subject to this subsection to apply the requirements of the section in a manner which is enforceable. Otherwise, the agencies may end up performing those functions in other to satisfy the activity of the "cause" requirement.

The decision as to whether to contract for the operation of the system or to perform the operation "in-house" was not intended to be altered by this subsection. Furthermore, this subsection was not intended to significantly alter GSA and OMB authority under the Brooks Act (P.L. 89-306) or Executive Order No. 11717 dated May 9, 1973, concerning the method of ADP procurement. The principles concerning reliance upon the private sector in OMB Circular No. A-76, and related provisions were also not intended to be changed.

The provisions would apply to all systems of records where, for example—

The determinations on benefits are made by Federal agencies;

The records are maintained for administrative functions of the Federal agency such as personnel, payroll, etc; or

Health records being maintained by an outside contractor engaged to provide health services to agency personnel.

The provisions would not apply to systems of records where:

Records are maintained by the contractor on individuals whom the contractor employs in the process of providing goods and services to Federal government.

An agency contracts with a state or private educational organization to provide training and the records generated on contract students pursuant to their attendance (admission forms, grade reports) are similar to those maintained on other students and are commingled with their records on other students.

When a system of records is to be operated by a contractor on behalf of an agency for an agency function, the contractual instrument must specify, to the extent consistent with the agency's authority to require it, that those records be maintained in accordance with the Act. Agencies will modify their procurement procedures and practices to ensure that all contracts are reviewed before award to determine whether a system of records within the scope of the Act is being contracted for and, if so, to include appropriate language regarding the maintenance of any such systems.

For systems operated under contracts awarded on or after September 27, 1975, contractor employees may be subject to the criminal penalties of subsections (i)(1) and (2) (for disclosing records the disclosure of which is prohibited by the Act or for failure to publish a public notice). Although the language is not clear on this point, it is arguable that such criminal liability only exists to the extent that the contractual instrument has stipulated that the provisions of the Act are to be applied to the contractually maintained system. However, an agency which fails, within the limits of its authority, to require that systems operated on its behalf under contracts, may be civilly liable to individuals injured as a consequence of any subsequent failure to maintain records in conformance with the Act. The reference to contractors as employees is intended only for purposes of the requirements of the Act and not to suggest that, by virtue of this language, they are employees for any other purposes.

SUBSECTION (n) MAILING LISTS

Section (n) "An individual's name and address may not be sold or rented by an agency unless such action is specifically authorized by law. This provision shall not be construed to require the withholding of names and addresses otherwise permitted to be made public."

The language in this section is susceptible of various interpretations and must be read in the context of relevant legislative history. It is clear, however, that this provision seeks to reach the sale or rental of lists of names and addresses for commercial or other solicitation purposes not related to the purposes for which the information was collected.

Language included in the legislation would prohibit the sale or rental of mailing lists, names and addresses, by Federal agencies maintaining them. The philosophy behind this amendment is that the Federal Government is not in the mailing list business, and it should not be Federal policy to make a profit from the routine business of government, particularly when the release of such lists has been authorized under the Freedom of Information Act. In other words, such lists can not be withheld by an agency, unless it determines that the release would constitute

a clearly unwarranted invasion of privacy under section 552(b)(6) of title 5, United States Code..

Thus, the language of the bill before us does not ban the release of such lists where either sale or rental is not involved. (Congressional Record, December 18, 1974, p. H12246).

While the reference to the FOIA speaks only of "a clearly unwarranted invasion of personal privacy" (see 5 U.S.C. 552 (b)(6)) agencies may presumably withhold lists of names and addresses from the public under any of the exemptions to the FOIA (5 U.S.C. 552(b)) when they deem it appropriate to do so.

It is apparent that what is prohibited is "sale or rental" of such lists and the language may be read to prohibit "the sale or rental of lists of names and addresses by Federal agencies unless the sale or rental is specifically authorized by law. [emphasis added]." (Senate Report 93-1183, p. 31)

The Senate report, when read in combination with the House floor discussion cited above, suggests that agencies may not sell or rent mailing lists for commercial or solicitation purposes unless they are authorized specifically by law to sell or rent such lists. It is equally apparent that this language in no way creates an authority to withhold any records otherwise required to be disclosed under the Freedom of Information Act (5. U.S.C. 552). It is problematic whether the language "may not be sold or rented" precludes the changing of fees authorized under the Freedom of Information Act. It would seem reasonable to conclude that fees permitted to be charged for materials required to be disclosed under the Freedom of Information Act are not precluded and that lists, such as agency telephone directories, which are currently sold to the public by the Superintendent of Documents can continue to be sold.

Finally, this provision appears not to have been intended to reach the disclosure of names and addresses to agencies or other organizations other than for commercial or solicitation purposes. Other disclosure (e.g., the disclosures of names and addresses for a statistical study or to issue checks) would be subject to the requirements of section (b).

SECTION (o) REPORT ON NEW SYSTEMS

Section (o) "Each agency shall provide adequate advance notice to Congress and the Office of Management and Budget of any proposal to establish or alter any system of records in order to permit an evaluation of the probable or potential effect of such proposal on the privacy and other personal or property rights of individuals or the disclosure of information relating to such individuals, and its effect on the preservation of the constitutional principles of federalism and separation of powers."

This subsection is intended to assure that proposals to establish or modify systems of records are made known in advance so that

There is a basis for monitoring the development or expansion of agency record-keeping activity,

The Commission established by section 5 can review trends in the use of personal information and the application of technology.

This provision resulted from the discussions surrounding the need for an independent agency to regulate and oversee the implementation of the Act:

The compromise amendment still would require that agencies provide adequate advance notice to the Congress and to the Office of Management and Budget of any proposal to establish or alter a system of records in order to permit an evaluation of the privacy impact of that proposal. In addition to the privacy impact, consideration should be given to the effect the proposal may have on our Federal system and on the separation of powers between the three branches of government. These concerns are expressed in connection with recent proposals by the General Services Administration and Department of Agriculture to establish a giant data facility for the storing and sharing of information between those and perhaps other departments. The language in the Senate report reflects the concern attached to the inclusion of this language in S.3418. (Senate Report 93-1183, page 64-66).

The acceptance of the compromise amendment does not question the motivation or need for improving the Federal government's data gathering and handling capabilities. It does express a concern, however, that the office charged with central management and oversight of Federal activities and the Congress have an opportunity to examine the impact of new or altered data systems on our citizens, the provisions for confidentiality and security in those systems and the extent to which the creation of the system will alter or change interagency or intergovernmental relationships related to information programs. (Congressional Record, December 17, 1974, p. S 21818)

A report is required to be submitted for each proposed new system of records and for changes to existing systems. The criteria for determining what constitutes a change in an existing system requiring the preparation of a report under this subsection are substantially the same as those discussed under subsection (e)(4), the public notice; namely any change which:

Increases the number or types of individuals on whom records are maintained;

Expands the type or amount of information maintained;

Increases the number or categories of agencies or other persons who may have access to those records;

Alters the manner in which the records are organized so as to change the nature or scope of those records; e.g., the combining of two or more existing systems;

Modifies the way in which the system operates or its location(s) in such a manner as to alter the process by which individuals can exercise their rights under the Act; e.g., to seek access or request amendment of a record; or

Changes the equipment configuration on which the system is operated so as to create the potential for greater access; e.g., adding a telecommunications capability.

The reports required under this section are to be submitted to the Congress,

to the Director of the Office of Management and Budget (Attn: Information Systems Division) and to the Privacy Protection Study Commission.

The Office of Management and Budget will issue, under separate cover, more detailed guidance on the format, timing, and content of the reports.

SUBSECTION (p) ANNUAL REPORT

Subsection (p) "The President shall submit to the Speaker of the House and the President of the Senate, by June 30 of each calendar year, a consolidated report, separately listing for each Federal agency the number of records contained in any system of records which were exempted from the application of this section under the provisions of subsections (j) and (k) of this section during the preceding calendar year, and the reasons for the exemptions, and such other information as indicates efforts to administer fully this section."

This subsection provides that the President submit to the Congress a list of systems exempted from the Act under the terms of section (j) or (k). "Also to be included in the annual report would be the reasons for such exemptions and other information indicating efforts to comply with the law. It is hoped that all such information would be made public. If, however, the nature of any such exemption requires a security classification marking, it should be placed in a separate part of the report so as not to affect the remainder of the annual report." (House Report 93-1416, p. 21.)

Agencies will be required to prepare reports to the Office of Management and Budget (Attn: Information Systems Division) by April 30 of each year (beginning April 30, 1976) covering their activities under the Act during the preceding calendar year. The Office of Management and Budget will analyze data contained in the agency reports and prepare the required Presidential report to the Congress. The information required in the individual agency reports will include not only the minimum information required for inclusion in the report to Congress but also such information as is needed to evaluate the overall effectiveness of the Privacy Act implementation, identify areas in which implementing policies or procedures should be changed, and assess the impact of Federal data management activities.

Agency reports shall include but not be limited to the following:

Summary—A brief management summary of the status of actions taken to comply with the Act, the results of these efforts, any problems encountered and recommendations for any changes in legislation, policies or procedures.

Accomplishments—A summary of major accomplishments; i.e., improvements in agency information practices and safeguards.

Plans—A summary of major plans for activities in the upcoming year, e.g., area of emphasis, additional securing of facilities planned.

Exemptions—A list of systems which are exempted during the year from any

**NOTICES**

of the operative provisions of this law permitted under the terms of subsections (j) and (k), whether or not the exemption was obtained during the year, the number of records in each system exempted from each specific provision and reasons for invoking the exemption.

Number of systems—A brief summary of changes to the total inventory of personal data systems subject to the provisions of the Act including reasons for major changes; e.g. the extent to which review of the relevance of an necessity for records has resulted in elimination of all or portions of systems of records or any reduction in the number of individuals on whom records are maintained. Agencies will also be requested to provide OMB with a detailed listing of all their systems of records, the number of records in each and certain other data to facilitate oversight of the implementation of the Act. (Detailed reporting procedures will be issued under separate cover.)

Operational Experiences—A general description of operational experiences including estimates of the number of individuals (in relation to the total number of records in the system) requesting information on the existence of records pertaining to them, refusing to provide information, requesting access to their records, appealing initial refusals to amend records, and seeking redress through the courts.

More extensive data will be requested on those cases where the agency was unable to comply with the requirements of the Act or these guidelines; e.g., access was not granted or a request to amend could not be acknowledged within prescribed time limits.

More detailed instructions on the format, content and timing of these reports will be issued by OMB.

SECTION (q) EFFECT OF OTHER LAWS

Subsection (q) "No agency shall rely on any exemption contained in section 552 of this title to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section."

This provision makes it explicit that an individual may not be denied access to a record pertaining to him under subsection (d)(1), access to records, because that record is permitted to be withheld from members of the public under the Freedom of Information Act. The only grounds for denying an individual access to a record pertaining to him are the exemptions stated in this Act, subsections (j) and (k), and subsection (1) archival records. In addition consideration may have to be given to other statutory provisions which may govern specific agency records.

[FR Doc.75-17774 Filed 7-8-75;3:00 pm]