# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

In Re: DEPARTMENT OF VETERANS )
AFFAIRS (VA) DATA THEFT )
LITIGATION )
_____ )     Misc. Action No. 06-0506 (JR)
                                          )    MDL Docket No. 1796
This Document Relates To: )
ALL CASES )
_____ )

## <u>NOTICE OF ERRATA</u>

PLEASE TAKE NOTICE of the following corrections of errors in defendants' reply

brief:

(2)    Page 20 of defendants' reply brief mistakenly includes a parenthetical –
       "(ultimately named by Mr. Doe as his "fascination" project")" – in the third
       sentence of the first full paragraph that should be deleted.

       The sentence should instead read: "Mr. Tran, a "consumer of the analytic product
       that [Mr. Doe] produced," Pl. Opp. at Ex. 2, Att. 25, also suggested Mr. Doe to
       work on a project involving the identification of veterans who had suffered from
       mustard gas exposure.  Tran Decl. ¶ 3, attached as Exhibit 20 to Def. Mot."

(1)    Page 21 of defendants' reply brief mistakenly omits the word "not" from the
       second sentence on that page.

       The sentence should instead read: "Yet, the fact that Mr. Doe took sensitive
       information home is not an improper disclosure to him in violation of the Privacy
       Act, so long as Mr. Doe had a need for the information in the performance of his
       duties."

The defendants have attached herewith a corrected version of defendants' reply brief in

its entirety.

1

Dated: May 1, 2007                    Respectfully submitted,


                                      PETER D. KEISLER
                                      Assistant Attorney General

                                      JEFFREY A. TAYLOR
                                      United States Attorney


                                      _____/s/_____
                                      ELIZABETH J. SHAPIRO, DC Bar 418925
                                      HEATHER R. PHILLIPS, CA Bar 191620
                                      ERIC WOMACK, IL Bar 6279517
                                      Attorneys, Department of Justice
                                      20 Mass. Ave., N.W., Room 7222
                                      Washington, D.C.  20044
                                      Tel: (202) 514-4469/Fax: (202) 616-0679
                                      E-mail: heather.phillips@usdoj.gov

                                      Attorneys for All Defendants Except John Doe in
                                      His Individual Capacity

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
In Re: DEPARTMENT OF VETERANS    )
AFFAIRS (VA) DATA THEFT          )
LITIGATION                       )
_____)    Misc. Action No. 06-0506 (JR)
                                 )    MDL Docket No. 1796
This Document Relates To:        )
ALL CASES                        )
_____)

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### INTRODUCTION

Rather than rebutting defendants' legal arguments and pointing to competent evidence supporting their claims, plaintiffs have opposed defendants' motion to dismiss or, in the alternative, for summary judgment ("defendants' motion") by resorting to inflammatory rhetoric and to filling their papers with unsupported "facts" unrelated to any claim before the Court.[1] Plaintiffs incorrectly assert that "Defendants' dismissal arguments are canned and generic . . . [and their] summary judgment motion [is] based on hearsay and innuendo."[2]  Plaintiffs similarly hypothesize that "[d]efendants' Officials Admitted to Privacy Act Violations . . . and APA Violations," "coerced the NSV contractor, Westat, Inc., into providing . . . personal information"

---

[1]  See also Plaintiffs' Rule 56(f) Mot. at Exhibits A and B (seeking, for example, discovery related to John Doe's background check and "Sensitivity Level Designation," an alleged coercion of a VA contractor to disclose information, a "cover-up" to Congress, a "backdated" report of VA security guidelines, and a conspiracy between Mr. Nicholson and other officials regarding alleged Privacy Act violations); compare Plaintiffs' Complaints (primarily alleging that defendants failed to establish adequate safeguards to protect information covered by the Privacy Act).

[2]  The Court has denied plaintiffs' motion to strike exhibits 1, 4, 5 and 6, rejecting plaintiffs' contention that these exhibits constitute inadmissible hearsay.

to John Doe, that Mr. Doe spent evening and weekend hours working on a complex project to assist veterans out of "resentment," and that defendants "stooped to misrepresenting the actual existence of the policies and procedures in place when the theft occurred." Plaintiffs' Opposition ("Pl. Opp.") at 6, 10, 16-17, 26, 48, 57, 59-60.

The Court should reject these specious arguments. Instead, and as discussed below and more thoroughly in defendants' motion, defendants are entitled to dismissal and/or summary judgment on all of plaintiffs' claims. As an initial matter, both the individual plaintiffs and the organizational plaintiffs lack standing. Additionally, plaintiffs' <u>Bivens</u> and APA claims are without merit and should be dismissed outright and with prejudice. Plaintiffs' <u>Bivens</u> claim has no merit that could be revealed by discovery, as plaintiffs have not even served any individual defendant in this case or attempted to overcome defendants' assertion of qualified immunity. Similarly, plaintiffs' so-called "APA claims" are simply a restatement of their Privacy Act claims. The APA does not provide an independent basis to raise such a claim, particularly when the relief sought is programmatic change properly reserved to the executive and legislative branches. Finally, plaintiffs have failed to state a valid claim under the Privacy Act, which requires: (i) a demonstrated violation of the Act; (ii) an adverse effect on an individual stemming from the violation; and (iii) that the agency's violation was willful and intentional. None of plaintiffs' Privacy Act claims fulfills all three requirements, and many suffer from multiple infirmities.

# ARGUMENT

## I. PLAINTIFFS' STATEMENT OF GENUINE ISSUES IS UNSUPPORTED BY THE RECORD AND SHOULD BE DISREGARDED

Plaintiffs baselessly accuse defendants of failing to "identify any admissible evidence underlying the majority of the purported facts relied upon in support of their motion," Pl. Opp. at 47-48, but then decline to cite any evidence (admissible or otherwise) in support of their self-proclaimed "Statement of Genuine Issues." Local Rule of Civil Procedure 56.1, however, requires "[a]n opposition . . . [to] be accompanied by a separate concise statement of genuine issues setting forth all material <u>facts</u> as to which it is contended there exists a genuine issue necessary to be litigated, <u>which shall include references to the parts of the record relied upon to support the statement</u>." LCvR 56.1 (emphasis added). The purpose of this Rule is to prevent a district court from having to "sift through hundreds of pages of depositions, affidavits, and interrogatories," placing the burden instead on "counsel to identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed." <u>Twist v. Meese</u>, 854 F.2d 1421, 1425 (D.C. Cir. 1988); <u>see also</u> <u>Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner</u>, 101 F.3d 145, 153 (D.C. Cir. 1996). "When counsel fails to discharge this vital function, he may not be heard to complain that the district court has abused its discretion by failing to compensate for counsel's inadequate effort." <u>Twist</u>, 854 F.2d at 1425.

Although plaintiffs' Statement of Genuine Issues identifies 21 purported genuine issues, such as "[w]hether John Doe was acting as a VA employee when he intentionally and willfully downloaded Privacy Act records . . . and removed them from the VA workplace . . . .," <u>id.</u> ¶ 3, plaintiffs' list of issues bears little, if any, relationship to defendants' Statement of Material

Facts, as it contains no direct response to any material fact identified by defendants. See
Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F. Supp.2d 1, 5 n.3 (D.D.C. 2006)
(criticizing party's failure to respond directly to individually numbered paragraphs of material
facts). Moreover, plaintiffs' Statement of Genuine Issues contains no citation to any materials
submitted in support of or in opposition to defendants' motion. Instead, in violation of the plain
language and purpose of Local Civil Rule 56.1, plaintiffs appear content to place the burden of
sifting through the voluminous record materials on the Court. This, the Court should not allow.
See Tarpley v. Greene, 684 F.2d 1, 7 (D.C. Cir. 1982) ("[Appellant] did not set forth specific,
material facts, but simply asserted, without citing evidence in the record, that there was a
disputed issue. . . ."); Robertson v. Am. Airlines, Inc., 239 F. Supp.2d 5, 8 (D.D.C. 2002) ("None
of the sentences is followed by a citation to the record.").

    The consequence for plaintiffs' violation of Local Civil Rule 56.1 is spelled out in Local
Civil Rule 56.1: "In determining a motion for summary judgment, the court may assume that
facts identified by the moving party in its statement of material facts are admitted, unless such a
fact is controverted in the statement of genuine issues filed in opposition to the motion." See
also Twist, 854 F.2d at 1425. Accordingly, as plaintiffs have failed to controvert the material
facts submitted by defendants, those facts should be accepted as true for purposes of defendants'
motion.[3]

─────────────────

    [3] Plaintiffs' Statement of Facts suffers from other infirmities, most importantly that most
of the proffered "facts" are completely unrelated to the claims at issue in this case. The Court
should ignore plaintiffs' attempts to cloud the issues with these unrelated matters. For example,
a completely irrelevant – not to mention unsupported – allegation made by plaintiffs in their
opposition is that defendants falsified the issuance date of the "Security Guideline for Single
User Remote Access." Pl. Opp. at 17. Mr. Doe, however, was not a remote access user, so
whether or when this document came into existence is irrelevant to plaintiffs' claims under the

## II.    PLAINTIFFS LACK ARTICLE III STANDING

### A.    The Organizational Plaintiffs Should Be Dismissed

In response to defendants' motion, plaintiffs concede that the named organizational plaintiffs lack "standing to pursue Privacy Act suits." Pl. Opp. at 32. Plaintiffs instead rest the standing of the named organizations on the APA claims of their individual members. Id. Accordingly, to the extent these APA claims lack merit under the APA, see infra at Part IV, the organizational plaintiffs lack standing, and should be dismissed from this lawsuit. Moreover, even if the Court does not dismiss the APA claim outright, plaintiff National Gulf War Resource Center, Inc. ("NGWRC"), should still be dismissed, as it has no individual member who has standing to sue in his own right. As plaintiffs concede, NGWRC is comprised of only veterans organizations, none of whom has individual standing to sue. Pl.'s Opp. at 33.

### B.    The Individual Plaintiffs Lack Standing to Mount Their Privacy Act and APA Claims

The individual plaintiffs assert two bases for standing in their opposition, neither of which has merit. First, plaintiffs argue that they have standing to sue based on the mere assertion of a violation of the Privacy Act. That argument wholly ignores the Supreme Court's

---

Privacy Act. See Pl. Opp. at Ex. 2, Att. 16, p. 19, 21 (containing Dat Tran's testimony that the document "does not address those user who take work home . . . this document does not specifically address anything about employee taking data out of the building"). Moreover, plaintiffs ignore additional testimony by Mr. Tran where he admitted that the computer system's record of changes to the document indicated that the document was created on April 11, 2003, and revised in March of 2006. Id. at 9. Contrary to plaintiffs' assertion, Pl. Opp. at 17, Mr. Tran's conclusion was that document did not get "posted" until May 22, not that it hadn't been created before then. See Pl. Opp. at Ex. 2, Att. 16, p. 24. In a similar vein, plaintiffs' so-called "evidence" of a "delay informing Congress or veterans of the records theft . . . due to Defendants' purely political fear of admitting to the massive security breach," Pl. Opp. at 8, is simply not material to plaintiffs' claim that defendants failed to properly safeguard Privacy-Act protected information prior to the theft of Mr. Doe's hard drive.

decision in <u>Doe v. Chao</u>, 540 U.S. 614 (2004), in which the Supreme Court expressly rejected the notion that entitlement to recovery under the Act is satisfied by "proof of nothing more than a statutory violation." <u>Id.</u> at 620. Whatever its disputed meaning, "actual damages" must be specifically alleged by plaintiffs in order to state a claim under the Privacy Act. <u>See id.</u>

Thus, the decisive question for the Court on the issue of individual standing is whether plaintiffs have properly alleged "actual damages" from the purported violations of the Act. Plaintiffs assert that they have demonstrated "actual damages," including "fear" and "out-of-pocket expenses for credit monitoring <u>at the behest of the VA</u>." Pl.'s Opp. at 31 (emphasis added). However, the affidavits submitted in opposition to defendants' motion reveal nothing more than conclusory allegations that are insufficient to demonstrate injury-in-fact.

As an initial matter, and as argued in defendants' motion, only pecuniary damages establish "actual damages" for purposes of a Privacy Act claim.[4] Def. Mot. at 54-58. However, of the multiple named plaintiffs in this action, only the affidavit of Paul Lewis Hackett III alleges

---

[4] Instead of responding to the extensive argument in defendants' motion supporting a construction of the term "actual damages" that excludes non-pecuniary damages, plaintiffs argue that "no" circuit "split exists in this circuit." <u>See</u> Opp. at 46. That assertion is meritless. As even those cases cited by plaintiffs recognize, the courts of this and other circuits have struggled with the question of whether mental anxiety is alone sufficient to demonstrate actual damages. <u>See, e.g.,</u> <u>Rice v. United States</u>, 211 F.R.D. 10, 13 (D.D.C. 2002) ("[T]he question of what it takes to recover damages under § 552a(g)(4) remains undecided in this Circuit. There appears to be a split in the decisions of other circuits, and indeed in the decisions of the judges of this Court."); <u>see also</u> Def. Mot. at 54-55 (citing cases). Accordingly, the question for the Court is which side of this split has the better of the argument. As defendants asserted, and plaintiffs do not dispute, the most persuasive reading of the statutory language and legislative history surrounding the passage of the Privacy Act is that "actual damages" is confined to pecuniary loss. <u>See</u> Def. Mot. at 57. Even if this question is close, however, the Court should err on the side of limiting the term, as the Privacy Act's waiver of sovereign immunity and the deference entitled to the findings of the Privacy Protection Study Commission both support the government's interpretation. <u>See id.</u> at 55-58.

any monetary expenditure resulting from defendants' actions, and that allegation is facially

deficient.[5]  Mr. Hackett states that, "[d]ue to the May 2006 theft . . ., I purchased credit

monitoring."  Pl. Opp. at Ex. 22, ("Hackett Aff.") ¶ 10.  This conclusory allegation leaves the

Court with little basis to determine whether the expenditure was "reasonable."  See Doe, 540

U.S. at 626 n.10.  Moreover, the Hackett Affidavit was signed after defendants expressly

challenged plaintiffs' failure to provide a concrete description of such expenses in their

Complaints.  Def. Mot. at 23 (noting that a proper formulation of damages might include a

sentence to the effect:  "On [date], plaintiff [name] paid $X to [company] for credit monitoring

services.").  Notwithstanding this invitation to easily clarify the conclusory allegations of the

Complaints, the Hackett Affidavit mentions only that Mr. Hackett purchased credit monitoring.

It does not discuss how much was paid, to whom the payment was made, when the payment was

made, or what type of "credit monitoring" was purchased.   Given the fact that free credit reports

are available to consumers, see Def. Mot. at 23 n.11, and the fact that the VA recommended only

"vigilan[ce]" and "monitor[ing]" of bank statements, see id. at 24, Mr. Hackett's conclusory

allegation is insufficient to establish injury-in-fact traceable to defendants' actions.

The remaining named plaintiffs similarly assert conclusory allegations of emotional

injury.  For example, the affidavit of James E. Malone states that Mr. Malone is "stressed,"

"humiliated," and "irritable."  Pl. Opp. at Ex. 7 ("Malone Aff.") ¶ 11.  However, such allegations

---

[5]  Plaintiffs claim that they have previously provided evidence of additional monetary
expenditures by plaintiffs other than Hackett "in direct response to Defendants' announcement of
the disclosures at issue in this case."  Pl. Opp. at 9.  No so.  Instead, the referenced exhibits to the
Hackett Complaint are unauthenticated emails that in any event provide evidence only that some
veterans have decided to purchase credit monitoring.  Many people purchase credit monitoring,
for many different reasons.  Given that there is no indication as to why or when the veterans'
purchases were made, the purchase proves nothing for purposes of plaintiffs' claims.

are not specific evidence of actual damages.  Cf. Doe, 540 U.S. at 617-18 ("In fact, the only

indication of emotional affliction was Doe's conclusory allegations that he was 'torn . . . all to

pieces' and 'greatly concerned and worried' because of the disclosure of his Social Security

number."); Doe v. Chao, 306 F.3d 170, 180 (4th Cir. 2002) ("A plaintiff's own conclusory

allegations that he felt 'embarrassed,' 'degraded,' or 'devastated,' and suffered a loss of self-

esteem, will not suffice to create a disputed issue of material fact for the jury regarding the

presence of compensable emotional distress.").  After all, only five weeks elapsed between the

announcement of the burglary of Mr. Doe's home and the announcement that the laptop and hard

drive had been recovered intact, and the data on the hard drive had not been compromised.  See

Def. Mot. at 24; see also attached Def. Statement of Material Facts ¶¶ 2-3.  Given this time

frame, the mere fact that certain plaintiffs do not trust the VA and the FBI's findings, see, e.g.,

Hackett Aff. ¶ 11, does not satisfy the requirements of Article III.  See Humane Soc'y of the

United States v. Babbitt, 46 F.3d 93, 98 (D.C. Cir. 1995) ("[G]eneral emotional 'harm,' no

matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.").

     Nor will discovery aid plaintiffs in establishing injury, as plaintiffs are uniquely situated

to provide information respecting their own damages.  They have failed to do so, and the Court

should dismiss plaintiffs' claims, or in the alternative enter summary judgment for the

defendants.  See Doe, 540 U.S. at 617 (affirming the Fourth Circuit's decision finding that "Doe

had not raised a triable issue of fact about actual damages, having submitted no corroboration for

his claim of emotional distress, such as evidence of physical symptoms, medical treatment, loss

of income, or impact on his behavior.  In fact, the only indication of emotional affliction was

Doe's conclusory allegations . . . .") (emphasis added).

**III.    PLAINTIFFS' <u>BIVENS</u> CLAIMS SHOULD BE DISMISSED WITH PREJUDICE**

Plaintiffs have "consented" to the dismissal of their claims brought pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), "without prejudice" to the reassertion of the claims following discovery on the ground that these claims are "within the ambit of the Privacy Act."[6]  Pl. Opp. at 47.  However, and as discussed thoroughly in defendants' motion, no amount of discovery could breathe merit into plaintiffs' <u>Bivens</u> claims.  Def. Mot. at 35-40.

Significantly, defendants' motion noted multiple deficiencies in the <u>Bivens</u> claims pled by plaintiffs, including the fact that Secretary Nicholson and Deputy Secretary Mansfield have not been properly named or served in their individual capacities, Def. Mot. at 35-36, that injunctive relief is unavailable under <u>Bivens</u>, <u>id.</u> at 37-38, and that qualified immunity bars such claims, <u>id.</u> at 38-40.  Plaintiffs have utterly failed to address these arguments despite the fact that postponing decision on the <u>Bivens</u> claims pending discovery is wholly inconsistent with the principle of qualified immunity.  <u>See</u> <u>Simpkins v. District of Columbia</u>, 108 F.3d 366, 370 (D.C. Cir. 1997) (holding that federal courts have a "duty . . . to stop insubstantial <u>Bivens</u> actions in their tracks and get rid of them.  Such lawsuits impose undue burdens on the officer being sued, and thus interfere with the operations of the government.") (citations omitted).  Accordingly, the Court should reject plaintiffs' invitation and dismiss their meritless <u>Bivens</u> claims with

---

[6]  Plaintiffs also assert that defendants have "conceded" that plaintiffs have stated a claim under the Privacy Act by arguing that plaintiffs' Privacy Act claims preclude relief under <u>Bivens</u>.  Opp. at 47.  Not so.  The mere fact that a Privacy Act remedy exists does not establish that plaintiffs' alternative claim is a meritorious one.  <u>Cf.</u> <u>Chung v. DOJ</u>, 333 F.3d 273, 275 (D.C. Cir. 2003) (noting that district court held the Privacy Act to constitute a comprehensive remedial scheme while simultaneously dismissing Privacy Act claim as time-barred).

prejudice, and without awaiting the results of the speculative fishing expedition in which plaintiffs seek to engage.

## IV.    PLAINTIFFS' "APA" CLAIMS ARE NOT JUSTICIABLE

Plaintiffs attempt – but ultimately fail – to identify a specific agency action that they are challenging pursuant to the APA only (that is, every APA violation they allege is also an alleged Privacy Act violation).  According to plaintiffs, the VA violated the APA by "'failing to observe the procedures required by law for disclosure of private information.'" Pl. Opp. at 36 (quoting Plaintiffs' Complaints).  However, and as argued in defendants' motion, this broad claim does not identify any discrete agency action or inaction that caused plaintiffs harm.  Def. Mot. at 28-35.  The remainder of plaintiffs' alleged "APA claims" simply restate their Privacy Act allegations as a claim under the APA.  This, plaintiffs may not do, as the APA expressly precludes claims for which there is other adequate remedy at law.

In a futile attempt to save their APA claim from dismissal, plaintiffs proffer to the Court so-called examples of discrete agency action, pointing to, and labeling as "discrete agency action," their allegations in the Complaints that the "'VA has repeatedly demonstrated an inability or unwillingness to implement, or callous disregard for, fundamental procedures to provide minimally acceptable safeguards,'" and that the VA has "failed to ensure" that its "'processes, policies, and procedures were adequately implemented.'" Pl. Opp. at 36 (quoting VVA Compl. ¶¶ 56, 38); see also Pl. Opp. at 60-61 (arguing that defendants "admitted" APA violations because VA OIG Report stated that VA did not have "sufficient policies and procedures").  However, these allegations of a general failure to "implement . . . procedures" or "ensure" the adequate implementation of unspecified "processes, policies, and procedures" are

10

precisely the types of allegations that fail to state a challenge to discrete agency action.[7]  See

Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 66 (2004) ("General deficiencies in

compliance . . . lack the specificity requisite for agency action."); Lujan v. Nat'l Wildlife Fed.,

497 U.S. 871, 891 (1990) ("[R]espondent cannot seek wholesale improvement of this program

by court decree, rather than in the offices of the Department or the halls of Congress, where

programmatic improvements are normally made.") (emphasis added); see also Found. on Econ.

Trends v. Lyng, 943 F.2d 79, 86 (D.C. Cir. 1991) ("Additional funding and staff, improved

procedures, and computerization, all identified by the plaintiffs as needed improvements . . ., are

matters within the discretion of the agency, not proposals for major federal action.") (emphasis

added).

　　　　As the Supreme Court explained in Lujan, the proper venue for the programmatic policy

change demanded by plaintiffs is Congress rather than the federal courts.  See Lujan, 497 U.S. at

891.  And, in the wake of the theft that gave rise to this case, Congress has responded, passing

the Department of Veterans Affairs Information Security Enhancement Act of 2006.  See Pub. L.

No. 109-461, 120 Stat. 3403, 3450 (Dec. 22, 2006) (codified at 38 U.S.C. § 5721 et seq.).

Among other information security policies, the Act established procedures for responding to a

data breach such as the one that occurred in the present case, including credit monitoring in the

---

　　　　[7] Plaintiffs do not identify any particular agency action that they are challenging because
they cannot.  The unspecified "procedures" and implementation of "processes" and "policies"
that plaintiffs demand are broader than specific agency actions.  The mere fact that plaintiffs
point to particular types of agency actions that fall within their broad demands, such as the
purported failure to follow "VA Handbook 6300.5," Pl. Opp. at 36, does not demonstrate that
their programmatic challenge is discrete.  See Lujan, 497 U.S. at 892-93 ("[I]t is at least entirely
certain that the flaws in the entire 'program' . . . cannot be laid before the courts for wholesale
correction under the APA simply because one of them that is ripe for review adversely affects
one of respondent's members.").

event that a reasonable risk exists for the potential misuse of sensitive personal information

following a breach.  See id.  To allow plaintiffs to seek different, even complementary,

programmatic changes under the guise of an APA claim would circumvent Congress's

legislative role as well as its determination of the appropriate response.

However, even if such a broad, programmatic challenge were appropriate, plaintiffs have

still failed to state an independent claim under the APA.  As plaintiffs make clear in their

opposition, the source of the legal requirement that purportedly obligates the defendants to

impose such "procedures" and "policies" is the Privacy Act itself.  See Pl. Opp. at 36 ("Plaintiffs

alleged that the VA caused Plaintiffs harm by 'failing to observe the procedures required by law

for disclosure of private information.'"); see also VVA Compl. ¶¶ 55, 61 (basing APA and

Privacy Act claims on identical factual assertions); Rosato Compl. ¶ 23 ("These repeated failures

. . . demonstrated . . . violations of the Privacy Act."); Hackett Compl. ¶ 36 (cited by plaintiffs'

opposition as support for APA claim but stated in Complaint as violation of Privacy Act).

However, the APA only provides for judicial review of agency action in instances in which

"there is no other adequate remedy in a court."  5 U.S.C. § 704; see also Bowen v.

Massachusetts, 487 U.S. 879, 903 (1988) (". . . Congress did not intend the general grant of

review in the APA to duplicate existing procedures for review of agency action.").  Accordingly,

as the claim that plaintiffs purport to raise under the APA is in fact a claim of non-compliance

with the Privacy Act, the APA claim should be dismissed.[8]  See Reid v. Fed. Bureau of Prisons,

---

[8]  In a separate section of their opposition, plaintiffs assert that they can maintain their
APA claim in addition to their Privacy Act claims because the APA claim requests "declaratory
and injunctive" rather than monetary relief, citing Radack v. DOJ, 402 F. Supp.2d 99 (D.D.C.
2005).  Pl. Opp. at 32.  However, in Radack, the plaintiff identified a discrete and final agency
action (i.e., releasing plaintiff's information to the Maryland bar) that allegedly violated a

2005 WL 1699425, *2 (D.D.C. July 20, 2005) (unreported) ("Because there is an adequate remedy available to plaintiff under the Privacy Act, he cannot resort to the APA for relief."); Tripp v. DOD, 193 F. Supp.2d 229, 238 (D.D.C. 2002) ("Defendant correctly argues that plaintiff can not bring an independent APA claim predicated on a Privacy Act violation."); Mittelman v. United States Treasury, 773 F. Supp. 442, 449 (D.D.C. 1991) ("A careful reading of the amended complaint reveals that plaintiff's APA claim is, in part, simply a restatement of her Privacy Act claims."); see also Schaeuble v. Reno, 87 F. Supp.2d 383, 394 (D. N.J. 2000) ("[B]ecause the Privacy Act sets forth specific procedures for seeking the amendment of records and because Plaintiff's APA claim is identical to his Privacy Act claim, the APA claim is dismissed.").

## V.    PLAINTIFFS HAVE FAILED TO MEET ALL THREE REQUIREMENTS NECESSARY FOR A VALID CLAIM UNDER THE PRIVACY ACT

Plaintiffs' Complaints raise Privacy Act claims for alleged violations of the Act respecting: (1) collection of information, 5 U.S.C. § 552a(e)(2); (2) accuracy, id. at § 552a(e)(6); (3) publication of notices, id. at § 552a(e)(4); (4) accounting, id. at § 552a(c)(1); (5) maintenance of records, id. at § 552a(e)(1); (6) disclosure, id. at § 552a(b); (7) and safeguards, id. at § 552a(e)(10).  See also Def. Mot. at 4-5, 40-41.  To maintain their claims under the Privacy Act, plaintiffs must establish: (1) the VA's failure to comply with a provision of the Act; (2) an adverse effect (resulting in actual damages) stemming from such failure; and (3) that the VA's failure to comply was willful and intentional.  5 U.S.C. § 552a(g)(1)(D) and (g)(4); Doe, 540 U.S. at 620.  Although a failure to meet any one of these requirements is fatal to plaintiffs'

---

specific agency policy, rather than simply asserting a violation of general "policies" or "procedures," or the overall absence of unspecified protections.  Id. at 103-04.

claims – and no one of plaintiffs' claims meets all three – as discussed below, and more thoroughly in defendants' motion, in most instances plaintiffs' claims fail on all counts.

### A.    PLAINTIFFS HAVE FAILED TO OPPOSE DEFENDANTS' MOTION TO DISMISS THE COLLECTION OF INFORMATION AND ACCURACY CLAIMS.

Plaintiffs' opposition memorandum provides no argument to rebut defendants' motion to dismiss plaintiffs' Privacy Act claims involving alleged violations of the VA's obligations regarding the collection and accuracy of information. Compare Def's Mot. at 51-53 (noting that dismissal is warranted given conclusory allegations and plaintiffs' failure to allege any adverse effect stemming from violation), with Pl. Opp. at 43-44 (simply reciting the conclusory allegations made in the Complaints respecting these claims but failing to provide any argument whatsoever). Plaintiffs have therefore conceded these claims are baseless, and the Court should dismiss them with prejudice.[9]

### B.    PLAINTIFFS HAVE FAILED TO ALLEGE OR ESTABLISH ADVERSE EFFECT IN THEIR NOTICE, ACCOUNTING, AND MAINTENANCE CLAIMS

Although plaintiffs make much of defendants' alleged failure to comply with Privacy Act requirements "for maintaining and accounting for the new system of records created by and for

---

[9] Even assuming conclusory allegations of a Privacy Act violation sufficed, these claims are nonetheless subject to dismissal as plaintiffs have failed to plead or argue in their opposition an adverse effect stemming from the alleged collection and accuracy violations. Doe, 540 U.S. at 624 (noting that "'adverse effect' acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue"). Perhaps plaintiffs have declined to make such assertions because they concede that to the extent plaintiffs' alleged harm consists of "being placed in fear of identity theft [and] financial fraud," VVA Compl. ¶ 1, "any inaccuracies in the information as a result of a failure to collect the information directly from plaintiffs would only mitigate the likelihood of damages." Def. Mot. at 52-53.

[Mr. Doe's] 'fascination project,'" Pl. Opp. at 61, updating the "Federal Register notice for the BIRLS system of records, id. at 62, and defendants' "duty to provide notice and account for this new system of records created by John Doe," id., plaintiffs make absolutely no effort to demonstrate – or even substantively allege – any adverse effect logically related to these claimed Privacy Act violations.  See also Def. Mot. at 49-50, 52 (noting, e.g., that "plaintiffs would have suffered the same 'adverse effects' that they allege regardless of whether the VA published a Federal Register notice with respect to the system of records at issue").  The Court should therefore dismiss these claims.[10]  Doe, 540 U.S. at 624.

### C.    THERE WAS NO "DISCLOSURE" OF PRIVACY-ACT PROTECTED INFORMATION

Plaintiffs allege two distinct disclosure events by which they claim defendants violated the Privacy Act: (1) a disclosure – notwithstanding Mr. Doe's need for the information to perform his duties – by the VA to John Doe; and (2) a disclosure when Mr. Doe's hard drive was stolen from his home.  The Court should dismiss plaintiffs' disclosure claims, or in the alternative grant defendants summary judgment.  Notwithstanding plaintiffs' tortured reading of the statute and the evidence they submit in support of their opposition, there was no disclosure to another person or agency as required by the Privacy Act for civil liability to attach.

---

[10]  Plaintiffs' statements that "Defendants' failure to assert a legal basis for creating and maintaining a new system of records [] creates a material and genuine issue of fact for trial," Pl. Opp. at 62, and that "the failures to publish or update these notices violated the Privacy Act [and] are clearly matters for fact for trial," id. at 63, are plainly wrong.  Defendants strongly disagree with plaintiffs' assertions of "fact," see Def. Mot. at 60-63, but the Court, in any event, need not address them, as without any evidence – or even substantive allegation – of adverse effect related to the alleged violation, plaintiffs's claims are subject to dismissal.  Doe, 540 U.S. at 624.

1.    **John Doe's Use of Privacy-Act Protected Information to Perform His Duties Did Not Constitute an Improper Disclosure Under the Act**

Plaintiffs attempt to manufacture a disputed issue of fact respecting Mr. Doe's access to the Privacy-Act protected records at issue in this case.  Pl. Opp. at 40-42, 48-52.  Ignoring not only the VA OIG's report, but evidence <u>they themselves</u> submit in support of their opposition, plaintiffs argue that Mr. Doe's access to the Privacy-Act protected information was improper, and that such access therefore constituted a disclosure in violation of the Act.  Plaintiffs' Complaints lack necessary detail, and plaintiffs have otherwise failed to demonstrate a <u>genuine</u> issue for trial.  Fed. R. Civ. P. 56(e).[11]

Although the Privacy Act does not define the collective phrase "disclose . . . to any person [or] agency," courts that have considered this phrase have concluded that it requires that an actual disclosure occurred.  <u>Pope v. Bond</u>, 641 F. Supp. 489, 500 (D.D.C. 1986) (requiring plaintiff to point to evidence of actual incidents of unlawful disclosures to defeat government's motion to dismiss); <u>Mittelman v. Dep't of Treasury</u>, 919 F. Supp. 461, 468 (D.D.C. 1995) (granting government's motion for summary judgment because plaintiff unable to show actual disclosure of information occurred).[12]

---

[11]  Moreover, and as argued in defendants' opposition to plaintiffs' 56(f) motion, defendants are not entitled to discovery on this issue given their utter failure to point to any specific facts such discovery might uncover, instead relying on speculation and conjecture.  Def. 56(f) Opp. at 4.  The Court should not allow plaintiffs to embark on a fishing expedition based on such a scanty showing.  <u>Messina v. Krakower</u>, 439 F.3d 755, 762-63 (D.C. Cir. 2006) (upholding denial of Rule 56(f) request where "the requesting party has offered only a conclusory assertion without any supporting facts to justify the proposition that the discovery sought will produce the evidence required") (internal quotation marks omitted).

[12]  Plaintiffs' discussion of the term "disclosure" is puzzling inasmuch as plaintiffs appear to suggest that simply copying data from one computer to another (even if no one ever accesses the copied file) constitutes an actionable disclosure under the Privacy Act.  Pl. Opp. at 40-41.

16

It is axiomatic that one of the Privacy Act's exceptions "expressly permits disclosure of records to agency employees 'who have a need for the record in the performance of their duties.'" <u>Maydak v. United States</u>, 363 F.3d 512, 521 (D.C. Cir. 2004) (<u>quoting</u> § 552a(b)(1)). In this regard, the OIG report noted that because Mr. Doe was "responsible for planning and designing analytical projects and supporting surveys involving all aspects of VA policies and programs, <u>he was authorized access to, and use of, these and other large VA databases</u>." Def. Mot. at Ex. 1 ("OIG Rep't"), at 3 (emphasis added).

Additional evidence <u>submitted by plaintiffs</u> in support of their opposition emphatically supports the OIG's findings. For example, the VA's General Counsel, Mr. Tim McClain, noted that the fact that Mr. Doe had the information at home was not in itself a Privacy Act violation, as "he was our employee, doing Government work, you know, potentially. So, no, it was not a Privacy Act violation." Pl. Opp. at Ex. 2, Att. 13, p. 8. Mr. Michael H. McLendon, Deputy Assistant Secretary for Policy, also stated that "as I understand it, [Mr. Doe was] testing this extract by doing some matches [,this was a legitimate purpose], and yeah, that's a valid thing to do," and similarly opined that Mr. Doe's fascination project was "a very legitimate thing to do." Pl. Opp. at Ex. 2, Att. 15, p. 88, 96-97. In addition, Mr. Dennis Duffy, the Acting Assistant

---

Such a reading not only lacks common sense, but ignores the plain text of the statute which holds that "[n]o agency shall disclose any record . . . <u>to any person, or to another agency</u>." 5 U.S.C. § 552a(b)(1) (emphasis added). There can therefore be no disclosure unless another (unauthorized) person or agency actually receives and views the disclosed information. Contrary to plaintiffs' assertions, Pl. Opp. at 41, the only way that Mr. Doe's removal of electronic records from the VA premises to his home constituted a disclosure is either if Mr. Doe did not have a need for the records in the performance of his duties, or if someone else gained access to the records. As discussed above, however, Mr. Doe properly accessed the documents, and although his hard drive was later stolen from his home, there is absolutely no evidence that the information contained on the hard drive was ever accessed by anyone.

Secretary, recognized that John Doe was trying to solve a problem relating to the National Survey of Veterans ("NSV"), and informed the OIG that, as far as he knew, Mr. Doe was entitled to have access to the data that he accessed "to do what he needed to do." Pl. Opp. at Ex. 2, Att. 11, p. 40. Likewise, the VA's Associate Deputy Assistant Director for Cyber and Information Security confirmed that Mr. Doe followed "all the proper procedures, et cetera, to get access to the data." Pl. Opp. at Ex. 2, Att. 19, p. 38. And the BIRLS data extract used by Mr. Doe was authorized. Pl. Opp. at Ex. 2, Att. 20, p. 14 (noting that permission was received to run a BIRLS extract with additional data). Finally, the VA issued a statement noting that Mr. Doe "took home electronic data which he <u>was authorized to access at work</u>." Pl. Opp. at Ex. 3, p. 2 (emphasis added).

Plaintiffs ignore their failure to allege any facts in their Complaints to support their conclusory allegations that "[Mr.] Doe's access to . . . this information was a disclosure in violation of § 552a(b)." Hackett Compl. ¶ 19; <u>see</u> <u>also</u> Rosato Compl. ¶ 16 (same); <u>VVA</u> Compl. ¶ 31 (VA disclosed information to "employees who did not have a need"). Instead, they attempt to manufacture confusion where there is none. For example, plaintiffs rely on statements taken out of context from Mr. Doe's testimony to the VA OIG. Plaintiffs claim that Mr. Doe "was aware of his restrictions [to accessing information]," and imply that Mr. Doe then "found an unauthorized way to get the BIRLS file he wanted." Pl. Opp. at 49-50 (citing, in support for these statements, Mr. Doe's testimony of June 16, 2006). A review of the entirety of Mr. Doe's testimony reveals that this is not the case, but that instead Mr. Doe firmly believed he had legitimate access to the data, "all signed for." Pl. Opp. at Ex. 2, Att. 9, p. 81. Moreover, while plaintiffs would like the Court to believe that Mr. Doe and others conspired to obtain access to

the BIRLS data base, Pl. Opp. at 50, in actuality, upon realizing that the team already had access

to the BIRLS database, Mr. Doe and his colleagues simply determined that it made more sense to

change the parameters of the existing BIRLS extract, rather than solicit an entirely new extract.

See Opp. at Ex. 2, Att. 5, p. 70 ("We spoke to Susan and said, 'Susan, we're not going to change

any of the stuff that you get presently, but we'd like to add some things.  How's that strike you'

She said, 'That's fine.'  So we went with that, and that was approved, and we began to get

that.'").  Plaintiffs also ignore evidence – gleaned from another transcript they submitted in

support of their opposition –  that the BIRLS data extract used by Mr. Doe had been expressly

authorized.  Pl. Opp. at Ex. 2, Att. 20, p. 14 (containing testimony by Division chief of the

Veterans Record Support Division that the C&P Service told him "yes, there is a business reason

for this, please provide them the information that they need . . . . So we got permission to add

that, to modify that run with this additional data, and we ran that").

        Plaintiffs also misconstrue the testimony of Susan Krumhaus and Dat Tran in an attempt

to create a disputed issue of fact.  Plaintiffs imply that Ms. Krumhaus and Mr. Tran conspired

with Mr. Doe to find "an unauthorized way to get the BIRLS files he wanted," and that Ms.

Krumhaus "coerced the NSV contractor, Westat" into providing personal information to Ms.

Krumhaus and Mr. Doe to facilitate Mr. Doe's fascination project.  Pl. Opp. at 50, 57.

Consequently, according to plaintiffs, Mr. Doe's access to the Privacy-Act protected information

constituted an improper disclosure under the Act.  Nonsense.  Once again, a close look at the

entirety of Ms. Krumhaus's and Mr. Tran's testimony reveals neither a conspiracy nor an

improper disclosure.  Instead, Ms. Krumhaus clarified in her testimony that she worked with Mr.

Doe on a series of projects, including validating the data from the NSV and improving the

survey.  Pl. Opp. at Ex. 2, Att. 10, p. 4, 8, 16.  Ms. Krumhaus had had access to BIRLS for some time, although she was not that "computer literate."  Id. at 20.  Ms. Krumhaus further explained that she did not need to sign off for Mr. Doe to have access to BIRLS, and that they realized that rather than requesting an additional BIRLS extract for Mr. Doe's use, it made sense instead to expand the parameters of the abstract she was already receiving.  Id. at 22-24.

Ms. Krumhaus also considered Mr. Doe's attempts to improve the NSV by matching Social Security numbers with other files to shorten the number of survey questions a "legitimate project."  Id. at 30.  Likewise, Mr. Tran confirmed that one of Mr. Doe's major responsibilities was to work on the NSV.  Pl. Opp. at Ex. 2, Att. 10, p. 30.  Mr. Tran, a "consumer of the analytic product that [Mr. Doe] produced," Pl. Opp. at Ex. 2, Att. 25, also suggested Mr. Doe to work on a project involving the identification of veterans who had suffered from mustard gas exposure. Tran Decl. ¶ 3, attached as Exhibit 20 to Def. Mot.  Furthermore, in describing Mr. Doe's work ethic and commitment, Mr. Tran noted that Mr. Doe was the type who liked to continue to work on things in an effort to "try to, you know, fine-tune and tweak it."  Pl. Opp. at Ex. 2, Att. 10, p. 33.

Attempting to further obfuscate the disclosure issue, plaintiffs' papers are also full of numerous allegations of "fact" they claim are in dispute, but that are completely irrelevant to whether Mr. Doe had a need for the Privacy-Act protected information in the performance of his duties.  For example, plaintiffs rely on the fact that Mr. Doe had not had a background check in approximately 32 years, Pl. Opp. at 41, but fail to point to any requirement in the Act that employees with access to Privacy-Act protected records must have had a background

investigation.[13]  Similarly, plaintiffs allege that Mr. Doe "routinely took sensitive private

information . . . home since 2003."  Id. at 42.  Yet, the fact Mr. Doe took sensitive information

home is not an improper disclosure to him in violation of the Privacy Act, so long as Mr. Doe

had a need for the information in the performance of his duties.  Plaintiffs also make much of an

email written on May 19, 2006 –  subsequent to the data theft – noting that Mr. Doe has only

"sensitive level '0' access."  Pl. Opp. at 48-49.  Plaintiffs fail to acknowledge, however, that the

email also explains that such access simply means that Mr. Doe was unable to view "sensitive"

records of, "i.e., Congressman, VIPs in gov't, [etc.]."  Pl. Opp. at Ex. 2, Att. 7.

      Likewise, plaintiffs spend an inordinate amount of time discussing who was, and who

was not, Mr. Doe's supervisor.  Pl. Opp. at 52-59.  Plaintiffs' arguments miss the mark.  The Act

is unconcerned with whether or not a specific type of supervisor, or any supervisor at all,

"authorized," id. at 53, access to Privacy-Act protected data.  Instead, the Privacy Act provides

that no disclosure has occurred where employees "have a need for the record in the performance

of their duties."  5 U.S.C. § 552a(b)(1).[14]  The only evidence before the Court on this issue is that

Mr. Doe was "one of the most competent data analysts in OPP&P," Tran Decl. ¶ 3, attached as

Ex. 20 to Def. Mot., "[i]t was expected that Mr. Doe would plan and execute his assignments

independently," "[n]ew assignments for Mr. Doe . . . were self-initiated," Moore Decl. ¶ 5,

---

   [13]  Indeed, Mr. McLendon testified that he did not "think that they [analysts, programmers, those with access to large datasets] need to have security clearances.  I think that's overkill."  Pl. Opp. at Ex. 2, Att. 15, p. 83.

   [14]  As such, plaintiffs' assertion, Pl. Opp. at 58, that a lack of information respecting whether Mr. Doe's fascination project was authorized by any "VA official, statute or executive order," or a lack of information for "Westat's disclosure of Privacy Act documents," somehow creates a material issue of fact, is simply wrong.

attached as Ex. 21 to Def. Mot, and because Mr. Doe was "responsible for planning and designing analytical projects and supporting surveys involving all aspects of VA policies and programs, <u>he was authorized access to, and use of, these and other large VA databases</u>."  Def. Mot. at Ex. 1 ("OIG Rep't"), at 3 (emphasis added).

In sum, notwithstanding plaintiffs' assertions to the contrary, Mr. Doe had a need for the Privacy-Act protected information at issue in this lawsuit for the performance of his duties, and the disclosure of the information to him was permissible under 5 U.S.C. § 552a(b)(1).  Plaintiffs failed to specifically allege facts in support of their assertion that Mr. Doe's access to the information was improper, and plaintiffs have yet to provide any genuine support for these allegations.  They rely instead on pure speculation and conjecture.  The Court should therefore dismiss plaintiffs' disclosure claims relating to Mr. Doe's access to the data, or enter summary judgment in favor of the defendants.[15]

> **2.    There is No Evidence That the Information Contained on the Hard Drive Was Disclosed to Any Person or Agency**

With respect to their disclosure claim stemming from the theft of the hard drive, plaintiffs first argue that the theft of the hard drive – standing alone and absent any actual accessing of the data on the hard drive – constitutes a disclosure for purposes of liability under the Privacy Act.  Pl. Opp. at 42 (claiming that the "theft was plainly a 'transfer' of records.").  Such a proposition

---

[15]  For the same reasons plaintiffs have failed to state a claim based on alleged violations of the accounting provision of the Privacy Act, 552a(c)(1); maintenance, 552a(e)(1); information collection, 552a(e)(2); publication of notices, 552a(e)(4); and accuracy of information, 552a(e)(6); as these provisions do not apply to disclosures made pursuant to subsection (b)(1) to an agency employee who has a need for the records in the performance of his duties.  In addition, and as discussed in defendants' motion, plaintiffs have altogether failed to allege facts with respect to either adverse effects or actual damages incurred as a result of the purported violation of these provisions.  <u>See</u> Def. Mot. at 48-54.

is not only absurd, but ignores the plain language of the statue, which bars disclosure of records "to any person, or to another agency."  5 U.S.C. § 552a(b).  Thus, absent an improper disclosure to a person or agency, no violation of the Privacy Act has occurred.  Contrary to plaintiffs' assertions, Pl. Opp. at 39-41, simply "transferring" the records from one electronic medium to another is insufficient to constitute a disclosure creating civil liability under the Privacy Act.

Furthermore, there was no unauthorized disclosure of Privacy-Act protected information to the individuals who stole the hard drive from Mr. Doe's home, because a theft is not a prohibited "disclosure" under the Privacy Act.  See Def. Mot. at 46-47.[16]  Even if a theft could somehow be construed a disclosure prohibited by the Act, there is not one shred of evidence that the data on the hard drive was ever accessed.  Instead, the FBI recovered the laptop, performed tests, and determined that it was highly unlikely that any access occurred.  OIG Rep't at ii; see also November 15, 2006 ID Analytical Letter, attached as Exhibit 6 to Def. Mot.  Plaintiffs have submitted an affidavit by Mr. Lennartsson, a so-called expert in computer security matters.  Pl. Opp. at Ex. 9.  Leaving aside whether Mr. Lennartsson actually qualifies as such an expert, the assertions in his affidavit amount to pure speculation.  Additionally, certain of his premises defy common sense.   He asserts that the thieves, using "special computer programs," could have examined or even copied the contents of a hard drive without leaving behind any information regarding the examination or copying.  Lennartsson Decl. ¶ 22.  What Mr. Lennartsson fails to explain, however, is why thieves – who following the theft would logically assume themselves to

---

[16]  This argument does not create "an absurd catch-22 crafted to avoid accountability under the Privacy Act."  Pl. Opp. at 43.  Instead, defendants' position is in keeping with the natural definition of the term disclosure.  Moreover, even if a theft cannot be a disclosure under the Act, plaintiffs are nonetheless free to pursue their claim that defendants failed to provide adequate safeguards sufficient to protect the data from theft.

be in permanent possession of the hard drive  – would go to the trouble of secretly copying files in an effort to leave no evidence of such copying.

Plaintiffs would have the Court create a presumption of access to the data on the hard drive – and a disclosure under the Privacy Act –  absent 100% certainty that no such access occurred.  Such a presumption is entirely inappropriate because there is no basis – other than Mr. Lennartsson's speculation –  to conclude that a thief actually viewed the databases on Mr. Doe's hard drive.  And, as noted above, Mr. Lennartsson's speculation flies in the face of common sense.  The Court should find that the theft of the hard drive did not constitute a disclosure under the Privacy Act and rule in defendants' favor on these claims.

### D.    DEFENDANTS' SAFEGUARDS WERE ADEQUATE UNDER THE LAW

Plaintiffs' arguments in support of their claim that defendants violated the safeguards provision of the Privacy Act are overly broad, and focus on extraneous factors, such as whether the VA had in place a background investigation program for employees, Pl. Opp. at 64, or whether the VA had complied with so-called "mandatory federal information security requirements."  Id.  This focus is inappropriate.  The Privacy Act provides the sole waiver of sovereign immunity with respect to defendants' liability in this case, and it is axiomatic that waivers of sovereign immunity must be strictly construed.  Hercules Inc. v. United States, 516 U.S. 417, 422 (1996) ("The United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations and internal punctuation omitted).  As such, the proper focus is on whether defendants' safeguards in this particular instance – respecting Mr. Doe's ability to take Privacy-Act protected information home for work-related matters – complied with the

requirements of the Privacy Act.[17]

Plaintiffs' recitation of "numerous rules, regulations, procedures and mandatory guidelines" that defendants' allegedly violated, Pl. Opp. at 65-66, is consequently irrelevant for purposes of assessing liability under the Privacy Act in this case. As noted in defendants' motion, in implementing the Privacy Act, the precautions adopted by the VA must simply be "within the range of reasonableness defined by Congress." Kostyu v. United States, 742 F. Supp. 413, 417 (E.D. Mich. 1990). The Privacy Act does not require an agency to act as guarantor of the security of agency records or materials. See id. After all, such a requirement would impose impossible obligations upon an agency, as no law or agency procedure can ensure against every conceivable event. See Def. Mot. at 65-66. With this reality in mind, the Privacy and Security Courses implemented by the VA contained safeguards meeting the requirements of 5 U.S.C. § 552a(e)(10). See Def. Mot. at 63-69 (noting Courses requiring "strong passwords on all information systems" that backup storage media such as diskettes, zip disks, CDs, and tapes should be "lock[ed] away . . . in a secure area if [they] contain[] sensitive data," and noting "[p]rivate and uncontrolled media from back ups may present a security risk if left unprotected or in places where access to them is unrestricted. Great care is taken to manage and protect data while it is on the VA network but all this can be for nothing if the back up media is unprotected"). Nor is the information at issue in this case – veterans and active service

---

[17] Applying the proper focus, it is evident that the Privacy Act makes no mention of background investigations, but instead allows that employees may access Privacy-Act protected information where they "have a need . . . in the performance of their duties." 5 U.S.C. § 552a(b)(1). Moreover, there is absolutely no evidence that a background investigation would have curtailed Mr. Doe's access to information necessary to complete his duties, given that he was a well-regarded employee with over 32 years of experience. See infra pp. 21-22.

members' names and other identifying information – the type of information that would

designated as restricted-access only.

###    E.    THE ABSENCE OF INTENTIONAL AND WILLFUL ACTS IS FATAL TO PLAINTIFFS' PRIVACY ACT CLAIMS

Plaintiffs dedicate four pages of their brief to their assertion that their Complaints comply

fully with Rule 8, Pl. Opp. at 26-30, yet still fail to provide the necessary factual detail on the

issue of intentional or willful acts by defendants.  Instead, plaintiffs resort once again to reciting

the conclusory assertions made in the Complaints.  Indeed, the sole allegation made by plaintiffs

remains that defendants' Privacy Act violations were "intentional and willful."  Pl. Opp. at 29,

37-39.

Plaintiffs claim that a magical incantation of the phrase "intentional and willful" suffices,

and cite to Krieger v. Fadely, 211 F.3d 134 (D.C. Cir. 2000).  Plaintiffs' reliance on Krieger is

misplaced.  In Krieger, the plaintiff had alleged wrongful disclosure of records when plaintiff's

former supervisor had secretly called plaintiff's new supervisor and related plaintiff's deficient

performance.  Id. at 136.  The Court found that although plaintiff had not specifically identified

the records at issue, plaintiff had, through the aforementioned factual detail, "alleged the

essential elements of his claim and put the government on notice."  Id. at 136.  The instant case

is entirely different, as plaintiffs simply provide a legal conclusion – that defendants' Privacy

Act violations were "intentional and willful" – rather than a factual allegation.  The Court,

however, need not take as true legal conclusions cast as factual allegations when deciding a Rule

12(b)(6) motion.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

While the requirements of Rule 8 are meager, they include giving the defendant fair notice of the

plaintiffs' claims and the ground upon which they rest.  Swierkiewicz v. Sorema N.A., 534 U.S.

506, 512 (2002); Fed. R. Civ. P. 8 (the complaint must "show[] that the pleader is entitled to

relief). Giving such notice requires more than conclusory labels. See Campbell v. City of San

Antonio, 43 F.3d 973, 975 (5th Cir. 1995) ("Conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); accord

Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting . . . conclusory allegations as

true, therefore, would defeat the central purpose of the summary judgment device, which is to

weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); Harding

v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (plaintiff "must support his allegations of superior

qualifications with facts in the record; a mere unsubstantiated allegation of superior

qualifications creates no 'genuine issue of fact' and will not withstand summary judgment");

White v. Office of Pers. Mgmt., 840 F.2d 85, 87 (D.C. Cir. 1988) (plaintiff "could avoid

dismissal of his complaint only if he also presented some factual basis to support his allegation

of willful or intentional conduct on the part of the agency.") (emphasis added).

Plaintiffs' reliance on Mr. Lennartsson's Affidavit, Pl. Opp. at 67-69, fails to address this

underlying problem, and also fails to take into account the safeguards that undisputedly were in

place at the time of the theft, namely the Privacy and Security Courses.[18] Instead, plaintiffs'

position appears to be that defendants' reliance on the Privacy and Security Courses constituted

per se intentional and willful behavior in violation of the Privacy Act. Id. Given the flexibility

---

[18] In this regard, plaintiffs' reliance on Schmidt v. U.S. Dep't of Veterans Affairs, 218
F.R.D. 619, 634 (E.D. Wis. 2003), is inapposite. The court in Schmidt was concerned with
disclosures to employees not covered under 5 U.S.C. § 552a(b)(1). Here, Mr. Doe's access to
the information was covered by subsection (b)(1). Thereafter, his use of the information –
including password protection and safeguarding his hard drive in a secure area – was specifically
addressed in the Privacy and Security Courses.

provided by Congress to agencies in implementing the Privacy Act, and the limited waiver of sovereign immunity provided by the Act, this cannot be the case.  Def. Mot. at 63-69.

Because plaintiffs' Complaints contain no allegations from which an inference could reasonably be made that the alleged Privacy Act violations resulted from anyone's "'flagrant[] disregard'" of "'others' rights under the Act,'" and because plaintiffs' argument that the VA's reliance on the Privacy and Security Courses is per se an intentional and willful violation is baseless, plaintiffs' Privacy Act claims should be dismissed, or in the alternative the Court should enter summary judgment in favor of the defendants.

## CONCLUSION

For the foregoing reasons as well as those cited in defendants' opening brief, defendants'

motion to dismiss, or in the alternative for summary judgment, should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney


_____/s/_____
ELIZABETH J. SHAPIRO, DC Bar 418925
HEATHER R. PHILLIPS, CA Bar 191620
ERIC WOMACK IL Bar 6279517
Attorneys, Department of Justice
20 Mass. Ave., N.W., Room 7222
Washington, D.C.  20044
Tel: (202) 514-4469/Fax: (202) 616-0679
E-mail: heather.phillips@usdoj.gov
Attorneys for All Defendants Except John Doe in
His Individual Capacity

Dated: April 30, 2007