UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In Re: DEPARTMENT OF VETERANS       :
AFFAIRS (VA) DATA THEFT             :
LITIGATION                          :
_____      : Misc. Action No. 06-0506 (JR)
                                    : MDL Docket No. 1796
This Document Relates To:           :
ALL CASES                           :


**MEMORANDUM ORDER**

       Plaintiffs bring three putative class actions[1] on behalf of individuals whose personal data was downloaded to an external hard drive that was stolen from the home of an employee of the Department of Veteran Affairs. The government moves to dismiss for lack of subject matter jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(1), (5), and (6). In the alternative, the government moves for summary judgment, Fed. R. Civ. P. 56. For the following reasons, the government's motion [#9] will be granted in part and denied in part.

---

[1] On November 3, 2006, the Judicial Panel on Multidistrict Litigation consolidated these cases in this Court for pre-trial proceedings, after the government had moved to dismiss each of them. I ordered all motions that had been filed and docketed in the individual cases to be administratively terminated without prejudice and noted my expectation that the government would refile its motion to dismiss in the master docket. The government has timely refiled.

**BACKGROUND**

On May 3, 2006, a laptop computer and external hard drive belonging to John Doe,[2] an information technology specialist in the VA's Office of Policy, was stolen from Doe's home in Maryland. Although both the laptop and the hard drive were Doe's personal property, the hard drive contained personal information pertaining to millions of veterans that Doe had downloaded from VA files so that he could work at home on his own time. See Report, Review of Issues Related to the Loss of VA Information Involving the Identity of Millions of Veterans, Department of Veterans Affairs, Office of Inspector General (July 11, 2006) ("OIG Report"), Def.'s Ex. 1, at ii, 3. The laptop did not contain any VA data. Id. at ii.[3]

The VA information contained in the stolen hard drive consisted of extracts from two VA databases: the Compensation, Pension, Education and Rehabilitation Records-VA, System No. 58VA21/22 ("C&P File"), which contains information about veterans and beneficiaries receiving VA benefits, such as name, social security number, address, disability diagnostic codes and ratings; and the Veterans and Beneficiaries Identification and

---

[2] A pseudonym is used to protect the individual's privacy.

[3] Plaintiffs have moved to strike Exhibits 1, 4, 5, and 6 to the government's motion. I have denied that motion, but noted that plaintiffs' objections to Exhibit 1 are "germane to the weight to be accorded the report," and that Exhibits 4 and 5 "will not be considered." Id. at 2, 3.

Records Location Subsystem-VA ("BIRLS"), a computer file that is used, among other things, to determine the location of a veteran's file or to record a veteran's death, and that includes personal information about veterans such as name, social security number, military service number, claim number, date of birth, date of death, and dates of military service.[4]

On May 22, 2006, almost three weeks after the theft, the VA announced that the burglary had resulted in the theft of the "names, social security numbers, and dates of birth for up to 26.5 million veterans and some spouses, as well as some disability ratings." See Statement from the Department of Veterans Affairs (May 22, 2006), Def.'s Ex. 2, at 1.  The VA asked "all veterans to be extra vigilant and to carefully monitor bank statements, credit card statements and any statements relating to recent financial transactions."  Frequently Asked Questions about the Electronic Data in May 2006, Department of Veterans Affairs (May 30, 2006), Def.'s Ex. 3, at 1.

On June 29, 2006, the Federal Bureau of Investigation announced that the laptop and hard drive had been recovered and that a "preliminary review" determined that the database had not been accessed since it was stolen.  Press Release, Stolen Laptop

---

[4] The government appears to concede that each database is a system of records within the Privacy Act.  See Statement of Material Facts As to Which There is No Genuine Issue [#9] at ¶¶ 7-8.

and External Hard Drive Recovered, Federal Bureau of Investigation (June 29, 2006), Def.'s Ex. 4.[5] On July 11, 2006, the VA's Office of Inspector General ("OIG") issued its report, which found, "[b]ased on all the facts gathered thus far during the investigation," that "the FBI and OIG are highly confident that the files on the external hard drive were not compromised after the burglary."  OIG Report, at ii.

The three suits in this consolidated action all were filed by and on behalf of people claiming to have been injured by the theft of the hard drive and the government's handling of the matter.  <u>Hackett v. VA</u> was filed in the Eastern District of Kentucky on May 30, 2006.  <u>Vietnam Veterans of America v. Nicholson</u> was filed in this Court on June 6, 2006.  <u>Rosato v. Nicholson</u> was filed was in the Eastern District of New York on June 21, 2006.  All three purport to be nationwide class actions on behalf of everyone whose personal information was on the stolen hard drive.  In <u>Hackett</u>, plaintiffs are two veterans, and defendants are the VA, Secretary of Veterans Affairs R. James Nicholson; Deputy Secretary of Veterans Affairs Gordon G. Mansfield, and John Doe.  Secretary Nicholson, Deputy Secretary Mansfield, and John Doe are sued in their official and individual capacities.  In <u>Vietnam Veterans of America</u>, plaintiffs are four

---

[5] Exhibit 4 was previously ruled inadmissible, Mem. Order (April 19, 2007) [#22], and is cited only as background.

veterans and five advocacy groups, and defendants are the VA and Secretary Nicholson in his official capacity.  In <u>Rosato</u>, plaintiffs are three veterans, and defendants are the VA and Secretary Nicholson in his official capacity.  In all three cases, plaintiffs allege that defendants have violated the Privacy Act, 5 U.S.C. § 552a, by improperly disclosing information covered by the Act and failing to establish certain safeguards required by the Act.  Plaintiffs in <u>Vietnam Veterans of America</u> and <u>Rosato</u> also allege a series of other violations of the Privacy Act and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.  Plaintiffs in <u>Hackett</u> and <u>Rosato</u> also allege violations of the Fourth and Fifth Amendments and assert a cause of action under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  In all three cases, plaintiffs seek damages, declaratory and injunctive relief, and attorneys' fees.

## ANALYSIS

In order to survive a motion to dismiss, a complaint must allege enough factual matter to suggest "plausible grounds" for the suit.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007)("Factual allegations must be enough to raise a right to relief above the speculative level.").  In <u>Twombly</u>, the Supreme Court rejected the standard from <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), that a complaint "should not be dismissed for

failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1968 (quoting Conley, 355 U.S. at 45-46). The Court held that

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Twombly, 127 S.Ct. at 1964-65 (internal quotations and citations omitted).

### 1. Standing

The government contends that individual plaintiffs lack standing, and that this court accordingly lacks subject matter jurisdiction, because they fail to allege facts demonstrating injury and causation. Plaintiffs have the burden of establishing standing and must demonstrate three elements: (1) that they have suffered an "injury in fact" that is concrete, particularized, and actual or imminent (not conjectural or hypothetical); (2) that there is a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. Id. at 561.

The named plaintiffs in this case allege emotional and pecuniary harm caused by the theft of the hard drive containing their personal information.  The complaint in Vietnam Veterans, for example, alleges that plaintiffs have suffered "adverse effects including, but not limited to, embarrassment, inconvenience, unfairness, mental distress, emotional trauma, pecuniary damages and the threat of current and future substantial harm from identity theft."  Civ. No. 06-1038, Compl. at ¶ 40.  The Hackett complaint further alleges that some plaintiffs have incurred "actual damages" by purchasing credit reports or credit monitoring services.  Am. Compl., Def.'s Ex. 7, at ¶¶ 6, 26.  The government decries these allegations for their failure to specify the particular individuals who have suffered injuries or to provide any further detail about the injuries alleged (such as the date the credit reports were ordered and the amount paid).  At the pleading stage, however, "general factual allegations of injury resulting from the defendant's conduct may suffice."  Sierra Club v. E.P.A., 292 F.3d 895, 898 (D.C. Cir. 2002)(quoting Lujan, 504 U.S. at 561).  Moreover, these plaintiffs have fulfilled the requirement that they set forth "specific facts" by affidavit or other evidence in response to a summary judgment motion.  See, e.g., Aff. of Paul Hackett, Pls.'

Ex. 22, at ¶ 10 (stating that he purchased credit monitoring as a result of the theft.).[6]

The government also challenges the standing of the organizational plaintiffs, who cannot sue under the Privacy Act, which authorizes suits only by "individuals," 5 U.S.C. § 552(a)(g)(1); see also Committee in Solidarity with the People of El Salvador v. Sessions, 738 F. Supp. 544, 547 (D.D.C. 1990) ("[T]he Privacy Act does not confer standing upon organizations on their own or purporting to sue on behalf of their members."). Plaintiffs concede this point, as they must, but maintain that the organizational plaintiffs have standing under the APA. As explained infra, plaintiffs' allegations fail to state a claim under the APA. Without an APA claim, the organizational plaintiffs in Vietnam Veterans of America lack standing. Their claims will accordingly be dismissed.

**2. Privacy Act Claims**

Plaintiffs allege several Privacy Act violations, including failure to safeguard their personal information, 5

---

[6] The government further argues that plaintiffs lack standing because they have not properly alleged "actual damages" as required by the Privacy Act, but that question is best addressed in the context of the government's Rule 12(b)(6) motion. It does not affect the question of Privacy Act standing, which requires only that plaintiffs demonstrate an adverse effect. Doe v. Chao, 540 U.S. 614, 625 (2004)("[A]n individual subjected to an adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act.").

U.S.C. § 552a(e)(10), and unauthorized disclosure of that information, 5 U.S.C. § 552a(b). When an agency fails to comply with the Privacy Act "in such a way as to have an adverse effect on an individual," the Act authorizes the bringing of a civil suit. 5 U.S.C. § 552a(g)(1)(D). If the court determines that the agency "acted in a manner which was intentional or willful," the United States is liable for attorneys fees, costs, and "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." Id. § 552a(g)(4).[7]

### A. Failure to Establish Appropriate Safeguards

The Privacy Act requires agencies to "establish appropriate administrative, technical and physical safeguards to insure the security and confidentiality of records and to protect

---

[7] The government argues that plaintiffs' claims should be dismissed to the extent they are based on non-pecuniary damages, because non-pecuniary damages are not a suitable basis for "actual damages." Neither the Supreme Court nor the Court of Appeals for the D.C. Circuit has ruled on whether emotional damages, without more, qualify as "actual damages" under the Privacy Act, see Chao, 540 U.S. at 627, n.12; Albright v. United States, 732 F.2d 181, 186 (D.C. Cir. 1984), and the courts of other circuits are split. Compare Fitzpatrick v. IRS, 665 F.2d 327, 331 (11th Cir. 1982) (actual damages restricted to pecuniary loss), with Johnson v. Department of Treasury, IRS, 700 F.2d 971, 972-974 (5th Cir. 1983) (actual damages do not require pecuniary loss). That question need not be answered here, however, where plaintiffs have alleged that they paid for credit reports and credit monitoring as a result of the government's alleged Privacy Act violations.

against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." 5 U.S.C. § 552a(e)(10).  Plaintiffs allege that the VA's failure to establish proper safeguards left their personal information unprotected, that this failure led to the theft of the laptop and hard drive, and that the theft caused them to suffer emotional and pecuniary harm.

The government moves to dismiss this claim, as it does all of plaintiffs' Privacy Act claims, on the grounds that plaintiffs have failed to plead intentional or willful violations of the Act.  An agency acts in an intentional or willful manner "either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act."  Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984).  In order to establish that the VA acted willfully or intentionally, plaintiffs must show that it "acted with something greater than gross negligence."  Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987); White v. Office of Pers. Mgmt., 840 F.2d 85, 87 (D.C. Cir. 1988) (per curiam).

Plaintiffs aver that VA officials were warned repeatedly of deficiencies in the VA's information security and yet failed to do anything to establish proper safeguards.  See, e.g., Vietnam Veterans of America, Compl. at ¶ 26.  Although the

Privacy Act does not prescribe specific technical standards, leaving the agencies to manage their own information security, agencies must enact "appropriate" safeguards.  5 U.S.C. § 552a(e)(10).  See also Kostyu v. United States, 742 F.Supp. 413, 417 (E.D. Mich. 1990)("It is enough that the precautions adopted were within the range of reasonableness defined by Congress.").  Plaintiffs' allegations, if proven, would support a finding that the VA officials "acted with something greater than gross negligence."

The government moves in the alternative for summary judgment, arguing that the VA's safeguards were in fact adequate.  The government asserts that the VA met the requirements of Section 552(a)(e)(10) by requiring its employees to complete two computerized courses: the General Employee Privacy Awareness 2006 Course and the VA Cyber Security Awareness Course.  Plaintiffs contend, however, that the VA ignored several mandatory federal rules and regulations regarding information security.  In order to grant the government's summary judgment motion, I would have to agree with the government that those regulations are "irrelevant" and that the VA's privacy and security courses, without more, are sufficiently reasonable as to meet the safeguards requirements of the Privacy Act.  The government has not met this burden.  The government's own evidence raises serious questions about the adequacy of the VA's information

security program.  Most notably, in 2003 the General Accounting Office (GAO) issued a report finding that the "VA's computer security weaknesses . . . continue to place financial, health care, and benefits payment information at risk of misuse, fraud, improper disclosure, or destruction -- possibly occurring without detection," and that the VA "continues to be without a comprehensive, centrally managed process that will enable it to identify, track, and analyze all computer security weaknesses." Report, Major Management Challenges and Program Risks, Department of Veteran Affairs, General Accounting Office (Jan. 2003), Def.'s Ex. 25, at 32.  The government also admits that, in 2006, the U.S. House of Representatives Committee on Government Reform, in its annual report, gave the VA an "F" in "computer security." Statement of Congressman Tom Davis, Leave No Computer System Behind, A Review of the 2006 Federal Computer Security Scorecards (Mar. 16, 2006), Def.'s Ex. 26, at 3.  The government's response to these reports - that neither specifically mentioned the risks posed by an employee taking work home - ignores the possibility, or perhaps probability, that <u>any</u> "reasonable" information security program would have addressed this situation at least in the abstract, if not specifically.  Because the government's own evidence raises serious questions about the VA's computer safeguards, it is not entitled to a finding that those safeguards were reasonable as a matter of law.

B.  Unauthorized Disclosures

The Privacy Act prevents an agency from disclosing "any record . . . contained in a system of records" without the written consent of the "individual to whom the record pertains." 5 U.S.C. § 552a(b).  Disclosure is permitted in several circumstances, however, including "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."  5 U.S.C. § 552a(b)(2).  Plaintiffs allege two disclosures[8] of their personal information by the VA in violation of the Privacy Act: (1) John Doe's access to their records, and (2) the theft of the hard drive containing those records.  The government asserts that neither event constitutes a prohibited "disclosure" and that plaintiffs have failed to plead facts demonstrating that the government "acted in a manner which was intentional or willful."  In the alternative, the government argues that it is entitled to summary judgment on each claim.

---

[8] Plaintiffs insist that Doe's transfer of the records between computers was also a disclosure under the Privacy Act. As support for this proposition, plaintiffs cite the government's Privacy Act Guidelines, Implementation of Section 552a of Title 5 of the United States Code, 40 Fed. Reg. at 28,953 (July 1, 1975)("A disclosure may be either the transfer of a record or the granting of access to a record."), but the guidelines do not eliminate the statutory requirement that a disclosure must be directed to a "any person, or to another agency."  Doe, through the simple act of transferring files from one computer to another, did not disclose the records to a person or agency.

*i. John Doe's Access to the Records*

The Privacy Act "expressly permits disclosure of records to agency employees 'who have a need for the record in the performance of their duties.'" <u>Maydak v. United States</u>, 363 F.3d 512, 521 (D.C. Cir. 2004) (quoting 5 U.S.C. § 552a(b)(1)). Plaintiffs allege that Doe's access to their personal records was an unauthorized disclosure because Doe had no need for the records in the performance of his duties, but plaintiffs do not plead any facts that support this claim, relying instead on conclusory allegations that Doe's access violated the Privacy Act. <u>See, e.g.</u>, <u>Vietnam Veterans of America</u>, Compl. at ¶ 31 (alleging that the VA disclosed information to "employees who did not have a need"). More importantly, even assuming *arguendo* that Doe should not have had access to their records,[9] plaintiffs do not explain how Doe's access to their records caused them any harm. The emotional and economic damages that plaintiffs claim to have suffered were caused by the theft of the laptop and hard drive. Plaintiffs have not alleged, and it is difficult for the Court to imagine, any "plausible" manner in which Doe's access, without the subsequent theft, caused them any "adverse effect," let alone "actual damages."

---

[9] In response to the government's motion for summary judgment, plaintiffs have introduced evidence that they say suggests that Doe's access exceeded his authority.

*ii. The Theft of the Records*

The theft of the records does not give rise to a claim for unauthorized disclosure. The government argues that a theft from the VA cannot be an intentional or willful act by the VA, and therefore that it cannot be an unlawful disclosure under the Privacy Act.  It is difficult to imagine how an illegal act of a third party over whom the VA had no control could nevertheless constitute an intentional or willful disclosure by the VA. Plaintiffs cite no cases supporting their theory that a theft can be a willful and intentional disclosure, nor have they pled any facts that, if true, would support that conclusion.  Instead, plaintiffs attempt to support this claim by re-asserting the same allegations pled in support of their safeguards claim, arguing that the VA "acted with something greater than gross negligence," in failing to safeguard veterans' personal information, and that "though Defendants did not actually intend for the theft to occur," their failure to safeguard "readily set the stage for the theft to occur."  Pls.' Br. at 43.  While these allegations will be heard to support a claim brought under Section 552a(e)(10), they cannot be recycled and re-pled under Section 552a(b).

C.  Other Violations of the Privacy Act

Plaintiffs allege violations of various other Privacy Act provisions, including: accounting, 5 U.S.C. § 552a(c)(1), maintenance of information, § 552a(e)(1), information collection,

§ 552a(e)(2), publication of Privacy Act notices, § 552a(e)(4), and accuracy of information, § 552a(e)(6). Many of these claims stem from plaintiffs' contention that John Doe created a new "system of records" under the Privacy Act when he combined information from existing VA databases as part of his so-called "fascination project." See Pls.' Opp. Br. at 61. That issue is of no moment, as plaintiffs have failed to allege any facts that explain how the VA "fail[ed] to comply" with those provisions "in such a way as to have an adverse effect on an individual." § 552a(g)(1)(D). The adverse effects alleged by plaintiffs were caused, if at all, by the VA's failure to safeguard their personal information. Although plaintiffs have properly stated a claim under that provision, they have not alleged any facts supporting a claim under any other.[10]

### 3. APA Claims

Plaintiffs in <u>Vietnam Veterans of America</u> and <u>Rosato</u> have asserted claims under the APA, which provides for judicial review for any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.

---

[10] Prior to filing their opposition papers, plaintiffs moved for discovery pursuant to Rule 56(f). [Dkt. #13]. Denial of the government's motion for summary judgment as to plaintiffs only viable claim, failure to safeguard, renders plaintiffs' Rule 56(f) motion moot.

Judicial review is limited, however, to agency actions "made reviewable by statute and final agency action for which there is no other adequate remedy in a court." Id. § 704. "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." Fund For Animals, Inc. v. United States BLM, 460 F.3d 13, 18 (D.C. Cir. 2006); see also 5 U.S.C. § 551(13) (defining "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof").

Plaintiffs allege that the APA was violated as a result of the VA's "inability or unwillingness to implement, or callous disregard for, fundamental procedures to provide minimally acceptable [privacy] safeguards." Vietnam Veterans of America Compl. at ¶ 56. The plaintiffs' broad allegations that the VA "failed to ensure" that its "processes, policies, and procedures were adequately implemented" do not state a challenge to discrete agency action. Id. at ¶ 38; see Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004) ("General deficiencies in compliance . . . lack the specificity requisite for agency action."); Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 891 (1990) ("[R]espondent cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are

normally made."). Accordingly, plaintiffs' APA claims will be dismissed with prejudice. Fed. R. Civ. P. 12(b)(6).

### 4. Bivens Claims

Plaintiffs in Rosato and Hackett present Bivens claims based on alleged constitutional violations, but such claims are not available where a comprehensive statutory scheme, such as the Privacy Act, provides a remedy for the allegedly unconstitutional conduct. Chung v. Dept. of Justice, 333 F.3d 273, 274 (D.C. Cir. 2003)(affirming district court's dismissal of Bivens claims because they were "within the remedial scheme of the Privacy Act."). Plaintiffs have alleged no facts that would support a Bivens claim separate from their Privacy Act claims, and indeed they now consent to the dismissal of their Bivens claims without prejudice to reasserting those claims following discovery. Pls.' Br. at 47. Plaintiffs are not entitled to such a fishing expedition, however, without having first alleged the existence of fish. Moreover, they have failed to address any of the government's additional arguments for dismissal: that neither Secretary Nicholson nor Deputy Secretary Mansfield has been properly served in his individual capacity, that injunctive relief is unavailable under Bivens, or that the individual defendants would surely be entitled to qualified immunity. Therefore, plaintiffs' Bivens claims will be dismissed with prejudice. Fed. R. Civ. P. 12(b)(6).

* * * * *

The government's motion to dismiss [#9] is **granted in part and denied in part** and its motion in the alternative for summary judgment is **denied**.  The individual plaintiffs will be permitted to proceed on their claim that the government failed to safeguard their personal information in violation of the Privacy Act.

The Clerk is directed to set a status conference.


                                    JAMES ROBERTSON
                              United States District Judge