## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In Re: DEPARTMENT OF VETERANS AFFAIRS (VA) DATA THEFT LITIGATION | : : : : | |
| | : | Misc. Action No. 06-0506 (JR) |
| | : | MDL Docket No. 1796 |
| This Document Relates To: ALL CASES | : : : | |

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES, APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES, APPROVAL OF CLASS NOTICE AND SCHEDULING OF FAIRNESS HEARING

Plaintiffs Paul Hackett, Matthew Page, Michael Rosato, Murry Moskowitz, Bruce

Ouellette, Charles L. Clark, James E. Malone, John Rowan, and Barry Jackson (collectively,

"Plaintiffs") respectfully move for Preliminary Approval of the parties' Settlement Agreement

(the "Settlement Agreement"), certification of a Class for settlement purposes, appointment of

Class Counsel and Class Representatives, approval of Class Notice, and scheduling of a Fairness

Hearing for Final Approval of the Settlement Agreement. As evidenced by the fully executed

Settlement Agreement attached hereto as Exhibit 1, Defendants United States Department of

Veterans Affairs, the Secretary of Veterans Affairs, the Deputy Secretary of Veterans Affairs,

and John Doe, an employee of the United States Department of Veterans Affairs in their official

capacities ("Defendants") do not oppose this motion. A proposed Order granting Plaintiffs'

Motion is attached as Exhibit 2.

## I.     **BACKGROUND OF THE LITIGATION**

In May and June of 2006, the named Plaintiffs filed three separate class actions across the country against the United States Department of Veterans Affairs, the Secretary of Veterans Affairs, the Deputy Secretary of Veterans Affairs, and John Doe, an employee of the United States Department of Veterans Affairs (collectively, the "Defendants") for damages arising from the May 3, 2006 theft of computer equipment which was reported to contain private information of millions of military veterans, spouses of veterans, and active duty personnel. Plaintiffs alleged violations of the Federal Privacy Act of 1974, 5 U.S.C. §552a, and the Fourth and Fifth Amendments of the United States Constitution. On November 3, 2006, those actions were transferred by the Judicial Panel on Multidistrict Litigation to the District Court of the District Columbia, which subsequently issued an Order consolidating the actions for pretrial purposes on January 23, 2007.

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, on November 30, 2006 and again on February 22, 2007. In response, Plaintiffs filed a Joint Opposition on March 28, 2007. On November 16, 2007, the Court issued its Memorandum Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Defendants' Motion for Summary Judgment.[1]

Beginning in December 2007, the parties engaged in an extensive arms length mediation process under the direction of Judge Alan Kay. Four separate mediation sessions occurred in Washington, D.C., and the parties and Judge Kay participated in numerous telephonic conference calls. The mediation process ultimately proved successful resulting in the Settlement Agreement now before the Court.

---

[1] A related action filed on February 19, 2008, *Jackson v. Nicholson, et al.,* Case No. 2:08-cv-00289-RRA (N.D. Alabama), was transferred to this Court on May 9, 2008. The *Jackson* action is encompassed by this proposed Settlement.

Defendants have denied vigorously, and continue to deny vigorously, each and every allegation of liability and wrongdoing in the Complaints. Without admitting any wrongdoing or liability whatsoever, Defendants are nevertheless willing to agree to the terms of the Settlement Agreement to resolve fully and finally all issues relating to the subject matter of this action.

The Settlement Agreement is fair, adequate, and reasonable and in the best interests of the Class. Moreover, it satisfies all of the criteria for preliminary settlement approval and conditional class certification. Accordingly, the Parties respectfully request the Court to (1) preliminarily approve the Settlement Agreement; (2) certify the Class for the purpose of implementing this settlement; (3) appoint Class Counsel and the Class Representatives; (4) approve the form and manner of the Notice (and the related Notice Plan) described in the Settlement Agreement; (5) establish the procedures described in the Settlement Agreement by which members of the Class can assert objections to the terms of the Settlement Agreement; (6) establish the procedures described in the Settlement Agreement by which members of the Class can exclude themselves from the Class; and (7) set a date and time for the Fairness Hearing.

## II.     THE SETTLEMENT AGREEMENT

The Settlement Agreement, which is attached hereto as Exhibit 1, provides tangible benefits directly to all persons identified as falling within the Class, including reimbursement for out-of-pocket expenditures up to $1,500.00 for each Class Member.[2] And, each Class Member who submits a valid claim will receive at least $75.00.[3]

### A. The Settlement Class

The Settlement Class is defined as all veterans, spouses of veterans, and military personnel who incurred actual damages as a direct result of the theft of electronic equipment

---

[2] Settlement Agreement, p. 10.
[3] *Id.*

containing personal information from the home of a VA employee on May 3, 2006 during the
Recovery Period.[4]

### B. The Settlement Consideration

Under the terms of the Settlement, each member of the Class will be eligible to receive a
refund of the total out-of-pocket expenditures they incurred between May 3, 2006 and the date of
Preliminary Approval of this Agreement as a direct result of the theft of electronic equipment
from the home of a VA employee on May 3, 2006.  These costs include reasonable out-of-pocket
expenditures to protect or monitor personal financial information; out-of-pocket expenses
incurred as a result of physical manifestations of severe emotion distress, as well as any
reasonable out-of-pocket expense incurred by an individual.[5]

In the event that there is a balance remaining in the Settlement Fund following the
payment of all valid claims, notice costs and Claims Administrator costs, attorneys fees and cost
reimbursement to Class Counsel as approved by the Court, and Class Representative Incentive
Payments as approved by the Court, the remaining balance shall be paid to the Veterans Cy Pres
Beneficiaries identified in section D.1 of the Settlement Agreement (the Fisher House
Foundation and The Intrepid Fallen Heroes Fund).[6]  None of the $20,000,000 will revert back to
Defendants.

### C. Class Action Settlement Notice and Settlement Administration

The Settlement will be administered by a mutually agreeable party to facilitate
administrative matters and the distribution of payments in accordance with the terms and
conditions of the Agreement.  The Claims Administrator will be Epiq Systems ("Epiq").  Epiq

---

[4] Settlement Agreement, p. 6; "Recovery Period" as defined by the Settlement Agreement refers to the period from May 3,
2006 through the date of Preliminary Approval of this Agreement (*Id.* at 8).
[5] *Id.* at 9-10.
[6] *Id.* at 5. Information about each of the Cy Pres Beneficiaries is attached hereto as Exhibits 3 and 4.

(formerly known as Poorman-Douglas Corporation) specializes in the administration of nationwide class action settlements and has handled over 500 cases worldwide.[7]

Defendants, along with Class Counsel, will use reasonable efforts to notify the Class within forty-five days following the date of entry of the Order Granting Preliminary Approval. The Notice will provide instructions on how to opt-out of the Class should any Class Member elect to do so.  Class Members will also be provided with instructions on how to object and be heard on any issue pertaining to the Settlement.

The settlement notice campaign has been designed and will be implemented by Hilsoft Communications ("Hilsoft").  Hilsoft has designed sophisticated notice campaigns for dozens of nationwide class action settlements, including the recent TJX data theft settlement.[8]   The notice publication plan will disseminate the notice through targeted consumer and military publications.[9]  In particular, summary notice will appear once in each leading consumer magazines among veteran adults-- *Field & Stream*, *Reader's Digest*, *VFW Magazine*, *Paraplegia News*-"*PN*", *The VVA Veteran*, *Purple Heart*, *Air Force Times*, *Army Times*, *Marine Corps Times*, and *Navy Times*—and twice in the newsweekly magazines, *Time* and *Newsweek*, for a total of seventeen insertions.[10]  This publication notice program will reach approximately 80% of Class Members.[11] Notice coverage will be enhanced by a nationally distributed neutral informational release, nationally distributed public service announcements, and a third-party

---

[7] A summary of Epiq's experience and qualifications is attached as Exhibit 5.
[8] Attached hereto as Exhibit 6 is a summary of Hilsoft's qualifications and experience.
[9] *See* Hilsoft Notice Plan (attached hereto, Ex. 7); Affidavit of Gina M. Intrepido on Settlement Notice Plan and Notices ("Intrepido Affidavit") (attached hereto, Ex. 8), ¶¶18-20.
[10] *Id.* at ¶¶ 21- 24.
[11] Hilsoft Notice Plan, p. 6; Intrepido Affidavit, ¶4.

outreach effort to veteran organizations.[12]  A toll-free number, post-office box, and case website,

www.VeteransClass.com, will also be established to provide additional information.[13]

### D.  Attorneys Fees and Expenses

Class counsel shall, no later than four weeks prior to the Fairness Hearing, file a petition

for fair and reasonable attorneys' fees and costs to be approved by the Court.  Class counsel have

agreed that their request for fees and costs shall not exceed $5,000,000.00 in fees and

$500,000.00 in costs, to be payable from the Settlement Amount following Final Approval.[14]

Class counsel shall also petition the Court for incentive awards from the Settlement Amount to

the named Plaintiffs not to exceed combined awards totaling $18,000.[15]

## III.   ARGUMENT

### A.  The Settlement Class Should Be Certified For Settlement Purposes.

In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689

(1997), the Supreme Court expressly acknowledged that cases may be certified for settlement

purposes only.  In doing so, the Supreme Court stated that the "dominant concern" on which a

court should focus in deciding whether to certify a class is "whether a proposed class has

sufficient unity so that the absent members can fairly be bound by decisions of class

representatives." *Id.* at 621.  The Court further held that, when certification is raised in

connection with a class action settlement, "settlement is relevant to a class certification," and

"must be considered as a factor in the calculus." *Id.* at 619, 622.

---

[12] Intrepido Affidavit, ¶21-24.
[13] *Id.* at ¶¶25-27.
[14] Settlement Agreement, pp. 12-13.
[15] *Id.* at 13.

1.   The Proposed Class Is Sufficiently Definite

Class certification requires "a class definition that will permit identification of individual class members" so that the best notice practical may be given to them. MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.222 (2004). This ascertainability requirement "[i]s not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation." *Pigford v. Glickma*n, 182 F.R.D. 341, 346 (D.D.C. 1998). The class definition should describe "a set of common characteristics sufficient to allow" a prospective plaintiff to "identify himself or herself." *Moreno v. AutoZone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008). The Class definition proposed in the Settlement readily meets these standards.

The present Class is clearly defined and whether an individual is a member may readily be determined by the individuals themselves as they are in the best position to know whether they incurred out-of-pocket expenses as a result of the May 3, 2006 computer theft. Class membership may be verified upon review of an individual's documented losses, but will not require individual hearings. As such, the proposed Class definition is appropriately ascertainable. *See, e.g., Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003) (class ascertainable where "the Court is satisfied that an individual would be able to determine whether he or she was a member of the proposed class" by reviewing the class definition); *Pigford*, 182 F.R.D. at 346 (class ascertainable because "by looking at the class definition, counsel and putative class members can easily ascertain whether they are members of the class"); *Parkinson v. Hyundai Motor America*, 2008 WL 5233200, at *12 (C.D. Cal. Dec. 12, 2008) ("Because the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover, the defined class is sufficiently ascertainable.").

2.   The Action Meets All of The Requirements of Rule 23(a).

"A settlement class should be certified where the four requirements of Fed. R. Civ. P.

23(a)- numerosity, commonality, typicality, and adequacy- are satisfied, as well as one of the

three subsections of Fed. R. Civ. P. 23(b)." *In re Vitamins Antitrust Litigation*, 2001 WL 856292

(D.D.C. July 25, 2001) (*citing Thomas v. Christopher*, 169 F.R.D. 224, 236 (D.D.C. 1996)).   As

explained in full below, each of these requirements is satisfied here.

*a.   Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."   Though there is no strict numerical requirement for numerosity, Courts in this

jurisdiction have found classes consisting of at least forty members to be presumptively

sufficient. *Barnes v. District of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007); *Bynum*, 214

F.R.D. at 32; *see, e.g., Committee of Blind Vendors v. District of Columbia,* 695 F.Supp. 1234,

1242-43 (D.D.C. 1998) (certifying class of 63 class members), reversed on other grounds, 28

F.3d 130 (D.C. Cir. 1990). "If a plaintiff can provide a reasonable basis supporting an estimate,

this will suffice instead of an exact figure." *Id.* (*citing Bynum*, 214 F.R.D. at 32-33; *Kifafi v.*

*Hilton Hotels Retirement Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999)); *Pigford*, 182 F.R.D. at 347.

In the instant case, a privacy and data protection expert retained by Plaintiffs' counsel

indicates that the Class likely consists of hundreds of thousands of individuals.[16]   There is no

question that the class is so numerous that joinder of all Class Members would be impracticable.

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 243, 306 (D.D.C. 2007) (when

a class is large, numbers alone are dispositive of numerosity); *Franklin v. Barry*, 909 F.Supp. 21,

---

[16] *See* Letter of Dr. Larry Ponemon, dated February 22, 2008 (attached as Ex. 9, hereto) indicating that Plaintiffs'
counsel's use of a 1% rate to estimate the percentage of veterans who procured identity protection service after receiving
the VA's notice is "extremely conservative" and that the actual number is likely to be higher.   One percent of 17,500,000
equals 175,000.

30 (D.D.C. 1995) (impracticability of joinder requirement satisfied on numbers alone).  Thus, the numerosity requirement is satisfied.

### b.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the Class."  This requirement is met "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001); *Barnes*, 242 F.R.D. at 121 ("Commonality need not be complete; the class members do not have to have every issue of law and fact in common.").  Notably, "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."  *Bynum*, 214 F.R.D. at 33.

Here, the existence of numerous common questions surrounding Plaintiffs' claims satisfies the commonality requirement.  These questions include whether Defendants failed to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of records and to protect against known and anticipated threats or hazards to the security and integrity of these records, whether such failure was willful and intentional, whether the putative Class Members were adversely affected, and whether they incurred actual damages as a result.  Accordingly, commonality is satisfied.

### c.  Typicality

Rule 23(a)(3) requires that the claims of the class representative be "typical of the claims of the class."  This requirement is satisfied so long as "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability."  *Pigford*, 182 F.R.D. at 349.  A

finding of typicality ensures "that the class representatives have suffered injuries in the same general fashion as absent class members." *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 260 (D.D.C. 2002). Like commonality, "typicality is not destroyed simply because there are some factual variations between claims of the representatives and other class members." *Barnes*, 242 F.R.D. at 122.

Here, the claims of the named Plaintiffs are typical of the members of the proposed Class as they arise from the same course of events and implicate similar, if not identical, arguments. Specifically, Plaintiffs, like all Class Members, have alleged claims that arise from the same course of conduct by Defendants. Each Plaintiff alleges generally similar facts with very little variation and seeks substantially similar relief for damages associated with the May 3, 2006 theft of computer equipment. These similarities exist amongst Class Members as well. Accordingly, typicality is satisfied.

### d.   Adequacy

The final requirement of Rule 23(a), adequacy, "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem,* 521 U.S. at 625 (citations omitted).

"Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

There are no conflicts of interest between Plaintiffs and the other members of the Class that impairs Plaintiffs' incentive to prosecute vigorously all aspects of the claims against

Defendants. The representative Plaintiffs, having nearly identical claims against Defendants, also have the same incentives as each of the other Class Members to pursue damages incurred as a result of the May 3, 2006 theft of computer equipment. Moreover, the Settlement – which is relevant to determining whether there is adequate representation of absent class members, *Amchem*, 521 U.S at 621, clearly benefits each Class Member equally and does not involve any sacrifice of the interests of some Class Members for those of others. Thus, Plaintiffs have the same incentive as the other Class Members for settlement purposes.

Moreover, Plaintiffs have engaged competent counsel. The firms representing the Settlement Class are qualified to conduct this action. Plaintiffs' counsel has extensive experience prosecuting class actions.[17] John Murdock and Jeffrey Goldenberg of Murdock, Goldenberg, Schneider & Groh, LPA, have substantial experience litigating complex class actions on behalf of plaintiffs in a variety of contexts and have successfully litigated and settled other privacy related class actions.[18] Douglas Rosinski of Ogletree, Deakins, Nash, Smoak & Stewart, is a leading practitioner of veteran's law and has represented veterans and their families in numerous cases before the Department of Veterans Affairs and federal courts. Donald Cockrill of the same firm is also a widely experienced litigator. Marc Mezibov of The Law Office of Marc Mezibov has over 35 years of litigation experience in employment, civil rights and class action litigation and has substantial experience litigating privacy related class actions.[19] Gary E. Mason of The Mason Law Firm, L.L.P. has successfully prosecuted dozens of class actions in state and federal courts throughout the country since 1990. Mark Smilow of Weiss & Lurie also has significant experience litigating class actions. These attorneys have vigorously prosecuted this litigation from the outset and obtained a fair and reasonable settlement for all

---

[17]  The law firms' respective resumes are attached hereto as Exhibits 10 through 14.
[18] E.g. *Estep v. Blackwell*, Case No. 1:06-cv-106 (S.D. Ohio 2006).
[19] E.g. *Estep v. Blackwell*, Case No. 1:06-cv-106 (S.D. Ohio 2006); (list other privacy cases)

members of the Class.  The Class thus has received, and will continue to receive, adequate

representation.

### 3.  The Action Meets All Requirements of Rule 23(b)(3).

In addition to satisfying the four prerequisites of Rule 23(a), Plaintiffs must establish that

the requirements of one of the three subdivisions of Rule 23(b) are met.  Here, Plaintiffs seek

certification pursuant to Rule 23(b)(3).

Rule 23(b)(3) requires that "the questions of law or fact common to the members of the

class predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for the fair and efficient adjudication of the controversy."

Fed. R. Civ. P. 23(b)(3).  This provision encompasses those cases in which a class action would

achieve economies of time, effort, and expense and promote uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results.  *See* Fed.R.Civ.P. 23, Advisory Committee Note to 1966 Amendments, *reprinted in* 39

F.R.D. 69, 102-3 (1966).  Both criteria are met in this case: common questions predominate and

a class action is the superior method to adjudicate the claims of the class.

### a.  *Predominance of Common Questions*

The predominance requirement in Rule 23(b)(3) focuses "on the legal or factual questions

that qualify each class member's case as a genuine controversy, questions that preexist any

settlement." *Amchem*, 521 U.S. at 623.  "There is no definitive test for determining whether

common issues predominate, however, in general, predominance is met when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide basis,

since such proof obviates the need to examine each class members' individual position." *Meijer,*

*Inc.*, 246 F.R.D. at 307 (*quoting In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 262 (D.D.C.

2002). Class treatment is appropriate here for settlement purposes because members of the Class

allege the identical misconduct by the identical Defendants. These allegations are subject to

generalized proof, *i.e.*, the same evidence would be used to prove the claims against Defendants,

whether the claims proceed as a class action or individual actions. In addition, common issues

predominate because every class member's claim is linked to the identical facts – namely the

events leading up to and following the May 3, 2006 theft of the computer equipment at issue.

### b. Superiority

This case also meets the second requirement of Rule 23(b)(3): that the class action be

superior to other available methods for the fair and efficient resolution of the controversy.

Considerations of judicial economy underscore the superiority of the class action mechanism in

this case, where the Settlement would alleviate the necessity of multiple adjudications on the

same issues. Settlement on a class basis also is superior to individual litigation and adjudication

because the Settlement provides the Class with prompt compensation for their damages. By

contrast, compensation resulting from litigation is highly uncertain and may not be received

following the lengthy trial and appellate proceedings if there is no Settlement. In addition, the

Settlement obviously removes the overwhelming and redundant costs of individual trials. *See,*

*e.g., Barnes*, 242 F.R.D. at 123-24 ("In cases such as this, involving many extremely similar

claims against the same defendant, class certification promises greater efficiency and consistency

than serial litigation of nearly identical individual cases. The superiority of the class action

device becomes all the more apparent when it is revealed that the potential damages for each

award may be small, indicating that the alternative of multiple individual suits may be an

impossible way of vindicating the rights at issue.").

Accordingly, this Settlement is superior to other potential avenues of recovery for Plaintiffs and the Class. Therefore, this case presents the classic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: to promote judicial economy through the efficient resolution of multiple claims in a single action; and to provide persons with smaller claims, who might otherwise be economically precluded from doing so, the opportunity to assert their rights. C.A. Wright, A.R. Miller & M.K. Kane, Federal Practice & Procedure: Civil 2d § 1754.

When evaluating superiority, courts generally look to four factors: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

1. Interests of Individual Members

The interest of class members in conducting separate lawsuits does not require denial of class certification when a large number of class members' claims would be so small that it would not be economically efficient for them to maintain individual suits. *Bynum*, 214 F.R.D. at 40. Indeed, as the U.S. Supreme Court reasoned in *Amchem:*

> [T]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for individuals to bring a sole action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617.  Class Members who want to pursue their own lawsuits can request

exclusion, thus no Settlement Class Member is precluded from conducting a separate lawsuit if

he or she so desires.

### 2.  Pending Proceedings

The second factor, the nature and extent of any existing litigation, also weighs in favor of

class action superiority for settlement purposes.  The focus of the inquiry is on whether there is

so much litigation in progress that certifying a class would be unproductive.  *Central Wesleyan*

*College v. W.R. Grace & Co.,* 143 F.R.D. 628, 640 (D.S.C. 1992), *aff'd,* 6 F.3d 177 (4th Cir.

1993).  The only actions Plaintiffs are aware of involving the issues at bar have been

consolidated in this litigation.  That there are no other actions concerning this matter

demonstrates that the proposed class action is the superior mechanism for dealing with these

cases.

### 3.  Concentration of Litigation in One Forum

Because the Parties in this case are trying to settle with Court approval (not tried), the

desirability of concentrating the litigation in a particular forum is consistent with certification.  It

is clearly more efficient to have these claims resolved in one forum.

### 4.  Manageability

The proposed Settlement resolves any manageability problems by creating an effective

notice plan and an efficient claims process.  Thus, Class Members can obtain individual relief

without burdening the judicial system and without incurring substantial expense.  Indeed, given

the U.S. Supreme Court's holding that a court certifying a settlement class need not decide

whether or not a class action would be manageable at trial, *Amchem,* 521 U.S. at 620, the Court

need not even consider the issue of manageability.   Nonetheless, a competent and qualified

claims administrator and notice expert have been engaged to manage the settlement process. Manageability is satisfied.

* * *

On the basis of all of these factors, a class action is a superior method of resolving this case by settlement, and certification of this Class for settlement is appropriate.

### B. Preliminary Approval is Appropriate Because The Settlement Agreement is Fair, Adequate and Reasonable.

Under Rule 23(e) of the Federal Rules of Civil Procedure, a Court may approve a proposed class action settlement if it determines that the settlement is "fair, adequate and reasonable, as well as consistent with the public interest." The Rule specifically provides that:

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

Fed. R. 23 (e)(1)(C). As described by the Manual for Complex Litigation, judicial approval of a proposed class settlement is a two-part process. Manual for Complex Litigation, Third 30.41 (West 1999); *see also* 2 H. Newberg & A. Conte, Newberg on Class Actions 11.25 (3d ed. 1992). First, the court is to determine whether the settlement falls "within the range of possible judicial approval." *Id.* If the court does indeed find the settlement to be within the range of possible approval, it will schedule a final approval hearing and direct notice to the Class. *Id.* Then, once notice has been disseminated to the Class and relevant evidence has been presented, the court makes the final determination as to whether the Settlement is fair, reasonable, and adequate. *Id.*

It is well-noted in this jurisdiction and others that preliminary approval should be granted "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its

fairness or other obvious deficiencies, such as unduly preferential treatment of class

representatives or of segments of the class, or excessive compensation for attorneys, and appears

to fall within the range of possible approval…" *In re Vitamins Antitrust Litigation*, 2001 WL

856292, at *4 (D.D.C. July 25, 2001) (*quoting* Manual for Complex Litigation, Third 30.41

(West 1999)); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305,

314 (7th Cir. 1980) (The purpose of the pre-notification hearing is "to determine whether the

proposed settlement is within the range of possible approval.").

The Settlement Agreement before the Court falls well within the "range of possible

approval," taking into consideration all relevant factors, and therefore, preliminary approval of

the Settlement Agreement should be granted.  Indeed, the Settlement Agreement is the result of

vigorously contested, arm's-length negotiations by experienced counsel on both sides under the

direction and counsel of Judge Kay.  Plaintiffs' counsel entered settlement negotiations with

Defendants during an initial mediation in December 2007 and the negotiations were wide-

ranging and highly adversarial.  These negotiations were conducted by experienced and

knowledgeable counsel who had the benefit of substantial informal discovery exchanges.

Well before the mediation, the Parties vigorously contested Motion(s) to Dismiss and for

Summary Judgment, through which Defendants challenged the efficacy of Plaintiffs' claims on a

number of factual and procedural bases.  Thus, the concern noted in *Amchem* - concerning the

vulnerability of a settlement claim – where the parties had not been put to the test of a vigorous

adversarial process in shaping their position at the bargaining table, *Amchem*, 521 U.S. at 601,

620, is not at issue here.  In this case, the adversarial process was fully realized throughout the

litigation and negotiation period.

The fairness of the settlement process and the Settlement Agreement itself were also shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. "The opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Equal Rights Center v. Washington Metropolitan Area Transit Authority*, 573 F.Supp. 2d 205, 213 (D.D.C. 2008) (*quoting In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003); *see also Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). This Settlement Agreement was specifically negotiated by experienced counsel to meet all the requirements of Rule 23 and specifically to provide administrative procedures to ensure all Class members equal and sufficient due process rights. In the course of this litigation, Plaintiffs' counsel have thoroughly investigated and analyzed Plaintiffs' claims as well as the associated risks of continued litigation and have come to the conclusion that the terms and conditions of the Settlement Agreement are fair, reasonable and adequate and that the Agreement is in the best interests of the Class. The Settlement negotiations were prolonged with both sides vigorously advocating their positions. Judge Kay assisted with the negotiations of the principle terms and was kept fully advised of the progress of the negotiations. Four separate mediation sessions took place. Accordingly, the Settlement Agreement was not the product of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by experienced and qualified counsel on both sides.

Further, continued litigation would be long, complex, expensive, a burden to the Court's docket, and the results remain uncertain. *Lake v. First Nationwide*, 900 F. Supp. 726 (E.D. Pa.

1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered).

Finally, there is no reason to doubt the fairness of the Settlement Agreement. As noted, the Settlement Agreement was the result of good faith, arms-length negotiations between experienced and informed counsel on both sides of this litigation. *See In re Vitamins Antitrust Litigation,* 2001 WL 856290, at *2 ("a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms' length negotiations between experienced, capable counsel after meaningful discovery.") (*quoting* Manual for Complex Litigation, Third §30.42). There was no collusion between the negotiating parties. Indeed, the negotiations involved multiple formal mediation sessions. The Settlement Agreement does not grant unduly preferential treatment to the Class Representatives or to any segment of the Settlement Class, and it does not provide excessive compensation to Plaintiffs' counsel.

## C. **The Proposed Notice is Fair and Satisfies Due Process.**

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(C)(2)(B). The Rule also requires that any such notice must concisely and clearly state in plain, easily understood language:

- the nature of the action

- the definition of the class certified

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

-     that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

-     the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(b)(2(B).

As explained above, the parties have agreed to disseminate notice to Class Members via publication and other tactics, including informational releases, radio PSAs, third-party outreach, and a case website.[20] The measurable paid publication notice alone will reach nearly 80% of the Class on average 2.36 times each.[21] Coverage and exposure will be further enhanced by the additional efforts discussed in the Notice Plan (e.g. notice placed in some military publications, informational releases, radio PSAs, third-party outreach effort, and case website).[22] The proposed notice informs Class Members of the terms of the Settlement Agreement and the relief the settlement will provide; the procedures for commenting on the terms of the Settlement Agreement and opting-out of the Class; the date, time, and place of the Fairness Hearing; the application of Plaintiffs' Counsel for payment of their attorneys' fees and expenses; the address of Plaintiffs' Lead Counsel; and the procedure for making inquiries to Plaintiffs' Lead Counsel. Indeed, the Notice Plan was specifically designed by Hilsoft to satisfy due process requirements. The proposed Notice and the Notice Plan are thus consistent with the requirements of due process and those of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure.[23]

---

[20] *See* Notice Plan.

[21] Intrepido Affidavit at ¶ 4.

[22] *Id.* at ¶5.

[23] The parties have also considered their notice obligations pursuant to the Class Action Fairness Act of 2005. See 28 U.S.C. § 1715. In the typical case involving a corporate defendant, the Act requires notice to appropriate federal and state officials following the filing of a proposed settlement agreement in federal court. See id. § 1715(a). As revealed by the legislative history of the Act, the purpose of this requirement is "to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 32 (2005). Here, there is no question that notice was received by the responsible federal official, and there is no state official who exercises regulatory control over the actions of an executive agency (here the Department of Veterans Affairs) under the Privacy Act. Accordingly, the purposes of the Act are fully satisfied by the actual notice provided to the federal authority in this case.

**D. Scheduling of a Final Approval Hearing is Appropriate.**

The last step in the settlement approval process is the Fairness Hearing, at which the Court may hear all evidence and argument necessary to conclusively evaluate the Settlement Agreement.  Settlement Class Counsel recommends that the hearing be held no earlier than June 26, 2009.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) preliminarily approve the Settlement Agreement; (2) certify the Class for the purpose of settlement; (3) appoint Plaintiffs' Counsel as Class Counsel and plaintiffs as the Class Representatives; (4) approve the form and manner of the class action settlement notice and the notice plan; (5) establish the procedures described in the Settlement Agreement by which members of the Class can assert objections to the certification of the Class and to the terms of the Settlement Agreement; (6) establish the procedures described in the Settlement Agreement by which members of the Class can exclude themselves from the Class; and (7) set a date and time for the Fairness Hearing.


Dated: January 27, 2009

Respectfully submitted:

/s/ John C. Murdock
John C. Murdock
Jeffrey S. Goldenberg
MURDOCK GOLDENBERG SCHNEIDER
& GROH, LPA
35 East 7th Street, Suite 600
Cincinnati , OH 45202
(513) 345-8291
Counsel in No. 1:06-CV-01943 (JR)

Marc D. Mezibov
Christian A. Jenkins
MEZIBOV & JENKINS, LLP
401 East Court Street
Suite 600
Cincinnati , OH 45202
(513) 723-1600
Counsel in No. 1:06-CV-01943 (JR)

Donald A. Cockrill
Douglas J. Rosinski
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
1320 Main Street , Suite 600
Columbia , SC 29201
(803) 252-1300
Counsel in No. 1:06-CV-01038 (JR)

Gary Edward Mason
THE MASON LAW FIRM, LLP
1225 19th Street, NW
Suite 500
Washington , DC 20036
(202) 429-2290
Counsel in No. 1:06-CV-01943 (JR)

Mark D. Smilow
WEISS & LURIE
The French Building
551 Fifth Avenue, Suite 1600
New York, NY  10176
(212) 682-3025
Counsel in No. 1:06-CV-01944 (JR)

## CERTIFICATE OF SERVICE

    I hereby certify that on January 27, 2009 I electronically filed the foregoing with the
Clerk of Court using the ECF system which will send notification of such filing to all counsel of
record.

                              s/John C. Murdock