**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                             :

In Re: DEPARTMENT OF VETERANS   :
AFFAIRS (VA) DATA THEFT          :
LITIGATION                     :

_____:    Misc. Action No. 06-0506 (JR)
                             :    MDL Docket No. 1796

This Document Relates To:       :
ALL CASES                 :

_____:


**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT**

## I.      INTRODUCTION

Class Counsel, on behalf of Plaintiffs Paul Hackett, Matthew Page, Michael Rosato, Murry Moskowitz, Bruce Ouellette, Charles L. Clark, James E. Malone, Barry Jackson, and John Rowan (collectively, "Plaintiffs"), respectfully request that the Court grant final approval of the proposed Settlement between the Plaintiffs and the United States Department of Veterans Affairs, the Secretary of the United States Department of Veterans Affairs, the Deputy Secretary of the United States Department of Veterans Affairs, and John Doe, an employee of the United States Department of Veterans Affairs, in their official capacities (collectively "Defendants"). Final approval of this Settlement is appropriate because the proposed Settlement is the product of arm's-length negotiations involving an experienced mediator, and is fair, reasonable, and adequate. It therefore merits final approval.

Defendants do not object to this Motion; however, they preserve their rights as stated on page 6.

A proposed Order Granting Final Approval is attached as Exhibit 1.

## II.   BACKGROUND

### A. The VA Data Theft Litigation

In May and June of 2006, multiple class actions were filed against the United States Department of Veterans Affairs, the Secretary of the United States Department of Veterans Affairs, the Deputy Secretary of the United States Department of Veterans Affairs, and John Doe, an employee of the United States Department of Veterans Affairs (collectively, the "Defendants") for damages arising from the May 3, 2006, theft of computer equipment which was reported to contain private information of millions of military veterans, their spouses, and active duty personnel.  Each Plaintiff alleged violations of the Federal Privacy Act of 1974, 5 U.S.C. §552a, and the Fourth and Fifth Amendments of the United States Constitution.  On November 3, 2006, those actions were transferred by the Judicial Panel on Multidistrict Litigation to the U.S. District Court for the District of Columbia, which subsequently issued an Order consolidating the actions for pretrial purposes on January 23, 2007.

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, on November 30, 2006 and again on February 22, 2007.  In response, Plaintiffs filed a Joint Opposition on March 28, 2007.  On November 16, 2007, the Court issued its Memorandum Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and Denying Defendants' Motion for Summary Judgment  (the "November 16, 2007 Order").  This order, along with the status conference held shortly thereafter, on November 28, 2007, provided the backdrop for the parties' agreement to explore a potential resolution.[1]

---

[1] *Declaration of John C. Murdock in Support of Final Approval* ("*Murdock Dec.*"), ¶ 3, filed concurrently.

**B.      Negotiation of the Proposed Settlement**

Beginning in December 2007, the parties engaged in extensive negotiations with the assistance of Magistrate Judge Alan Kay.[2]  The parties held three in-person meetings in Washington, D.C., exchanged draft settlement documents, and participated in numerous telephone conference calls.[3]  The mediation proved successful resulting in the Settlement Agreement now presented before the Court.

Defendants have denied vigorously, and continue to deny vigorously, each and every allegation of liability and wrongdoing in the Amended Complaint.  Without admitting any wrongdoing or liability, Defendants are nevertheless willing to agree to the terms of the Settlement Agreement to resolve fully and finally this litigation.

**C.      The Settlement Agreement**

The Settlement Agreement provides tangible benefits directly to all persons identified as falling within the Settlement Class.[4] The Settlement Agreement provides for the creation of a $20 million common fund from which eligible claimants can recover <u>100% of their actual out-of-pocket damages</u>, up to $1,500.[5]  The balance of the common fund remaining after all claims, fees, expense reimbursements and costs are paid will not be returned to the Defendants.  Instead, all remaining funds will be paid to the Fisher House Foundation, Inc. (50%) and The Intrepid Fallen Heroes Fund (50%) for the benefit of <u>all</u> military personnel, veterans and their families.[6]

---

[2] *Murdock Dec.,* ¶ 3.
[3] *Id*. at ¶ 5.
[4] The *Settlement Agreement and Release of All Claims* is attached as Exhibit 1 to *Plaintiffs' Motion for Preliminary Approval of Class Action Settlement* (Doc. 53).
[5] *Id*. at 5, 10-11.
[6] *Id*. at 6.

### 1.      The Settlement Class

The Settlement Class is defined as all veterans, spouses of veterans, and military personnel who incurred actual damages as a direct result of the theft of electronic equipment containing personal information from the home of a VA employee on May 3, 2006, during the Recovery Period.[7]

### 2.      The Settlement Consideration

Under the terms of the Settlement, the Defendants will pay $20 million to settle the claims of the Class ("Settlement Amount" or "Settlement Fund").[8] Each member of the Class will be eligible to receive a refund for the total out-of-pocket expenditures they incurred, up to $1,500, between May 3, 2006, and the date of Preliminary Approval of this Agreement as a direct result of the theft of electronic equipment from the home of a VA employee on May 3, 2006. These costs include reasonable out-of-pocket expenditures to protect or monitor personal financial information; out-of-pocket expenses incurred as a result of physical manifestations of severe emotion distress, as well as any reasonable out-of-pocket expense incurred by an individual.[9] Each valid claimant will receive at least $75.[10]

In the event that there is a balance remaining in the Settlement Fund following the payment of valid claims, settlement notice and payments to the Claims Administrator, attorneys fees, cost reimbursement to Class Counsel as approved by the Court, and Class Representative Incentive Payments as approved by the Court, any such funds shall be paid to the following

---

[7] *Order Granting Motion For Preliminary Approval of Class Action Settlement*, p. 2 (Doc. 54); "Recovery Period" as defined by the *Settlement Agreement* refers to the period from May 3, 2006 through the date of Preliminary Approval of this Agreement*; Settlement Agreement*, p. 9.
[8] *Settlement Agreement*, p. 5.
[9] *Id.* at p. 10.
[10] *Id.* at p. 11.

veterans charitable organizations:  the Fisher House Foundation, Inc. (50%) and The Intrepid Fallen Heroes Fund (50%).[11]

### D.      Preliminary Approval

On February 11, 2009, the Court granted preliminary approval to the proposed Settlement, finding that "the terms contained therein are hereby preliminarily approved as fair, reasonable and adequate."[12]  Pursuant to the Court's Order, Class Counsel disseminated notice in accordance with the Notice Plan which the Court found met the requirements of due process, Defendants satisfied all obligations under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715,  and the Notice Plan was the "best notice practicable under the circumstances."[13]  The Affidavit of Cameron Azari, Esq. filed concurrently with this Motion discusses in detail the implementation of this Notice Plan.  Any objections were due to be postmarked by June 29, 2009.[14]  As of the date of filing this Motion, Class Counsel is aware of seven net objections and fourteen net opt outs.[15]  The list of opt outs is included as Exhibit 1 to the Affidavit of the Settlement Administrator filed concurrently.  As discussed below, none of these objections provide a reasonable basis to deny this Motion for Final Approval.

It should be noted that Defendants have indicated to Class Counsel their objection to several of the opt outs listed in Exhibit 1 to the Affidavit of the Settlement Administrator. According to Defendants, several of the opt outs, including Serota and Scharfe opt outs, expressly disclaim having incurred out of pocket expenditures during the Recovery Period. Others, including the Schade and McCartney opt outs, disclaim any intent to sue over harm related to the subject of this litigation.  Defendants also indicated  that, of the remaining opt outs,

---

[11] *Id*. at p. 6.
[12] *Order Granting Preliminary Approval*, p. 3 (Doc. 54).
[13] *Id*. at pp. 3-4.
[14] *Order Granting Preliminary Approval*, p. 5.

only the Wooley, Stone, and Clark opt outs purport to provide documentation concerning out of pocket expenses related to the May 3, 2006 data theft as required by the Settlement Agreement. See Agreement at p. 18. Regardless of the number of opt outs approved, Defendants have indicated that they reserve the right in any future litigation involving these opt outs to challenge whether their purported injury constitutes "actual damages" as defined by the Privacy Act.

## III.    ARGUMENT

### A.    Standard for Granting Final Approval

Federal Rule of Civil Procedure 23(e) provides that:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Approval of this proposed Settlement "lies within the discretion of this Court." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004).[16] "The Rule 23 requirements are fully consistent with long-standing judicial attitude favoring class action settlements." *Id.*; *see also Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C. Cir. 1993) (policy of encouraging settlements is particularly appropriate in class actions, which are often complex, protracted, and demanding of limited judicial resources). Although the Court should "eschew any rubber stamp approval," it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103 (quoting *United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996); *see also Wells v. Allstate Insurance Co.,* 557 F. Supp 2d 1, 4 (D.D.C. 2008). "This exercise of discretion, however, is

---

[15] *Murdock Dec.*, ¶ 9.
[16] In its February 11, 2009 Order Granting Motion for Preliminary Approval, the Court previously concluded that the Rule 23(a) and (b)(3) certification requirements were satisfied. Accordingly, to conserve resources Class Counsel hereby incorporates by reference its Motion and Memorandum of Law in Support of Preliminary Approval (Doc. 53) demonstrating that these requirements are satisfied.

constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103.

There is no single, obligatory test in this Circuit that courts must use to determine whether the proposed settlement of a class action should be approved under Rule 23(e). *Id*. Courts consider the facts and circumstances of a case, identify the most relevant factors in the circumstances, and exercise their discretion in deciding whether the proposed settlement is "fair, adequate and reasonable." *Id*; *Thomas v. Albright*, 139 F.3d 227, at 231 (D.C. Cir. 1998); *Wells v. Allstate Insurance Co.,* 557 F. Supp 2d 1, 4 (D.D.C. 2008) ("Generally, in determining whether settlement should be approved, courts consider whether the proposed settlement is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued.")

The following factors are routinely examined by courts in this Circuit to evaluate the fairness, adequacy, and reasonableness of a settlement: (a) whether the settlement is the result of arm's length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the status of the litigation at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel. *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103 (citations omitted).

**B.      The Court Should Grant Final Approval to the Proposed Settlement.**

The Court should grant final approval here because this Settlement: (a) is the product of arm's-length negotiations; (b) represents a significant recovery that will reimburse Recoverable Losses at 100% up to $1,500 and will provide substantial cy pres benefits to two very worthy veterans charities; (c) comes at an advanced stage of the litigation; (d) has drawn only a few

minor objections; and (e) is fair, reasonable, and adequate in the opinion of experienced Class Counsel.

### 1. The Settlement is the Product of Arm's-Length Negotiations by Experienced Class Counsel After Meaningful Discovery.

"A presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd*., 565 F. Supp. 2d 49 (D.D.C. 2008) (citing *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104). That presumption should attach here because this Settlement was negotiated on behalf of the Class by experienced Class Counsel with the assistance of a well-respected mediator, Magistrate Judge Alan Kay.[17] Further, Class Counsel completed meaningful discovery prior to entering and finalizing these negotiations.[18] Accordingly, Class Counsel could adequately evaluate the strengths and weaknesses as to the remaining claims.

All settlement negotiations were undertaken in good faith by Class Counsel.[19] Nothing in the course of the negotiations or the substance of the settlement "discloses grounds to doubt its fairness." *In re Vitamins Antitrust Litig*., 305 F. Supp. 2d at 104 (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.41 at 237); *see also Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd*., 565 F. Supp. 2d 49, 55 (D.D.C. 2008) ("The Court has been presented with absolutely no evidence that the settlement is anything other than the product of arm's-length negotiation between experienced counsel."). To the contrary, the arm's length nature of the negotiations, the protracted nature of these negotiations, and the participation of Magistrate

---

[17] *Murdock Dec.*, ¶ 3-16.
[18] Id. at ¶ 10-15.
[19] Id. at ¶ 8.

Judge Kay and experienced advocates throughout the process strongly support the conclusion that the proposed Settlement is fair, reasonable, adequate, and should be approved.

Prior to these negotiations, Class Counsel conducted and completed substantial investigations, discovery, and analyses.[20] For example, Class Counsel obtained and reviewed an extraordinary amount of relevant information from the Defendants obtained through the Freedom of Information Act, other government sources, and other publicly accessible sources.[21] In particular, Class Counsel obtained the documents underlying and supporting the VA Office of Inspector General's investigation and report stemming from the May 3, 2006, theft. These documents included: (1) transcripts of dozens of interviews with the key individuals involved in the May 3, 2006, incident, (2) transcripts of interviews with those individuals responsible for data security within VA, (3) transcripts of interviews with the VA management involved in the post-theft investigation, (4) VA records of computer access authorization, (5) VA records of employee background checks, (6) documents related to the relevant VA security and safeguarding procedures, and (7) many other documents and relevant emails.[22] The witness interviews obtained by Class Counsel were conducted under oath, essentially constituting sworn testimony. Because of these efforts, Class Counsel was able to ascertain a tremendous amount of highly relevant information directly related to the actions and inactions responsible for the alleged Privacy Act violations which are at the heart of this litigation.[23] Class Counsel also identified, retained, and worked closely with a privacy and data protection expert to establish numerosity, to approximate the size of the class, and to estimate out-of-pocket losses.[24]

---

[20] *Murdock Dec.,* ¶ 10-15.
[21] Id. at ¶ 11.
[22] Id.
[23] *Murdock Dec.* at ¶ 13.
[24] *Id*. at ¶ 14.

Based on the totality of the meaningful information obtained, Class Counsel is confident that this Settlement is well-founded and constitutes a fair resolution.[25]

### 2. The Amount of the Recovery Is Significant In Relation to the Strength of Plaintiffs' Case.

This Settlement creates a $20 million common fund to resolve the claims of the Class. This amount will provide substantial recoveries to Class Members who submit valid claims because Class Counsel estimate that a relatively small percentage of all military personnel and veterans incurred actual out-of-pocket damages as a direct result of the laptop theft.[26] Accordingly, it is anticipated that most, if not all, class members who submit valid claims will recover 100% of their actual out-of-pocket damages. So, if a Class Member submits a claim demonstrating that he or she spent $150 for an annual credit monitoring subscription, that Class Member will receive a $150 reimbursement payment. In fact, a Class Member can recover up to $1,500 for out-of-pocket expenditures.[27] Individuals who did not incur "actual damages," which is defined to mean someone who incurred reasonable out-of-pocket expenditures,[28] are not members of the Class and are not covered by the release.[29]

While claimants may recover up to $1,500,[30] it is anticipated that most claims paid will not exceed the $1,000 available under Section 552a(g)(4)(A) of the Federal Privacy Act. Yet, this Settlement still affords a material and substantial recovery to the Class in light of all risks of litigation. *See, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $0.20 a share was a small fraction of the desired

---

[25] *Id.* at ¶ 15.
[26] Plaintiffs' privacy and data theft expert, Larry Ponemon, indicated that it is likely that at least 2% of the Class purchased some sort of identity theft monitoring service or some other protection service following the May 3, 2006 theft. See *Plaintiffs' Motion for Preliminary Approval*, Exh. 9.
[27] *Settlement Agreement*, p. 11.
[28] *Id.* at 6-7.
[29] *Id.* at 22.

recovery of $3.50 a share was not indicative of an inadequate compromise. A settlement can be satisfactory even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *see also Officers for Justice v Civil Service Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ('It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."). Here, each Class Member who submits a valid claim will receive the greater of $75 or 100% of their actual out-of-pocket damages, not to exceed $1,500. Further, any balance remaining in the Settlement Fund following payment of valid claims, fees and costs, will go to the Fisher House Foundation, Inc. (50%) and The Intrepid Fallen Heroes Fund (50%).[31] There is no reversion to the Defendants. This represents an excellent recovery for the Class.[32]

While the Plaintiffs remain confident in the merits of their claims, they nonetheless face potential difficult obstacles with respect to class certification and proving their case on a classwide basis. As one court noted in the context of complex litigation, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced*." West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) (citing instances in which settlements were rejected by the court and plaintiffs ultimately lost at trial or recovered less than settlement amount).[33]

Further, even if the Plaintiffs were to prevail on every issue at trial, they would face inevitable appeals, and the reality that many verdicts reached in complex litigation are reversed on appeal. *See, e.g., Backman v. Polaroid Corp.,* 910 F.2d 10, 17-18 (lst Cir. 1990) (substantial

---

[30] *Id*. at 11.
[31] *Settlement Agreement*, p. 6.
[32] *Murdock Dec.,* ¶ 15.
[33] The recent decision *Fanin v. VA*, 2009 U.S. App. LEXIS 13207 (11th Cir. Ala. June 17, 2009) demonstrates the risks inherent in Federal Privacy Act litigation. "Obtaining monetary damages under § 552a(g)(4) requires proof of "actual damages," and in this circuit that means pecuniary losses."

verdict for class was reversed on appeal and the case dismissed, after 11 years of litigation);

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263,276-308 (2d Cir. 1979) (multimillion

dollar antitrust judgment after a lengthy trial was reversed). Viewed against any probable

recovery, and considering the risks of protracted litigation, this Settlement falls well within the

range of what is considered fair, reasonable, and adequate.[34]

### 3. The Status of the Litigation was Developed.

The Settlement was reached only after more than three years of discovery, factual

investigation, legal analysis, expert analysis, briefing on substantive issues, and hard fought and

tense negotiations. Defendants' Motion to Dismiss and Motion for Summary Judgment was

extensively briefed. The Court granted in part and denied in part the Motion to Dismiss and

denied the Motion for Summary Judgment. The Settlement was reached after significant work

had been done and critical issues had been decided, but before the commencement of the next

phase of the litigation (briefing and discovery in connection with class certification).

Accordingly, the Settlement has "not come too early to be suspicious nor too late to be a waste of

resources." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104.

### 4. The Few Objections Received Do Not Provide a Reasonable Basis to Deny Final Approval.

One of the factors typically considered in determining the reasonableness of a settlement

is the reaction of the class. *Thomas*, 139 F.3d at 231-33; *In re Nat'l Student Mktg. Litig.*, 68

F.R.D. at 155; *Osher*, 945 F. Supp. at 304; *Stewart*, 948 F. Supp. at 1057. Here, the reaction of

the Class further supports final approval. Only seven objections were received. And, none of

these objections provides a reasonable basis to deny final approval.[35]

---

[34] *Murdock Dec,* ¶ 15.
[35] The *Objection of Tere Lawyer* (Doc.58) will be addressed in a separate filing.

12

Other than the *Objection of Tere Lawyer* (Doc. 58), the remaining objections have been provided to the Court under seal to protect the privacy of the information contained therein. Objection 1 appears to be an "opt-out." "I …would like to opt-out of the settlement of this case." Nonetheless, it does contain a title on the second page that reads "Objecting to the Settlement." Yet, it is not apparent from this communication what the Class Member's actual objection is. Objector 1 states: "I think that this court issue will do the veterans no good if the general public does not change their interpretation." To the extent this purported objection attacks the benefits provided by the Settlement, valid claimants will receive 100% of their out-of-pocket damages up to $1,500, and two worthy veteran charities will receive equal shares of the remaining Settlement Funds. This Settlement provides substantial benefits to veterans.

Objection 2 takes issue with the February 11, 2009, cutoff date for the Recovery Period as well as the $1,500 individual damage cap. It is apparent from a review of all the materials submitted by this objector that he is concerned that this Settlement will impact his Agent Orange exposure claim. The Settlement presently before this Court relates solely to claims stemming from the May 3, 2006, theft of computer equipment. Veterans' Agent Orange exposure claims are not encompassed by this Settlement and the associated release.[36]

Objection 3 is titled "Objection to Settlement." However, it does not state any objection. Rather, it suggests two alternative cy pres recipients if the Fisher House Foundation or The Intrepid Fallen Heroes Fund are not approved by this Court.

Objection 4 is based upon the assumption that the stolen ("compromised") data is still out in the general community ("in the wild") and may be used to commit identity theft or fraud in the future. This objector believes that the Settlement should offer free credit monitoring services.

---

[36] *Settlement Agreement,* p. 22.

However, as this Court is aware, the stolen data was recovered by the FBI, and the FBI is highly confident that the data was not accessed during the several weeks that it was missing.

Objection 5 concludes that this Settlement is "a needless waste of taxpayer resources." Class Counsel respectfully disagrees. This Settlement will provide meaningful reimbursement to those individuals who incurred out-of-pocket expenses. In addition, two worthy veterans charitable causes potentially will receive substantial financial contributions as a result of this litigation.

Objection 6 appears to have been filed by someone who is currently incarcerated and is concerned about his ability to file a claim. Class Counsel has instructed the Settlement Administrator to send a notice and claim form to the address provided by the Objector.

None of these objections provide a reasonable basis to deny final approval.

### 5. Experienced Class Counsel Believe the Proposed Settlement is Fair, Reasonable, and Adequate.

The end result of the parties' negotiations is a $20 million Settlement that will fully compensate Class Members for 100% of their out-of-pocket damages up to $1,500. And, any funds remaining will be shared equally by the Fisher House Foundation and The Intrepid Fallen Heroes Fund. This Settlement is fair, reasonable, and adequate when the risks and costs associated with continued litigation are considered. Class Counsel is experienced in litigating complex consumer cases and class actions, including privacy actions. Class Counsel called upon their experience and expertise in negotiating and ultimately recommending this Settlement.[37]

Because the Settlement is the product of an arms-length negotiation following meaningful discovery and information gathering by Class Counsel, was conducted with the benefits of the Court's ruling on the Defendants' Motions to Dismiss and for Summary

---

[37] *Murdock Dec.*, ¶ 15.

Judgment, was the result of extensive mediation with the assistance of an experienced mediator, and was ultimately approved and recommended by experienced Class Counsel, the Court should approve the process by which the Settlement was reached as well as the Settlement itself.  *See Meijer*, 565 F. Supp. 2d at 58 ("The Court therefore concludes that, at the time settlement was reached, both parties possessed well-founded views of the merits of their respective positions and the potential for, and likely amount, of any recovery.").  *See Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996) (noting that courts should generally "defer to the judgment of experienced counsel" in ruling on proposed class action settlements), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); s*ee also Wells v. Allstate,* 557 F. Supp 2d at 5 (D.D.C. 2008) ("Further, the case went through extensive mediation, and the experienced mediator believes that the settlement is fair and reasonable.").

## IV.    ATTORNEYS' FEES SHOULD BE AWARDED BASED ON THE PERCENTAGE OF THE FUND METHOD.

The D.C. Circuit requires the percentage of the fund method in common fund cases such as this.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force ... in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *Bebchick v. Washington Metropolitan Area Transit Comm.*, 805 F.2d 396, 406 (D.C. Cir. 1986) ("Where the fees, as here, will come out of a 'common fund,' a reasonable fee is based on a percentage of the fund bestowed on the class.") (quoting *Blum v. Stenson*, 465 U.S. 886,900, n.16 (1984)); *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *29; *In re Baan Co. Sec. Litig.*, 288 F. Supp. 2d 14, 16 (D.D.C. 2003) (counsel who recovers a common fund is entitled to a fee from the fund as a whole); *In re Lorazepam*, 2003 U.S. Dist. LEXIS 12344 at *24 (D.C. Circuit has adopted the percentage of recovery method in common fund cases); *Vista HealthPlan Inc. v.*

*Warner Holdings,* 246 F.R.D. 349, 364 (D.D.C. 2007) ("The D.C. Circuit has jointed other circuits in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorneys fee award in common fund cases."); *Wells v. Allstate,* 557 F. Supp. 2d at 6 (D.D.C. 2008) ("Proponents find the percentage-of-recovery method attractive 'because it directly aligns the interests of the Class and its counsel and it provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system.'").

Many courts recognize that using the percentage of the fund method to award attorneys' fees in a common fund case "directly aligns the interests of the Class and its counsel for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *34 (quoting *In re Am. Bank Note Holographies, Inc. Sec. Litig.,* 127 F. Supp. 2d 418,431-32 (S.D.N.Y. 2001)). In addition, "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model." *In re Lloyd's American Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663 at *75 (S.D.N.Y. Nov. 26, 2002*); In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *68 ("percentage of recovery method is meant to simulate awards that would otherwise prevail in the market."). Class Counsel prosecuted this case on a wholly contingent basis with no guarantee that their costs would ever be recovered or their fees ever paid.[38]

The $20 million common fund created by this Settlement is a "true common fund" since "the attorneys' fees [are] taken from a fund shared in common with class plaintiffs." *Id.* 25067 at *36. Accordingly, the Court should employ the percentage of recovery approach in this case.

**A.    An Award Of Attorneys' Fees Equal To Twenty-Five Percent Of The Settlement Fund Is Fair And Reasonable.**

Courts have a duty to ensure that claims for attorneys' fees are reasonable. *Cohen v. Warner Chilcott Public Ltd Co.*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007). In this case, an award of Attorneys' fees of 25% of the Settlement Fund is fair and reasonable. The Settlement constitutes an exceptional result for the class, and an award of 25% of the common settlement fund is consistent with other fee awards. Such an award is also supported by the factors frequently considered by the courts in this Circuit, including: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *In re Lorazepam*, U.S. Dist. LEXIS 12293 at *8.

**1.    The Size of the Fund and The Number of Persons Benefitted Support The Requested Award of Attorneys' Fees.**

This Settlement creates a true common fund of $20 million. The total amount is significant because only a small percentage of the millions of military veterans and active duty personnel whose data was on the stolen laptop incurred out-of-pocket expenses as a result of the theft.[39] Thus, the Fund most likely will allow a <u>full reimbursement</u> for approximately every Class Member who purchased credit monitoring services (estimated to cost $100) as well as others who suffered out of pocket expenditures that do not exceed $1,500. To the extent a balance remains in the Fund after the payment of claims, fees, and costs, the balance will be paid

---

[38] *Murdock Dec.*, ¶ 18.
[39] See *Plaintiffs' Motion for Preliminary Approval*, Exh. 9.

to the Fisher House Foundation, Inc. and The Intrepid Fallen Heroes Fund for the benefit of <u>all</u> military personnel, veterans, and their families. There is no reversion to Defendants.

This factor weights in favor of the requested award of attorneys' fees. *See In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *62 ("[c]ourts have regarded exceptional benefits to a large class as grounds for a higher fee award").

### 2. The Absence of Substantial Objections Supports The Requested Award of Attorneys' Fees.

As discussed above, there are no substantial objections to the fee award. The only objection is that made by Tere Lawyer.[40] Ms. Lawyer argues that she has somehow been "deprived the opportunity to review the [fee] application" because the objection deadline preceded Class Counsel's Motion in support of the fee.[41] Yet, the class notice clearly indicated that Class Counsel may seek a fee up to 25% of the common fund ($5,000,000). In fact, Ms. Lawyer's own objection admits as much. This is not a situation where Class Counsel did not disclose the fee amount in the notice. If Ms. Lawyer has concerns about a fee request that equals up to 25% of the Settlement Fund, she had the opportunity to express those concerns in her objection. And, to the extent the Court grants Ms. Lawyer's request to speak at the Fairness Hearing, she can express her concerns at that time.

The lack of any substantial objections by Class Members supports the conclusion that the Settlement achieved an excellent result for the Class and that Class Counsel's request for 25% of the Settlement Fund is reasonable. *Thomas v. Albright*, 139 F.3d 227, 231-33 (D.C. Cir. 1998).

---

[40] *Tere Lawyer and Jeffrey Weinstein's Objection to Class Certification and Objection to Proposed Settlement,* p. 9 (Doc. 58).
[41] Id.

### 3. The Skill and Efficiency of Class Counsel Supports The Requested Award of Attorneys' Fees.

Class Counsel consists of highly skilled attorneys with extensive experience in class action litigation who previously served as lead or co-counsel in numerous complex consumer class actions, including actions involving data theft and invasions of privacy.[42] Counsel for the Defendants consists of highly skilled lawyers from the Department of Justice and U.S. Department of Veterans Affairs. Throughout this litigation, the Class Counsel and counsel for the Defendants vigorously litigated all aspects of the case. The Defendants filed dispositive motions which turned on novel issues of law. The Defendants have a multitude of resources at their disposal and would have presented formidable defenses at trial. The settlement negotiations were lengthy and complex and ultimately yielded an extraordinary result. When viewed in this light, Class Counsels' fee request is wholly reasonable. *See In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *62 ("experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee").

### 4. The Complexity and Duration of the Litigation Support The Requested Award of Attorneys' Fees.

This litigation was complex and stretched over roughly a three year period. This case raised novel questions of law requiring extensive briefing. Some of these issues were resolved favorably to Plaintiffs. Others were not. Following this Court's ruling on Defendants' Motion to Dismiss and Motion for Summary Judgment, Class Counsel successfully negotiated this Settlement Agreement with the Defendants. Class Counsel believe that this is the largest Federal Privacy Act settlement ever.[43] This was not an easy path as the Defendants remained very

---

[42] *Murdock Dec.*, ¶ 16.
[43] Id.

skeptical of the viability of Plaintiffs' claims.[44]  And, Defendants reiterated their belief that

Plaintiffs could not successfully certify a class and remained critical of Plaintiffs' assessment of

numerosity and damages.[45]  Class Counsel successfully and efficiently navigated these

treacherous waters, resulting in the Settlement presently pending before this Court.

     **5.**     **The Risk of Nonpayment Supports The Attorneys Fees Requested.**

The risk of non-payment in this litigation was significant and real.  Class Counsel

handled this case on a purely contingent basis and, over the course of several years, spent a

significant amount of time investigating their claims, responding to Defendants' motions, and

negotiating the settlement.[46]  Class Counsel also invested $112,729.57 of its own funds in this

litigation through June 30, 2009.[47]  At the same time, Defendants had substantial defenses and

grounds to appeal the Court's November 16, 2007, Order, and there was no guarantee a class

would be certified.  Nor was there any guarantee that if a class was certified, that the class

certification order would be upheld on the inevitable appeal that would surely follow.  Class

Counsel clearly stood to lose the entirety of the value of their time expended as well as the costs

advanced on behalf of the Class if this litigation were not successful.  *See Lorazepam II,* 2003

U.S. Dist. LEXIS 12344 (Court considers the risk of nonpayment when evaluating reasonable

attorneys fee award; Court awards 30% of common fund as attorneys fees.); *Wells v. Allstate,*

557 F. Supp. 2d at 7 (D.D.C. 2008) (Court recognizes contingent risk and likelihood of zero

payment; Court awards 45%); *compare with Swedish Hosp.*, 1 F.3d at 1264 (attorneys fee award

of 20% where attorneys had partly "piggybacked" on success of related litigation and faced no

chance of zero recovery).

---

[44] *Id.* at ¶ 17.
[45] *Id.*
[46] *Murdock Dec.,* ¶ 18.
[47] *Id.* at ¶ 24.

**6.    The Amount of Time Devoted to the Case by Class Counsel Supports The Requested Award of Attorneys' Fees.**

Class Counsel litigated this litigation expeditiously and economically. The Defendants' Motion to Dismiss Or, In the Alternative, For Summary Judgment was 69 pages long, with 29 exhibits. Plaintiffs nonetheless filed their 69-page response without delay 30 days later, while simultaneously filing a motion for discovery and motion to strike certain of Defendant's exhibits. Within 14 months of the Court's ruling on Defendants' motion, the parties reached a settlement and the Plaintiffs filed their motion for preliminary approval of this Settlement.

Class Counsels' ability to bring this complex case to a timely and successful resolution supports the fee award. As this Court has made clear, Class Counsel should not be penalized for obtaining full recovery for the class and benefits for all military veterans in a relatively short amount of time. *See In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *62 ("While this was not lengthy litigation, counsel should not be penalized for achieving an effective and efficient settlement."); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3rd Cir. 2000)(purpose of percentage of recovery method is to encourage early settlement).[48]

**7.    Fee Awards in Similar Cases Supports The Requested 25% Award.**

Fee awards in common fund cases typically range from fifteen to forty-five percent of the common fund. *In re Lorazepam,* 2003 U.S. Dist. LEXIS 12344 at *7 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433); *Swedish Hosp.*, 1 F.3d at 1272 ("a majority of common fund class action fee awards fall between twenty and thirty percent"); *Wells v. Allstate,* 557 F. Supp. 2d at *6 (15% to 45% is typical).

---

[48] While litigated in a relatively expeditious manner, as of June 30, 2009 Class Counsel spent over 4,400 hours on this litigation. *Murdock Dec.*, ¶ 23. Collectively, Class Counsel's lodestar though June 30, 2009 approached $1,800,000. *Id.*

In fact, a number of courts - including this one - have awarded attorneys' fees close to or more than 30% of a common fund. *See, e.g., In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *57 (approving 34.06% fee); *In re Lorazepam*, 2003 WL 22037741 at *8-9 (approving 30% fee); *Wells v. Allstate,* 557 F. Supp. 2d at *7 (approving 45% fee award); *In re First Databank Antitrust Litig.,* 209 F. Supp. 2d 96, 101 (D.D.C. 2002) (approving 30% fee award); *In re Newbridge Networks Securities Litig.*, 1998 U.S. Dist. LEXIS 23238 (D.D.C. 1998) (approving 30% fee); *In re Baan Co. Sec. Litig.,* 288 F. Supp. 2d 14, 19 (D.D.C. 2003) (approving 28% fee); *Consol. Edison Co, of NY, Inc. v. Abraham,* 2005 U.S. Dist. LEXIS 2550 at *19 (D.D.C. 2005) (approving 30% fee); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) (approving 30% fee); *see also In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 498 (D.D.C. 1981) (noting that several courts have awarded more than 40% of the settlement fund in antitrust cases).

Awarding a fee equal to 25% of the Settlement Fund created by this Settlement is thus consistent with, and in many cases less than, awards in other common fund cases.  Fee decisions from various jurisdictions confirm that even in cases with large recoveries, attorneys' fees ranging from 25% to more than 33% are regularly awarded.  *See In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex 1999) (awarding fees and expenses of 35.1% from $190 million antitrust settlement fund); *In re Combustion Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (awarding maximum reserve of 36% in attorneys fees from fund of $127 million); *In re Ikon*, 194 F.R.D. at 166 (awarding 30% of approximately $108 million fund); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) (awarding 27.5% of $116 million settlement fund);  *In re Rite Aid*, 146 F. Supp. at 736 (awarding 35% of $193 million fund); *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 104 (S.D.N.Y.1996) (awarding 27% of $110 million fund).

An award of 25% also compares favorably to fees agreements in the private marketplace where attorneys negotiate percentage fee arrangements with their clients. A "one-third recovery is a common percentage arrived at in private contingency fee cases." *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *68; *see also In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time"); *In re Vitamins, 2001 U.S. Dist. LEXIS 25067, at *68* ("percentage of recovery method is meant to simulate awards that would otherwise prevail in the Market"). In fact, attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation . *Id.; see also In re Aetna*, 2001 U.S. Dist. LEXIS 68 at *44 (noting that in private contingency fee cases plaintiffs' counsel often negotiate fees of at least 33.3% of any recovery). *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("in private contingency fee cases, particularly in tort matters, plaintiff counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").[49]

**B.      Class Counsel Are Entitled To Reimbursement Of Expenses From The Settlement Fund.**

Class Counsel incurred significant out-of-pocket expert and non-expert expenses on behalf of the Class. Collectively, Class Counsel has spent $112,729.57 through June 30, 2009.[50]

---

[49] Applying the lodestar and multiplier approach as a cross-check to the percentage of the fund approach (something which is not required in this Circuit) also demonstrates the reasonableness of Class Counsel's request for 25% of the Settlement Fund. Class Counsel's lodestar through June 30, 2009 is nearly $1,800,000. *Murdock Dec., ¶* 23. Thus, applying a multiplier of 2.78 to the $1,800,000 lodestar yields a $5,000,000 fee award. Multipliers ranging up to four are frequently used in common fund cases. *Wells v. Allstate Insurance Co.,* 557 F. Supp. 2d 1, 8 (D.D.C. 2008).

[50] *Murdock Dec.*, ¶ 24.

Additional expenses will be incurred including those related to the Fairness Hearing and overseeing the implementation of the terms of the Settlement.[51]

Each expense incurred by Class Counsel was reasonable and necessary to obtain the settlement described above, benefited the Class, and is the exact type of "expenses for which counsel would have normally directly bill[ed] their [paying] clients." *In re Vitamins*, 2001 U.S. Dist. LEXIS 25067 at *69. It is well-established that counsel who have created through their labor a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses reasonably incurred in creating the fund. *Id.* ("With regard to expenses, there is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ...reasonable litigation expenses from that fund.") (quotations and citations omitted); *In re Linerboard,* 2004 WL 1221350 at *18 (counsels' litigation expenses were "reimbursed from the Settlement Fund" after the Court "concluded [that] they were reasonable and necessary to the prosecution of the case"); *In re Visa Check/Master Money Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (awarding $18.7 million in expenses where the 'lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, on-line legal research, and travel expenses").

Class Counsel request reimbursement for these costs and expenses.

**C.      The Class Representatives Should Receive The Requested Incentive Awards.**

Pursuant to Paragraph F of the Settlement, Class Counsel have petitioned the Court for incentive awards of $18,000 to be distributed to the nine named Plaintiffs, or $2,000 each. Each Plaintiff has devoted their time and effort to assist in this litigation. No objection to these

---

[51] Class Counsel will provide the Court with appropriate documentation of any additional expenses and will request reimbursement for those expenses at an appropriate time.

incentive awards has been filed.  Further, these amounts are consistent with incentive awards typically approved by the courts.  *See Wells v. Allstate Ins. Co.,* 557 F. Supp. 2d 1, 8 (D.D.C. 2008) (approving incentive awards of $10,000); *Lorazepam,* U.S. Dist. LEXIS 12293 at* 11 ($20,000 incentive awards to named plaintiffs); *see also, Gross v. Washington Mut. Bank, F.A.*, 2006 WL 318814 at *6 (E.D.N.Y. Feb. 9, 2006) (approving incentive payment of $5,000); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 464 (S.D.N.Y. 2004) (approving incentive award of $3,000); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) (approving incentive awards of $1,500 to $10,000).  As such, Class Counsels' request for an incentive award should be approved.

## CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that this Court grant final approval to this Settlement and certification of the proposed Class.  Additionally, Class Counsel respectfully request an award of 25% of the $20 million Settlement Fund as attorneys fees payable to Class Counsel.  Class Counsel also request reimbursement of their costs and expenses associated with this litigation which total $112,729.57 as of June 30, 2009.  An additional expense reimbursement request will be provided to the Court as necessary.  Finally, Class Counsel request an incentive award of $18,000 to be distributed equally among the nine class representatives.

Dated: July 16, 2009

Respectfully submitted:

/s/ John C. Murdock
John C. Murdock
Jeffrey S. Goldenberg
MURDOCK GOLDENBERG SCHNEIDER
& GROH, LPA
35 East 7th Street, Suite 600
Cincinnati , OH 45202
(513) 345-8291
Counsel in No. 1:06-CV-01943 (JR)

Marc D. Mezibov
MEZIBOV & ASSOCIATES, LLP
401 East Court Street
Suite 600
Cincinnati , OH 45202
(513) 723-1600
Counsel in No. 1:06-CV-01943 (JR)

Gary Edward Mason
THE MASON LAW FIRM, LLP
1225 19th Street, NW
Suite 500
Washington , DC 20036
(202) 429-2290
Counsel in No. 1:06-CV-01943 (JR)

Donald A. Cockrill
Douglas J. Rosinski
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
1320 Main Street , Suite 600
Columbia , SC 29201
(803) 252-1300
Counsel in No. 1:06-CV-01038 (JR)

Mark D. Smilow
WEISS & LURIE
The French Building
551 Fifth Avenue, Suite 1600
New York, NY  10176
(212) 682-3025
Counsel in No. 1:06-CV-01944 (JR)