**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

In Re: DEPARTMENT OF VETERANS   :
AFFAIRS (VA) DATA THEFT        :
LITIGATION                     :
_____  :  Misc. Action No. 06-0506 (JR)
                            :  MDL Docket No. 1796
This Document Relates To:     :
ALL CASES                  :

## MEMORANDUM

In May 2006, burglars stole a laptop and an external hard drive from the home of an employee of the Department of Veterans Affairs.  The external hard drive contained the names, dates of birth, and Social Security numbers of some 26.5 million veterans and their spouses.  Affected veterans brought three separate federal class action suits, alleging violations of the Privacy Act, the Administrative Procedure Act, and the Fourth and Fifth Amendments.

In November 2006, the Judicial Panel on Multidistrict Litigation transferred the three suits to this Court for consolidated proceedings.  I dismissed all claims except the Privacy Act claim, Dkt. 30, and referred the case to Magistrate Judge Alan Kay for mediation.  With Judge Kay's able assistance, the parties reached a settlement agreement, which I approved preliminarily earlier this year.  Dkt. 54.

The agreement creates a $20 million fund.  Class members can submit claims for 100 percent of their out-of-pocket

because of the hard drive theft.  Eligible claimants receive a
minimum reimbursement of $75 and can receive a maximum of $1,500.
After valid claims are paid out, and attorneys' fees and other
expenses are deducted, the money remaining in the fund will be
split equally between two *cy pres* recipients, the Intrepid Fallen
Heroes Fund and the Fisher House Foundation, both not-for-profit
charitable organizations that help military personnel, veterans,
and their families.

At the hearing on the parties' joint motion for final
approval of the settlement, I asked for additional briefing on
two issues: the request of plaintiffs' attorneys that I award
them 25 percent of the common fund ($5 million) in fees, and
their request that I require the sole objector to the settlement,
Tere Lawyer, to post an appeal bond that secured their attorneys'
fees and expenses.

### A. Attorneys' fees

An award of attorneys' fees must be reasonable in light
of the results obtained.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 440
(1983).  In a case such as this one, where the settlement
agreement creates a common fund against which individual
plaintiffs may make claims, I must "act as fiduciary for the
beneficiaries (who are paying the fee) . . . because few, if any,
of the action's beneficiaries actually are before the court at
the time the fees are set," and because "there is no adversary

process that can be relied upon in the setting of a reasonable fee." Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 251 (1985).

In this Circuit, the "percentage-of the fund method [rather than the lodestar method] is the appropriate mechanism for determining the attorney fees award in common fund cases." Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C. Cir. 1993). The question presented by the somewhat unusual facts of this case is whether the fee should be a percentage of the total common fund ($20 million) or of the funds that actually go to class members. In support of the latter approach, the objector, Mrs. Lawyer, notes that, as of the final fairness hearing this July, only 2100 reimbursement claims had been filed with the common fund administrator. Fairness Hearing Tr. (July 28, 2009), at 11. Even if claims were to double before the claims period ended, and the average claim were for $500 -- both generous suppositions for the plaintiffs' attorneys -- the class members would only claim $2.1 million. Mrs. Lawyer argues that it would be unfair to let the attorneys walk away with more than twice what the individual class members would receive collectively. She also submits that limiting the attorneys to a percentage of actual claim would create an incentive for the attorneys and their administrators to ensure that the class members receive as much money as possible.

Mrs. Lawyer's arguments have intuitive appeal, but they go against the weight of the relevant precedent.  As Professor William B. Rubenstein explains in his declaration accompanying the plaintiffs' briefing, the national trend, and the trend in this Circuit, is toward awards that represent a percentage of the total common fund, even when some portion of that fund will go to a *cy pres* beneficiary.  <u>See</u> Dkt. 75, Ex. 2, at nn.18-19 (citing cases).  Professor Rubenstein identifies three bases for this approach:

> *First*, courts reason that the efforts of counsel created the entire fund and made it available to the class.  *Second*, courts reason that the class itself benefits from the *cy pres* award, as in this case, [where] the veterans' service organizations receiving the *cy pres* funds provide services that the members of the class would generally be eligible to receive.  *Third*, and more generally, the primary purpose of small claims class actions is not individual plaintiff compensation but rather aggregate deterrence of the defendant's activities. Compensation is not a primary goal because each class member has been harmed such a small amount that getting those funds to them may be inefficient and/or class members are unlikely to spend time coming forward to claim such small amounts.  However, the aggregate effect of the defendant's actions may be significant and need to be deterred. Creating a fund that truly penalizes the defendant by fully disgorging a significant amount of money serves this deterrent effect regardless of where the funds are sent.

<u>Id.</u> ¶ 26.

Professor Rubenstein does not have or cite to examples of cases like this one, however, in which it seems likely that the *cy pres* fund will turn out to have been by far the largest component of the total fund.  That factors, it seems to me, should affect the selection of the percentage of the common fund that should be set aside for the attorneys.

The majority of fee awards nationally appear to fall in a range of 20 percent to 30 percent of the common fund.  <u>See Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1050 n.4 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1018 (2002) (summarizing fees awarded in 34 common fund settlements from 1996-2001); <u>see also</u> Federal Judicial Center, Manual for Complex Litigation, Fourth § 14.121, at 188 (2004).  Fees in this Circuit mirror the nationwide numbers.  <u>See, e.g.</u>, <u>In re Lorazepam & Clorazepate Antitrust Litig.</u>, 2003 WL 22037741 (D.D.C. June 16, 2003) (30% fee); <u>In re Baan Co. Sec. Litig.</u>, 288 F. Supp. 2d 14, 17 (D.D.C. 2003) (28% fee); <u>Swedish Hosp. Corp</u>, 1 F.3d at 1272 (20% fee).

Plaintiffs' attorneys' request for 25 percent of the common fund falls squarely within the standard range, but, as noted above, this is not a standard common fund.  The *cy pres* contribution will likely dwarf the amount paid to class members. It will benefit two worthy charities, but charities that do not deal explicitly or exclusively with identity theft (or anxiety about identity theft, or protection from identity theft).  Here,

I believe the proportional size of the *cy pres* contribution counsels an award that is at the low end, or even below the low end, of the standard range.

The Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method," to determine whether the percentage award roughly reflects the time and expertise the attorneys invested in the case.  Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000).  An award of the requested 25 percent of the common fund would be $5 million -- almost three times class counsel's lodestar ($1.8 million) as of June 30, 2009.  See Dkt. 61, at 21 n.48.  There is no consensus about when a multiplier is too high, but Judge Ginsburg has observed that an award of more than three times the lodestar is enough to raise some eyebrows.  Swedish Hosp. Corp., 1 F.3d at 1273 (Ginsburg, J., concurring in part and dissenting in part).

In this case, given the complexity of the issues, the risk the attorneys assumed in taking the case on a contingency basis, the result they secured for their clients, and the peculiar balance between the return to class members and the size and nature of the *cy pres* contribution, I find that an attorneys' fee award of $3.6 million -- about two times the lodestar and about 18 percent of the common fund -- is sufficient.

**B. Appeal bond**

    While the plaintiffs may be correct that I have the authority to require a substantial appeal bond to secure the costs of appeal, <u>see</u> <u>Marek v. Chesny</u>, 473 U.S. 1 (1985), I see no reason to exercise that authority at this time.

                    *         *         *

    The parties' joint motion [#60] for final approval of the class action settlement is **granted**, except as noted herein. Counsel are instructed to submit a revised form of order and final judgment (<u>see</u> #61-2) that is consistent with this memorandum.


                              JAMES ROBERTSON
                        United States District Judge