UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In Re: DEPARTMENT OF VETERANS AFFAIRS (VA) DATA THEFT LITIGATION | : : : : : |
| This Document Relates To: ALL CASES | : : : : |

Misc. Action No. 06-0506 (JR)
MDL Docket No. 1796

## PLAINTIFFS' RENEWED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPEAL BOND

Pursuant Fed. R. App. P. 7 and the Court's inherent power, Plaintiffs in the above-captioned matter renew their motion to require Tere Lawyer ("Objector") to post a $212,000 bond to ensure payment of costs on appeal. Plaintiffs previously requested an appeal bond[1] although the Court determined it was premature. Because Plaintiffs recently received Objector's Notice of Appeal, Plaintiffs renew their request. A bond issued pursuant to Appellate Rule 7 is necessary to protect the Class from the harm of a frivolous appeal pursued by individuals who lack: (1) standing or (2) any basis for relief or interest in providing a benefit to the Class. A proposed Entry granting this Motion is attached as Exhibit A.

I.   **Procedural History and Background**

On September 23, 2009, the Court issued its Final Judgment granting final approval of the settlement in this matter.[2] "The agreement creates a $20 million fund.

---

[1] *See* "Plaintiffs' Response to Objections Filed by Tere Lawyer and Jeffery L. Weinstein and Request for Appeal Bond Pursuant to Fed. R. App. P. 7" (Jul. 16, 2009) (Doc. 65) ("Resp. to Obj.") and "Plaintiff's Post Hearing Memorandum Regarding Attorney Fees and Appellate Bond" (Doc. 75) ("Post Hearing Mem.").

[2] "Order and Final Judgment Granting Final Approval of Class Action Settlement" (Sep. 23, 2009) (Doc. 79) ("Final Judgment").

{00023113; 1}                                    1

Class members can submit claims for 100 percent of their out-of-pocket [expenses] because of the hard drive theft. Eligible claimants receive a minimum reimbursement of $75 and can receive a maximum of $1,500. After valid claims are paid out, and attorneys' fees and other expenses are deducted, the money remaining in the fund will be split equally between two cy pres recipients, the Intrepid Fallen Heroes Fund and the Fisher House Foundation, both not-for-profit charitable organizations that help military personnel, veterans, and their families."[3]

In its September 11, 2009 Memorandum discussing the basis for final approval, the Court recognized its authority "to require a substantial appeal bond to secure the costs of appeal."[4] While the Court saw "no reason to exercise that authority" at that time,[5] the Court soon thereafter expressly "reserve[d] continuing and exclusive jurisdiction over the Parties and their counsel, including all Class Members and the counsel with respect to ... the entry of any additional orders as may be necessary and appropriate relating to any and all issues including any appeals."[6] Objector's Notice of Appeal was filed on November 19, 2009, necessitating this Motion.

## II. <u>Legal Argument</u>

1. *The Court Has Authority To Require Objector To Post An Appeal Bond.*

Rule 7 of the Federal Rules of Appellate Procedures states that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." A district court, "familiar with the

---

[3] Memorandum (Sept. 11, 2009) (Doc. 77) ("Sept. 11 Mem.") at 1-2.

[4] *Id.* at 7 (citing *Marek v. Chesney*, 473 U.S. 1 (1985)).

[5] *Id.*

[6] Final Judgment ¶ 21.

contours of the case appealed, has the discretion to impose a bond which reflects its determination of the outcome of the appeal." *Adsani v. Miller*, 139 F.3d 67, 79 (2nd Cir. 1998). The purpose of an appellate bond is to protect the rights of appellees and provide security to class members who have no assurances that objectors are able to pay the costs and fees associated with opposing their appeals. *Fed. R. App. P. 7; Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002); *see also In re Heritage Bond Litig.*, No. CV 02-382 DT(RCx), 2005 WL 2401111 at *3 (C.D. Cal. Sept. 12, 2005) ("Federal courts have required an appeal bond from appellants . . . as a condition of maintaining objector appeals of class action settlements or attorneys' fee awards."); *In re Compact Disk Minimum Advertised Price Antitrust Litig.*, 2003 U.S. Dist. LEXIS 25788 at *5 (1st Cir. Oct. 7, 2003) ("damages resulting from delay or disruption of settlement administration caused by frivolous appeal may be included in a Rule 7 bond."); *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007)("[T]he class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions.")

    2.    *An Appeal Bond Is Appropriate Here Because Objector Lacks Standing And Because Of The Frivolous Nature Of The Objections Raised.*

Federal courts have properly become suspicious of "professional" objectors who appear in class action cases more intent on obtaining a share of the attorneys' fee award than in protecting class members. *See, e.g., Varacallo v. Mass Life Ins. Co.*, 226 F.R.D. 207, 240-41 (D.N.J. 2005) (federal courts are "increasingly wary of professional objectors."); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG 2006 U.S. Dist. LEXIS 71072 at *3-4 (D. Mass. Aug. 22, 2006) ("Repeat objectors to class action settlements

can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements".); *Shaw v. Toshiba Am. Info., Inc.*, 91 F. Supp. 2d. 942, 973-75 n.18 (E.D. Tex. 2000) (admonishing professional objectors' behaviour); *O'Keefe v. Mercedes-Benz USA*, LLC, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly wary of professional objectors"). Plaintiffs also made a thorough showing that Objector's counsel, Mr. Weinstein, is such a "professional objector." Resp. to Obj. at 2 n.2 (listing 10 cases of professional objector behavior by Mr. Weinstein). Mr. Weinstein's repeated obfuscations in the July 28, 2009, hearing and in his filings removed any doubt regarding the appropriateness of that characterization. The following exchange, demonstrating Mr. Weinstein's transparent attempts to ignore the Court's substantive inquiries, solidifies his stature as a "professional objector."

> THE COURT: What – describe the settlement you would have preferred.
>
> MR. WEINSTEIN: You Honor, I wish I could do that but that's not what I'm here to do today…
>
> THE COURT: Well, then describe a better settlement than the one you object to.
>
> MR. WEINSTEIN: Weinstein: Your Honor, again, the role of the objector is not to describe for the Court what is better …[7]

      A.    *Objector Lacks Standing To Appeal.*

Objector failed in multiple attempts to demonstrate standing to participate in this matter. *See* "Plaintiffs' Post Hearing Memorandum Regarding Attorney Fees and Appellate Bond" (Aug. 10, 2009) (Doc. 75) at 9 (Lawyer's affidavits do not satisfy "appropriate documentation" requirement approved by the Court). It is clearly established that "only parties to a lawsuit, or those that properly become parties, may

---

[7] Transcript of July 28, 2009, Fairness Hearing ("Transcript") at 42 (attached hereto as Exhibit B).

appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). Objector has failed to establish that she is the spouse of the individual whose claim she asserts, that her asserted spouse is a military veteran, or that either of them otherwise meets the class definition.[8] Nor has Lawyer, or her spouse, filed a claim with the Settlement Administrator.

To this day, Objector has failed to provide one scrap of documentation supporting her assertion that she is a Class Member. Moreover, the description of Objector's purported "credit monitoring" and the additional assertions that she lost the receipt, could not produce a credit card statement, and could not even provide a screen print from the monitoring web page, to the extent credible at all, described a free annual service available to anyone, not a paid credit monitoring service.[9] Such unsupported and inherently incredible assertions are not, and cannot be, sufficient basis for Class Membership under the Settlement Agreement approved by the Court. Thus, standing as a Class Member has not been established and lacking such status Objector does not have standing to appeal *any* issue in this case. *See, e.g., Devlin v. Scardelletti*, 536 U.S. 1, 9 (2002) (interpreting *Marino* to hold that non-class members affected by settlement did not have standing to appeal because the final approval decision did not finally dispose of any right or claim they might have had because they were not part of the settlement class); *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305, 1310 (11th Cir. 2004) (*Devlin* allows appeals by parties who are actually bound by a judgment, not parties who merely *could* have been bound by the judgment.") (original emphasis).

In any event, and even if standing is assumed, a "petitioner will only be allowed

---

[8] Weinstein's claim to independent standing was never seriously pursued.
[9] Tr. at 48-49.

{00023113; 1}

5

to appeal that aspect of [a] District Court's order that affects him." *See Devlin*, 536 U.S. 1, 9-10 (2002) (unnamed class members "may be parties for some purposes and not for others"). So even if the Court were to assume Objector is a Class Member, she has not asserted and cannot assert that any aspect of the Court's final approval order directly affects her. To the contrary and as discussed further earlier and below, Objector's counsel conceded that he could identify nothing that would result in a "better" settlement.[10] There is, therefore, no issue which could possibly affect Objector for her to appeal. Thus, any appeal by Objector would be frivolous even if class membership is established or assumed.

It is one thing for the Court to assume an individual's standing to provide an opportunity to raise issues for the Court's consideration before final approval of a settlement. It is quite another to allow multiple unsupported factual assumptions to substitute for standing to bring a substantive appeal of the Court's final order and create the disruption that accompanies such an action. In any event, Objector does not deserve *yet another* bite at the standing apple. Nothing compels such an extraordinary action – with its significant and wholly one-sided adverse consequences – in this case.

### B. The Objections Raised Are Frivolous.

Even if the Court were to assume that Objector has standing to appeal, which she does not, the Court overruled all of the objections raised by Objector.[11] The Court's decision was supported, if not compelled, by Mr. Weinstein's admission in open court, quoted earlier, that he had no meaningful suggestion as to how to improve this

---

[10] Tr. at 42.
[11] Final Judgment ¶ 13.

{00023113; 1}

6

settlement.[12] Mr. Weinstein conceded that his presence was only to request that the Court "disapprove a settlement" without any pretense of adding anything of value for his client, to the Class, or the Court's consideration of the proposed settlement.[13] Absolutely nothing has changed.

Moreover, the Court specifically overruled Objector's objection to attorneys' fees and the proposed limitation that any such fee be limited to a percentage of actual claims paid.[14] Indeed, Plaintiffs' attorneys' fee request was reviewed and ultimately established as a percentage of the $20 million common fund under a legal theory raised *sua sponte* by the Court, not Objector.[15] The Court's Final Judgment was unequivocal that Objector raised nothing of substance or value to the consideration of the settlement.

As a result, it is not possible for Objector to file anything other than a frivolous appeal the sole purpose of which is to disrupt the settlement for disruption's sake. While ultimately Class Counsel may be able to petition the Court for an award from the Settlement Fund for the costs and fees incurred due to this appeal, this Court is empowered to and should ensure that Objector and her counsel, not the Class, are ultimately responsible for the costs of appeal.

In addition, Objector has failed to identify a single issue for which an appeal of the Court's final order would benefit her. *See, e.g., Devlin,* 536 U.S. at 9 (2002) ("petitioner will only be allowed to appeal that aspect of [a] District Court's order that affects him"). Here, there is no issue raised by Objector before this Court that directly

---

[12] Tr. at 42.

[13] *Id.*

[14] Final Judgment ¶ 13; *see also* Sep. 11 Mem. at 4 (Objector's arguments "go against the weight of the relevant precedent").

[15] Transcript at 24-25 ("I'm sure you're not surprised to hear this question from me").

affects her.[16] Despite multiple filings and the specific opportunity provided by the Court to identify what, if anything, could be done to the benefit of his client, Weinstein has been jarringly and uncharacteristically silent. Without any possible benefit to either individual, an appeal would have no legitimate objective or legal basis.

    3.    *The Bond Should Include Class Counsels' Costs Of Litigating The Appeal And Related Attorneys Fees.*

As discussed in Plaintiffs' previous submittals,[17] "just damages" in this case fairly include costs of litigating the appeal and attorneys' fees to protect the Class from the ravages of a frivolous and vexatious appeal. Plaintiffs have the right to tax objectors in the appellate court for "just damages" caused by unwarranted or vexatious delay. Fed. R. App. P. 38; *In re NASDAQ,* 187 F.R.D. at 128; *Livingston v. Toyota Motor Sales USA, Inc.*, No. C-94-1377-MHP, 1997 U.S. Dist. LEXIS 24087 at *13-*14 (N.D. Cal., Nov. 10, 1997); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL No. 1361, 2003 U.S. Dist. LEXIS 25788 at *4-*5 (D. Me. Oct. 7, 2003). Unwarranted delay in this case would have significant financial impact on the Class.

In considering the appropriate scope of "costs" under Federal Rule of Appellate Procedure ("FRAP") 7, the majority rule is that the term "costs" is to be defined by reference to the statute that underlies the lawsuit. *See Adsani,* 139 F.3d at 75; *In Re Cardizem CD Anti-Trust Litigation,* 391 F.3d at 817; *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007); *Pedraza,* 313 F.3d at 1333; *cf. In Re American*

---

[16] The Court's decision to award an 18% fee (rather than the 25% fee requested by Class Counsel) benefits the Cy Pres Beneficiaries which will receive the monies remaining in the fund after all claims are paid. The Cy Pres Beneficiaries are not members of the Class and, consequently do not share the same interests of and are not represented by Objector. Notably, however, the delay Objector's appeal will cause is as detrimental to the Cy Pres Beneficiaries (and the injured veterans and their families who stand to benefit from the cy pres awards) as it is to the members of the Class.

[17] Resp. to Obj. (Doc. 65) at 22, 23-24; Post Hearing Mem. (Doc. 75) at 9-10.

{00023113; 1}

*President Lines, Inc.* 779 F.2d, 714, 716 (D.C. Cir. 1985);[18] *Vaughn v. American Honda Mfg. Co.*, 507 F.3d 295 (5th Cir. 2007).[19] Accordingly, the Second, Sixth, Ninth and Eleventh Circuits "hold that the term 'costs on appeal' includes all costs as defined by an applicable fee-shifting statute, which if so defined may include attorney's fees." *Azizian*, 499 F.3d at 958 (collecting authorities).

This majority rule relies upon the Supreme Court's reasoning in *Marek v. Chesny*, 473 U.S. 1 (1985). The *Marek* Court considered whether attorneys' fees could be considered "costs" under Federal Rule of Civil Procedure 68 and held that the term "costs" is to be defined by reference to the statute that underlies the lawsuit. *Marek*, 473 U.S. at 9. "[G]iven the importance of 'costs' to the Rule, it is very unlikely that th[e] omission [of a definition] was a mere oversight; on the contrary, the most reasonable inference is that the term 'costs' in Rule 68 was intended to refer to all costs proper awardable under the relevant substantive statute or other authority." *Id.* Because the underlying statute in *Marek*, 42 U.S.C. 1988, expressly included attorneys' fees as "costs," the *Marek* Court concluded that attorneys' fees were "costs" for the purpose of Rule 68. *Id.*

---

[18] *In Re American President Lines, Inc.* "has either been modified or overruled implicitly" by subsequent decisions of the District of Columbia Circuit, and therefore provides "ambiguous precedent of little authority." *Adsani*, 139 F.3d at 73 n.6, citing *Montgomery & Assocs. V. Commodity Futures Trading Comm'n*, 816 F.2d 783, 784 (D.C. Cir. 1987) (citing *Marek* and holding that "costs" in Rule 39 may include attorneys' fees where the substantive statute upon which the appeal is based includes the recovery of attorney's fees as part of the costs); *Singer v. Shannon & Luchs Co.*, 868 F.2d 1306, 1307 (D.C. Cir. 1989) (per curiam). *American President Lines* is also distinguishable because it was a bankruptcy case "decided long before the cases which have reasoned that in a class settlement context a Rule 7 bond may cover fees and expenses resulting from delay or disruption to the settlement administration." *In re Broadcom Corp. Securities Litig.*, 2005 U.S. Dist. LEXIS 45656 at *16 (C.D. Cal. Dec. 5, 2005).

[19] *Vaughn* is also distinguishable from the majority rule cases because unlike *Marek*, it did not address a statute that provided for the payment of attorneys' fees.

Finding that "[FRAP] 7 does not differ from [FRCP] 68 in any way that would lead us to adopt a different interpretive approach ... than was embraced by the Supreme Court in *Marek*," the majority rule extends *Marek* to FRAP 7. *In Re Cardizem CD Anti-Trust Litigation*, 391 F.3d at 817 (quoting *Pedraza*, 313 F.3d at 1332). As a result, the majority rule permits appeal bonds to include both the estimated expenses and attorneys' fees associated with an appeal where the underlying statute provides for payment of attorneys' fees. *Id*. Moreover, including attorneys' fees as "costs" is not only a sound interpretive approach to defining the term "costs," it is consistent with the two purposes underlying statutes which provide for the payment of an opponent's attorneys' fees: preserving "the effective prosecution of meritorious claims" and discouraging "burdensome litigation having no legal or factual basis." *Kay v. Ehrler*, 499 U.S. 432, 437 (1991); *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 420 (1978).

Attorneys' fees are appropriate to include in a bond in this case brought under the Federal Privacy Act. "The Court may assess against the United States, reasonable attorney fees and *other litigation costs* reasonably incurred in any case" under the civil remedies section. 5 U.S.C. § 552a(g)(3)(B) (emphasis added). The plain meaning of this language is that attorney fees is a subset of and included within "litigation costs." As a result, this Court can include attorney fees as well as other litigation costs in the requested bond. *Marek*, 473 U.S. at 9; *Pedraza*, 313 F.3d at 1333; s*ee also Downey v. Mortgage Guaranty Insurance Corp.*, 313 F.3d 1341, 1344 (11th Cir. 2002) ("a Rule 7 cost bond can properly include anticipated appellate attorneys' fees where the statutory fee shifting provision that attends the plaintiff's underlying cause of action defines 'costs' to include such fees").

Actual costs to Plaintiffs of an appeal in this case based on conservative estimates are: $5,000.00 in costs for legal research; $1,000.00 in reproduction and delivery costs; and $15,000.00 in travel, lodging, and related costs to prepare for and attend oral argument.[20] Further, because of the frivolous nature of Objector's appeal, the actual costs of $21,000.00 should be doubled to $42,000.00. *See* Fed R. App. P. 38 (court of appeals may award just damages and single or double costs to appellee if an appeal is frivolous). Attorneys' fees to research, draft, review, and submit an appellate brief and prepare for and participate in oral argument are conservatively estimated at $85,000.00, based on 200 hours of attorney time at $425.00 per hour.[21] As attorneys' fees are "costs" under the Privacy Act, this amount should also be doubled to $170,000.00 pursuant to Rule 38.

Thus, Plaintiffs renew their motion for an appeal bond and submit that the appropriate amount for the bond is $212,000.00 ($42,000.00 + $170,000.00), which is necessary to protect the Class from actions intended only to disrupt and delay execution of the Settlement. *See, e.g.*, *Michelin, supra* (ordering $150,000.00 appeal bond), *Cardizem*, 391 F.3d at 815 (upholding $174,429.00 appeal bond); *Barnes v. FleetBoston Financial Corp.*, 2006 U.S. Dist. LEXIS 71072 (D.C. Mass. Aug. 22, 2006) (ordering $645,111.60 appeal bond); *NASDAQ*, 187 F.R.D. at 129 (ordering $101,500.00 appeal bond); *In Re: Pharmaceutical Industry Average Wholesale Price Litigation*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (Ordering $61,000 appeal bond).

### III. Conclusion

Failing to insure the Class through an appeal bond leaves Objector free to disrupt years of effort by the Parties and the Court without Objector bearing any, and certainly

---

[20] Declaration of Jeffery Goldenberg (attached as Ex. C) ¶ 3.
[21] *Id.* at ¶ 4.

not commensurate, risk of litigation. It should not be the Class Members that have to pay the entire cost of a frivolous appeal. If Objector and her counsel feel so strongly that an appeal in this matter is legitimate and brings "value" to the Class, let them bear at least part of the risk of attempting to convince the appellate court of the righteousness of their convictions.

WHEREFORE, Plaintiffs respectfully request that this Court protect the Class from the harm of a frivolous and unjustified appeal and order Objector to post an appeal bond of $212,000.00 and take any other action it deems just and proper.

Respectfully submitted,

For Plaintiffs:

Douglas J. Rosinski
Donald A. Cockrill
Ogletree, Deakins, Nash,
  Smoak & Stewart, P.C.
1320 Main Street, Suite 600
Columbia, SC 29201
(803) 252-1300

Marc D. Mezibov
The Law Office of Marc Mezibov
401 E. Court Street, Ste. 600
Cincinnati, OH 45202
(513) 621-8800

Mark D. Smilow
Weiss & Lurie
551 Fifth Avenue, Suite 1600
New York, NY 10176
(212) 682-3025

/s/Jeffrey S. Goldenberg
John C. Murdock
Jeffrey S. Goldenberg
Murdock Goldenberg
  Schneider & Groh, LPA
35 E. 7th Street, Suite 600
Cincinnati, Ohio 45202
(513) 345-8291

Gary Mason
The Mason Law Firm
1225 19th Street, N.W.
Washington, D.C. 20036
(202) 429-2290

Dated: November 19, 2009.

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2009 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all ECF participants.

A copy will be served via U.S. Mail Service upon the following:

Jeffrey L. Weinstein
WEINSTEIN LAW FIRM
518 East Tyler Street
Athens, TX 75751

/s/ Jeffrey S. Goldenberg
Jeffrey S. Goldenberg